1   GRAHAM**HOLLIS** APC
    Graham S.P. Hollis (SBN 120577)
2   ghollis@grahamhollis.com
    Vilmarie Cordero (SBN 268860)
3   vcordero@grahamhollis.com
    Erik A. Dos Santos (SBN 309998)
4   edossantos@grahamhollis.com
    3555 Fifth Avenue, Suite 200
5   San Diego, California 92103
    Telephone: 619.692.0800
6   Facsimile: 619.692.0822
    Attorneys for Plaintiff JOSEPH OSEGUEDA
7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10  JOSEPH OSEGUEDA, individually and on        Case No.:   2:18-cv-00835-WBS-EFB
    behalf of all similarly situated and/or aggrieved
11  employees of Defendants in the State of      **MEMORANDUM OF POINTS AND**
    California,                                   **AUTHORITIES IN SUPPORT OF**
12                                                **PLAINTIFF'S UNOPPOSED MOTION FOR**
              Plaintiff,                          **PRELIMINARY APPROVAL OF CLASS**
13                                                **ACTION SETTLEMENT**

14          v.                                    Date:      January 13, 2020
                                                  Time:      1:30 p.m.
15  NORTHERN CALIFORNIA INALLIANCE;              Dept:      5, 14th Floor
    and DOES 1 THROUGH 50, inclusive,            Judge:     Hon. William B. Shubb
16
              Defendants.
17

18

19

20

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND............................................1

      A.    PLAINTIFF'S CLASS AND PAGA CLAIMS .......................................1

      B.    DEFENDANT'S STRONG DENIAL OF LIABILITY .............................4

      C.    DISCOVERY COMPLETED .................................................................5

III.  SUMMARY OF THE SETTLEMENT TERMS AND RELIEF OBTAINED ..........5

      A.    CLASS DEFINITION ............................................................................5

      B.    SETTLEMENT AMOUNTS ...................................................................6

      C.    CALCULATION OF THE INDIVIDUAL SETTLEMENT PAYMENTS ....6

      D.    SCOPE OF THE RELEASE...................................................................7

            1.    Settlement Class Members' Release .............................................7

            2.    Class Representative Release ......................................................8

      E.    ALLOCATION OF UNCLAIMED FUNDS ..............................................8

      F.    SETTLEMENT ADMINISTRATION AND NOTICE PROCEDURE ...........9

IV.   LEGAL STANDARD FOR PRELIMINARY APPROVAL OF cLASS aCTION
      SETTLEMENTS ..........................................................................................10

V.    LEGAL ARGUMENT ....................................................................................11

      A.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ...............11

            1.    All Rule 23(a) Prerequisites Certification Are Present.........................12

                  a.    Rule 23(a)(1) —Numerosity ..................................................12

                  b.    Rule 23(a)(2) —Commonality................................................12

                  c.    Rule 23(a)(3) —Typicality ...................................................13

                  d.    Rule 23(a)(4) —Adequacy of Representation ..........................13

            2.    The Settlement Class Satisfies Rule 23(b)(3) .................................14

                  a.    Predominance and Superiority Requirements Are Met ...................14

      B.    THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE ........15

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    1. The Strength of Plaintiff's Case and Potential Exposure to Defendant's..............15

2    2. Risk, Expense, Complexity, and Likely Duration of Further Litigation ...............16

3    3. Amount Offered in Settlement.................................................................................16

4    4. Extent of Discovery and the State of the Proceedings...........................................18

5    5. Experience and Views of Counsel ........................................................................19

6    6. Presence of a Government Participant ...................................................................19

7  C. THE SERVICE AWARD AND ATTORNEY'S FEES AND COSTS
     PROVISION FALL WELL WITHIN THE RANGE OF REASONABLENESS...........19

8    1. Courts Routinely Award Class Representative A Service Award .......................19

9    2. The Significant Amount of Work Performed by Class Counsel Supports

10     the Request for Attorney's Fees and Reimbursement of Actual Costs .................20

11 VI. THE PROPOSED NOTICE TO CLASS MEMBERS IS FAIR AND ADEQUATE ..................22

12 VII. CONCLUSION................................................................................................................23

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF AUTHORITIES**

**Page(s)**

### United States Supreme Court Cases

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997)...............................................................................12, 14

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)............................................................................................21

*Crown, Cork & Seal Co. v. Parker*,
   462 U.S. 345 (1983)............................................................................................14

*Deposit Guaranty Nat. Bank v. Roper*,
   445 U.S. 326 (1980)............................................................................................21

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)............................................................................................22

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)............................................................................................22

### Federal Cases

*Adoma v. Univ. of Phoenix, Inc.*,
   913 F.Supp.2d 964 (E.D.Cal.2012)....................................................................19

*Barbosa v. Cargill Meat Sol. Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) .......................................................................18

*Dunleavy v. Nadler*,
   213 F.3d 454 (9th Cir. 2000) .............................................................................11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir.1998) ............................................................................11

*Ingram v. The Coca- Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001).......................................................................19

*James v. City of Dallas*,
   254 F.3d 551 (5th Cir. 2001) .............................................................................12

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) .......................................................................11, 14

*Mangold v. California Pub. Utils. Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) .............................................................................20

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ................................................................................................12

*Mora v. Cal W. Ag Servs., Inc.*,
    No. 1:15-CV-1490 LJO EPG, 2018 WL 3201764 ..............................................................11

*Murillo v. Pac. Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010) (Shubb, J.) .....................................................................11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................................18

*Officers for Justice v. Civil Service Commission*,
    688 F.2d 615 (9th Cir. 1982) ..............................................................................................18

*Ontiveros v. Zamora*,
    No. 2:08-567-WBS-DAD, 2014 WL 3057506 (E.D. Cal. July 7, 2014.)..............................11

*Oracle Secs. Litig.*,
    No. 90–0931, 1994 WL 502054 (N.D.Cal. June 18, 1994) ................................................20

*Pelletz v. Weyerhaeuser Co.*,
    592 F. Supp. 2d 1322 (W.D. Wash. 2009)..........................................................................19

*Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................................................10

*Smith v. Tower Loan of Miss., Inc.*,
    216 F.R.D. 338 (S.D.Miss.2003) ........................................................................................20

*State of California v. eBay, Inc.*,
    No. 5:12-CV-05874-EJD, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ..........................18

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..............................................................................................10

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................................................15

*Ventura v. New York City Health and Hosp., Inc.*,
    125 F.R.D. 595 (S.D.N.Y. 1989) ........................................................................................13

*Villegas v. J.P. Morgan Chase & Co.*,
    No. CV 09-00261 SBA EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ....................18

**State Cases**

*Bell v. Farmers Ins. Exch.*,
    115 Cal. App. 4th 715 (2004) ........................................................................................19, 22

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

*Dunk v. Ford Motor Co.*,
   48 Cal. App. 4th 1794 (1996) .................................................................22

*Lealao v. Beneficial California, Inc.*,
   82 Cal. App. 4th 19 (2000) ....................................................................21

*Mendiola v. CPS Security Solutions, Inc.*,
   60 Cal.4th 833 (2015) ...........................................................................15

*Morillion v. Royal Packing Co.*,
   22 Cal.4th 575 (2000) ...........................................................................15

*Richmond v. Dart Indus., Inc.*,
   29 Cal. 3d 462 (1981) ...........................................................................21

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) .............................................................................21

*Vasquez v. Superior Court.*,
   4 Cal. 3d 800 (1971) .............................................................................21

### Federal Statutes

29 U.S.C. § 201 ...........................................................................................8

29 U.S.C. § 207(l) .......................................................................................2

29 U.S.C. §§ 207, 211(c), 216(b) ...............................................................4

### Federal Rules of Civil Procedure

Fed. Rule Civ. Proc. 23 .........................................................................12, 14

### California Rules of Court

Business and Professions Code §§ 17200 et seq. ........................................4

Labor Code section 1450 et seq. .................................................................2

California Labor Code §1451(c) .................................................................15

California Code Civil Procedure Section 1542 ............................................9

California Labor Code Section 203 ..............................................................3

### Other Authorities

Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (2002), §§ 11.25 ....................................11

Costly Legal System 12 J. Legal Stud. 41 (1983)........................................21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5 James Wm. Moore et al., *Moore's Federal Practice*, § 23.22 (3d ed. 1999) .........................................12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# I.   **INTRODUCTION**

Plaintiff Joseph Osegueda ("Plaintiff") seeks preliminary approval of a non-reversionary $225,000 class action and Private Attorney General Act of 2004, Cal. Labor Code § 2698 et seq., ("PAGA") settlement entered into with Defendant Northern California InAlliance ("InAlliance" or "Defendant"). [Declaration of Graham S.P. Hollis in Support of Plaintiff's Motion for Preliminary Approval ("Hollis Decl.") ¶3; Exhibit 1 to Hollis Decl.]  The Settlement will provide significant monetary recovery to the approximately 375 similarly situated Independent Living Facilitators ("ILF") who worked for Defendant from February 22, 2014 through the date of preliminary approval (the "Class Period").  The settlement resulted only after the parties conducted extensive investigation, including a thorough analysis and review of Defendant's employment policies and practices applicable during the Class Period; review thousands of documents and records, and conducted a significant number of in-depth interviews.  [Hollis Decl. at ¶¶37-49.]  The settlement is the product of hard-fought negotiations, after a full-day mediation before David L. Perrault, Esq., an experienced mediator well-versed in wage and hour class actions. [*Id.* at ¶¶19-35.] The Settlement is also strongly supported by experienced counsel, who carefully considered the strength of the claims and Defendant's potential defenses, as well as the expense, complexity, risks, and likely duration of continued litigation. [*Id.* at ¶¶7-11; 50-66; 99-110.] The Settlement appears fair, adequate and reasonable when balanced against the uncertainty and novelty of Plaintiff's overtime claims under the more recently enacted California's Domestic Worker Bill of Rights ("DWBR"); the significant risks and expense of continued litigation, which the parties anticipates will likely continue for several years, and could potentially result in Defendant's inability to satisfy a judgment, and the real possibility of the parties' filing appeals. Thus, the Settlement merits preliminarily approval because it satisfies all of the criteria for preliminary approval as it provides significant and timely monetary relief to the class and avoids the waste of resources and costly and lengthy litigation.

# II.   **FACTUAL AND PROCEDURAL BACKGROUND**

## A.   **PLAINTIFF'S CLASS AND PAGA CLAIMS**

Plaintiff worked for Defendant as an Independent Living Facilitators ("ILF") in Sacramento and Yolo County. [Declaration of Joseph Osegueda in Support of Motion for Preliminary Approval ("Osegueda Decl.") at ¶3.] Defendant is a nonprofit organization located in Sacramento, California.

1

Through Defendant's relationship with the State of California's Department of Social Services, In-Home Supportive Services ("IHSS") Program and the Alta California Regional Center, Defendant InAllliance provides supported living services and independent living services to adults with developmental disabilities, who are referred to as participants or consumers. [Osegueda Decl. at ¶5; Hollis Decl. ¶17.] These services enable participants to live independently in their own home, instead of having to live with family members, in a group home, or in a facility. [Osegueda Decl. at ¶ 6.]  ILF supervised participants with disabilities and provided companionship. [*Id.*] ILF'S duties include supervising the participant, helping him or her out of bed, bathing, brushing teeth, assisting with bowel and bladder care, dressing, transportation to doctor's appointments, dispensing medication, grocery shopping, preparing and cooking meals, doing laundry, doing dishes, tidying and cleaning, mopping, vacuuming, emptying the trash, and checking the mail. [*Id.*]

InAlliance classified Plaintiff and ILFs as "personal attendants" and did not pay them for daily overtime.  A personal attendant is a "person employed by a private householder or by any third party employer recognized in the health care industry to work in a private household, to supervise, feed, or dress a child or person who by reason of advanced age, physical disability, or mental deficiency needs supervision." IWC Wage Order No. 15-2001, § 2(J).  Plaintiff alleges the following wage and hour claims on behalf of the ILFs:

1. Failure to Pay all Overtime Wages:  Plaintiff alleges that ILF were not properly paid for all overtime wages because Defendant have a common overtime policy and practice, or lack of thereof, to only pay overtime wages for hours worked over 40 hours in a week. [Hollis Decl., ¶¶ 18-22.] Plaintiff acknowledges that employees who work as personal attendants are exempt from the majority of the provisions of California Wage Order No. 15, including the overtime provision. As a result, in California, personal attendants historically have not been paid overtime.  Nonetheless, that changed when California enacted the Domestic Worker Bill of Rights ("DWBR"), which is codified at California Labor Code section 1450 *et seq.*, and became effective in January 2014. The DWBR provides that domestic workers working as personal attendants are entitled to overtime when they work more than nine hours a day. *Ca. Lab. Code §1454.*  In addition, under the Fair Labor Standards Act ("FLSA"), personal attendants are entitled to overtime when they work more than 40 hours a week. 29 U.S.C. § 207(l).  Plaintiff alleges that

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Defendant required Plaintiff and other ILF to work significant amounts of *daily* overtime but did not pay the daily overtime at the corresponding overtime hourly rate. [Hollis Decl. ¶¶ 18-21.] In addition, Plaintiff claims that Defendant did not credit toward overtime the ILF's sleep time. [*Id.* at ¶21.] InAlliance's common policy was to exclude sleep time from ILFs' overtime calculations, in accordance with the FLSA. [*Id.*] However, Plaintiff claims that under California Law, ILF's sleep time was still on-call time, and therefore under the control of Defendant, and should have not been excluded from the overtime calculations.

2. <u>Failure to Pay for All Wages for Off-the-Clock Work</u>: Plaintiff alleges Defendant frequently communicated with him via cell phone when he was off-duty. Supervisors would send text messages to him and other ILFs, and occasionally call them, about their schedules, issues with the participants, and to discuss their duties.  [Hollis Decl., ¶ 22-23.]

3. <u>Failure to Reimburse Necessary Business Expenses</u>: Plaintiff alleges InAlliance required Plaintiff and ILFs to use their personal cell phones to communicate with their supervisors regarding issues with the participants and to perform their duties, such as making transportation arrangements, scheduling doctor's appointments, and communicating with the participant's family. [Hollis Decl., ¶23.] InAlliance's cell phone and expense reimbursement policies do not inform ILFs that they are entitled to reimbursement for the work-related use of their cell phones, and for the majority of the class period, InAlliance did not reimburse Plaintiff and ILFs any amount for the cost of their personal cell phones. [Hollis Decl., ¶23, Ex. 6 to Hollis Decl.]

4. <u>Failure to Provide Accurate Wage Statements</u>: Plaintiff alleges direct and derivative claims resulting from Defendant's failure to include the correct overtime hourly rate in the wage statements provided to the putative class. [Hollis Decl., ¶24.]

5. <u>Waiting Time Penalties and PAGA Penalties:</u> Plaintiff alleges statutory waiting time penalties under California Labor Code section 203 and civil penalties under PAGA resulting from Defendant's alleged failure to pay all overtime wages at the appropriate overtime rate.  [Hollis Decl., ¶25.]

Plaintiff filed his class and PAGA representative action in the Sacramento County Superior Court, entitled on February 22, 2018.  On April 6, 2018, InAlliance filed a Notice of Removal. On March 5, 2019, Plaintiff filed his First Amended Complaint ("FAC"), alleging the following causes of action: (1)

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1  failure to pay minimum and regular wages; (2) failure to pay all overtime wages; (3) failure to indemnify

2  necessary business expenses; (4) failure to provide accurate itemized wage statements; (5) failure to timely

3  pay all wages due upon separation of employment; (6) violation of Business and Professions Code §§

4  17200 et seq.; (7) violation of the Private Attorneys General Act of 2004, Labor Code §§ 2698, et seq.;

5  and (8) violation of the Fair Labor Standards Act ("FLSA") (29 U.S.C. §§ 207, 211(c), 216(b)).  Since

6  then, the parties have engaged in formal discovery.  No trial date has been set, and neither of the parties

7  have filed any dispositive motions.

8  **B.      DEFENDANT'S STRONG DENIAL OF LIABILITY**

9          Defendant denies any liability or wrongdoing of any kind associated with the claims alleged, and

10  further deny that this Action is appropriate for class treatment for any purpose other than settlement.

11  [Hollis Decl., ¶¶ 26-30.] Among other things, Defendant maintains that it complies with all of their

12  overtime obligations under both California and Federal law, and that Plaintiff and all Class Members were

13  all properly paid for all overtime wages. [See e.g. Answer to First Amended Complaint, Docket No. 16 at

14  11:18-23.] Defendant maintains that Class Members had autonomy in the execution of their duties and

15  that their hours worked varied greatly and claim that these variations present an obstacle to class

16  certification. [*Id*. at 21:6-10.] Defendant further claims that Class members' sleep time was exempt from

17  the Domestic Worker Bill of Rights and exempted from the 40-hour workweek rule under both California

18  and Federal law, and therefore, not entitled to overtime pay for sleep time. [*Id*. at 12:13-15.] Defendant

19  also maintains that any work performed by Class Members off-the-clock was performed without its

20  permission, that InAlliance was unaware that Class Members had performed duties off-the-clock, and that,

21  if Defendant had known that Class Members had performed work off-the-clock, it would have provided

22  them compensation for their work. [*Id*. at 13:25-14:1.] Defendant vehemently denies that any class

23  member was required to answer calls or remain on-duty while off-the-clock, and that, if any class member

24  did so, was voluntarily. Defendant further claims there are no written policies requiring employees to use

25  their phones for work related purposes, which it claims creates an obstacle for class certification.

26          With respect to Plaintiff's claim for waiting time penalties, Defendant alleged that its good-faith

27  belief in the use of its timekeeping and payroll practices precludes the imposition of any waiting time

28  penalties since Plaintiff will not be able to prove that Defendant's alleged failure to pay all final wages at

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

4

the time of separation was "willful." [*Id.* at 12:6-9.]  With respect to PAGA, Defendant claims that it did not engage in any Labor Code or Wage Order violations and Plaintiff will not be able to demonstrate that Defendant is liable for civil penalties under PAGA. [*Id.* at 16:3-8.]

**C.   DISCOVERY COMPLETED**

The parties exchanged initial disclosures in August 2018. Plaintiff served formal written discovery consisting of interrogatories and document requests, to which Defendant provided responses and documents in January 2019. [Hollis Decl. at ¶38.] Defendant's document production included Plaintiff's personnel file, Defendant's personnel policies, information about Defendant's supported living services program, and Defendant's contract with Alta California Regional Center. [*Id.* at ¶ 40.]  Plaintiff obtained the names and contact information for over 270 employees, and Defendant produced over 60,000 time and pay records. [*Id.* at ¶41.] Thereafter, Plaintiff's counsel spent a significant amount of time reviewing thousands of time and pay records for each of the years at issue during the class period. [*Id.* at ¶¶ 42-43.] Plaintiff's counsel also conducted in-depth phone interviews with approximately 30 ILFs, including Plaintiff. [*Id.* at ¶ 44.] Only after conducting independent investigation of the allegations, the Parties agreed to engage in settlement negotiations and agreed to attempt to resolve Plaintiff's claims through private mediation. [*Id.* at ¶¶ 45-49.]  On July 31, 2019, the Settling Parties participated in a private mediation with mediator David L. Perrault, Esq., which, after much further negotiations between the parties, resulted in a Stipulation and Settlement Agreement.  [*Id.* at ¶¶ 31-35.]

**III.   SUMMARY OF THE SETTLEMENT TERMS AND RELIEF OBTAINED**

**A.   CLASS DEFINITION**

"Class" or "Class Member" means all individuals who are members of the Independent Living Facilitator Class and the Waiting Time Penalties Subclass. [Ex. 1 to Hollis Decl., SA, at ¶1.1.] The Independent Living Facilitator Class means all current or former employees of InAlliance who worked in the State of California in the position of ILF at any time from February 22, 2014 through the Preliminary Approval Date. [*Id.*, SA at ¶1.7.] The Waiting Time Penalties Subclass means any members of the ILF Class whose employment ended, according to InAlliance records, between February 22, 2015 and the Preliminary Approval Date and who does not timely opt-out of the Settlement Class. [*Id.*, SA at ¶1.43.]

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**B.    SETTLEMENT AMOUNTS**

1. Maximum Settlement Amount. Defendant will pay a non-reversionary Maximum Settlement Amount of $225,000. [*Id.*, SA at ¶1.19.] The Maximum Settlement Amount does not include the employer's share of the applicable payroll taxes. [*Id.*]

2. Net Settlement Amount. The Net Settlement Amount ("NSA") is the portion of the Maximum Settlement Amount available for distribution to participating Class Members after the deduction of the court-approved Class Counsel's fees and costs, the Class Representative Service Award, the Settlement Administration Costs, and LWDA's portion of the PAGA Payment. The NSA is currently estimated in $122,526.50. [Ex. 1 to Hollis Decl., SA at ¶1.20.] Any amounts not awarded to the Class Representative and any amounts not awarded as Class Counsel's Fees and Costs, will be allocated to the Net Settlement and distributed to the Class Members. [*Id.*]

3. Settlement Administration Costs. The Settlement Administration Costs are estimated not to exceed $10,500. [Declaration of Sean Hartranft re Qualifications of Ilym Group, Inc. ¶¶ 3-9; Ex. B to Hartranft Decl.]

4. Payment to the LWDA. The parties agree to pay the sum of $11,250 for all applicable penalties under PAGA to the Labor and Workforce Development Agency ("LWDA").   The $11,250 will be allocated 75% (or $8,473.50) paid directly to the LWDA and the remaining 25% (or $2,812.50) will be distributed among the PAGA Aggrieved Employees as penalties. [*Id.*, SA at ¶ 2.4.1.]

5. Class Counsel Attorney's Fees and Costs. Class Counsel seek an award of $75,000, representing 1/3 of the Maximum Settlement Amount as payment for attorney's fees already incurred for prosecuting this Action. [*Id.*, SA at ¶ 2.6.1.] Class Counsel also seeks reimbursement of out of pocket expenses incurred not to exceed $9,000. [*Id.*, SA at ¶ 2.6.2.]

6. Class Representative Service Payments. Subject to Court approval and the execution of a general and broader release in favor of the Defendant, Plaintiff Joseph Osegueda seeks preliminary approval of a Class Representative Service Award in an amount not to exceed $5,000.  [*Id.*, SA at ¶ 2.5.1.]

**C.    CALCULATION OF THE INDIVIDUAL SETTLEMENT PAYMENTS**

The Settlement Administrator shall have the obligation to calculate the amounts of Individual Settlement Payments in accordance with the methodology set forth in the Settlement.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1.  <u>The Independent Living Facilitator Class.</u>  The parties allocated 95% of the Net Settlement Sum to the Settlement of the class claims. Participating Class Members shall receive a pro-rata portion of the Net Settlement Amount available for distribution based upon their respective number of Qualifying Workweeks. [Hollis Decl. at ¶55; Ex. 1 to Hollis Decl., SA at ¶2.3.4.] In addition, each Participating Class Member who is also a member of the Waiting Time Penalty Subclass will receive an allotment of six (6) additional Qualifying Workweeks. [Ex. 1 to Hollis Decl.*, SA at ¶2.3.5.] Therefore, each Class Member who does not submit a Request for Exclusion will be mailed a check representing their Individual Settlement, which shall be calculated, depending on the number of qualifying workweeks worked during the class period.

2.  <u>Opt-In FLSA Class</u>.  The parties allocated 5% of the Net Settlement Sum to the settlement of the FLSA claims. [Ex. 1 to Hollis Decl., SA at. ¶2.3.6.]   Class Members will need to opt-in to the FLSA Settlement by timely submitting their FLSA Opt-In Form to receive their FLSA Settlement Payment. Each FLSA Collective Action Member shall be entitled to a pro-rata share of the FLSA Settlement Fund based on the ratio of the total number of Qualifying Workweeks that he or she worked during the Class Period to the total number of Qualifying Workweeks that all FLSA Collective Action Members worked during the Class Period. [*Id.*] To the extent a Class Member fails to timely submit their FLSA Opt-In Form, he/she will receive his/her proportionate share of the Net Settlement Fund and their release will not include FLSA claims. [*Id.*]

**D.   SCOPE OF THE RELEASE**

**1.   Settlement Class Members' Release**

The release is carefully tailored to the claims at issue in the case. Upon the Effective Date, the Class Representative and all Participating Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released State Law Claims and Released PAGA Claims.  [Ex. 1 to Hollis Decl.*, SA at ¶¶10.1, 10.3.] The Released State Law Claims are defined as any and all claims asserted in the Lawsuit, including  any and all claims under applicable state laws for the failure to pay any type of overtime compensation or minimum wage to any member of the Independent Living Facilitator Class; any and all for failure to timely pay wages, including payment of wages at termination; any and all claims which arose

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

under applicable state law for reimbursement for all necessary costs, expenditures, losses or expenses incurred by any member of the Independent Living Facilitator Class in connection with their employment with InAlliance; any and all claims which arose under applicable state law for wage statement violations; and (f) all claims for wages, penalties or additional damages, including without limitation waiting time penalties. [*Id.*, SA at ¶ 1.34.]

In addition, upon the Effective Date, all Participating Class Members who submit valid FLSA Opt-In Forms shall be deemed to have, and by operation of the Judgment shall have released all Released Federal Law Claims. [*Id.*, SA at ¶10.2.] The Released Federal Law Claims shall collectively mean any and all federal wage and hour law claims, obligations, demands, actions, rights, causes of action, and liabilities against InAlliance, of whatever kind and nature, character and description, that are alleged or that could have been alleged based on the facts alleged in the First Amended Complaint for any type of relief, based on any and all claims arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §201, et seq. [*Id.*, SA at ¶1.32.]

### 2.  Class Representative Release

The Class Representative's Service Award constitutes a service payment for Plaintiff Osegueda's services and assistance to the Class and for the work and the time he put into this Litigation.  Additionally, the Service Award is made in recognition for Plaintiff Osegueda's willingness to provide a full and separate general releases of all claims regardless of whether such claims have been alleged against Defendant, including without limitation known or unknown claims, whether for economic damages, non-economic damages, punitive damages, restitution, tort, contract, penalties, injunctive or declaratory relief, attorney's fees, costs, or other monies or remedies. [Ex. 1 to Hollis Decl., SA at ¶¶ 2.5.3, 2.5.4.] The Class Representative shall release, acquit and discharge the released parties from all claims against the released parties of any kind whatsoever, whether known or unknown, that arose, accrued or took place at any time on or prior to the date on which the full and general release is executed, and expressly waive the benefit of Section 1542 of the California Code Civil Procedure. [*Id.* at ¶2.5.4.]

### E.  ALLOCATION OF UNCLAIMED FUNDS

The settlement amount is non-reversionary and if any Class Members opt out of the settlement, amounts allocated to those individuals will not revert to Defendant. [Ex. 1 to Hollis Decl., SA at ¶ 9.1.] If

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

checks remain uncashed after 180 days, those amounts will be donated to the Legal Services of Northern California, which provides a wide variety of Pro Bono Legal Services, as a cy pres recipient. (*Id.* at ¶9.2.1.]

**F.    SETTLEMENT ADMINISTRATION AND NOTICE PROCEDURE**

The parties have selected Ilym Group, Inc. ("ILYM") to serve as the Settlement Administrator. [Ex. 1 to Hollis Decl., Settlement at ¶ 1.37.] Ilym has vast experience administrating class action settlement. [See Hartranft Decl. ¶¶ 2-3; Ex. A to Hartranft Decl.] Defendants will provide the data to the Settlement Administrator pertaining to members of the class members within 10 business days from the date of the order granting Preliminary Approval. [Ex. 1 to Hollis Decl., SA at ¶ 4.1.] Within 14 days following the receipt of the data from Defendants, the Settlement Administrator will mail the Class Notice to each member of the Settlement Class via first class U.S. mail. [Ex. 1 to Hollis Decl., SA at ¶ 4.4.]

The Settlement Administrator will initially undertake address verification measures including utilization of an Accurint skip trace as well as searching the National Change of Address Database maintained by the United States Postal Service. [Ex. 1 to Hollis Decl. at SA ¶4.3.] Therefore, prior to the mailing of the Notice to the Class Members, the Settlement Administrator will run one Accurint (or substantially similar) skip trace as well as perform one basic search on the National Change of Address Database to attempt to obtain the best possible address for the Class Members before it mails the notices. [Hollis Decl. at ¶89.]

If any Notice Packet is returned to the Settlement Administrator as undeliverable within the 60-calendar day deadline, the Settlement Administrator shall make all reasonable efforts to locate a forwarding address, including performing a skip-trace using that Class Member's social security number and shall re-mail the Notice. [Ex. 1 to Hollis Decl., SA at ¶4.10.]  The Settlement Administrator will promptly resend the Notice Packet to that forwarding address along with a brief letter stating that the recipient of the Notice Packet has until the original deadline set forth on the original Notice, or ten (10) calendar days after the date of re-mailing of the Notice Packet (whichever is later) to object or submit a Request for Exclusion.  If any Notice Packet is returned from any mailing and/or re-mailed, the Settlement Administrator will note for its own records and notify the Parties' Counsel of the date of such re-mailings as part of a weekly status report provided to the Parties. [*Id.*, SA at ¶4.11.]

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Class Members will need to opt-in to the FLSA Settlement by timely submitting their FLSA Opt-In Form to receive their FLSA Settlement Payment.  [Hollis Decl. ¶77.] Class members will have 60 calendar days following the initial mailing of the Notice to submit their FLSA Opt-In Form. [Ex. 1 to Hollis Decl., SA at ¶4.7.]  To the extent a Class Member fails to timely submit their FLSA Opt In Form, he/she will receive his/her proportionate share of the Net Settlement Fund and their release will not include FLSA claims.  [*Id*., SA at ¶1.12.]

Class Members who wish to exclude themselves from the Settlement must submit a Request for Exclusion postmarked by the Objection/Exclusion Deadline. [*Id*., SA at ¶6.1.]  The Objection/Exclusion Deadline is 60 calendar days following the initial mailing of the Notice. [*Id*.] Any Class Member who properly requests exclusion using this procedure will not receive any payment from the Settlement and will not be bound by the Stipulation of Settlement or have any right to object, appeal or comment thereon. [*Id*.] Class Members who do not submit a valid and timely Request for Exclusion shall be bound by all terms of the Stipulation of Settlement and any judgment entered in the Actions once the Settlement is approved by the Court. [*Id*.]

At least 25 days prior to the final approval hearing, the Settlement Administrator shall provide counsel for the parties with an accounting of the Class Maximum Settlement Amount and report the amount of all payments to be made to each Class Member by employee number. [Ex. 1 to Hollis Decl., SA at ¶8.4.]   Upon completion of administration of the Settlement, the Settlement Administrator will provide a written declaration under oath to certify such completion of the Settlement Administration to the Court and counsel for all parties. [*Id*.]

IV.     **LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS**

Judicial policy strongly favors settlement, particularly in class actions and other complex litigation cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. Class *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 4 Albert Conte & Herbert B. Newberg, Newberg on Class Actions ("4 Newberg (4th ed. 2002)") § 11:41 (4th ed. 2002). "To vindicate the settlement of such serious claims, however, judges have the responsibility of ensuring fairness to all members of the class presented for certification." *Staton v. Boeing Co.*, 327 F.3d 938, 952

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

(9th Cir. 2003).  The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1238 (9th Cir. 1998)).

There are two stages to a court's approval of a proposed class action settlement. In the first phase, the court temporarily certifies a class, authorizes notice to that class, and preliminarily approves the settlement, with final approval contingent on the outcome of a fairness hearing. *Ontiveros v. Zamora*, No. 2:08-567-WBS-DAD, 2014 WL 3057506, at *2 (E.D. Cal. July 7, 2014.) The court's role in evaluating a proposed settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.1998). The purpose of the Court's preliminary evaluation of the proposed Settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the Class and a formal fairness hearing are appropriate. *See* Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (2002) ("*Newberg*"), §§ 11.25.  If a court determines that a proposed class action settlement deserves preliminary approval, then notice of the action is given to the class members.

In the second phase, the court holds a fairness hearing and entertains class members' objections to both the suitability of the class action as a vehicle for this litigation and the terms of the settlement. *See Murillo v. Pac. Gas & Elec. Co.,* 266 F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.). Following the fairness hearing, the court makes a final determination regarding whether the parties should be allowed to settle the class action pursuant to the agreed upon terms. *See Mora v. Cal W. Ag Servs., Inc.,* No. 1:15-CV-1490 LJO EPG, 2018 WL 3201764, at *3 Cal. June 28, 2018), report and recommendation adopted, No. 1:15-CV-1490 LJO EPG, 2018 WL 4027017 (E.D. Cal. Aug. 22, 2018)("Following the fairness hearing, taking into account all of the information before the court, the court must confirm that class certification is appropriate, and that the settlement is fair, reasonable, and adequate.").

## V.      LEGAL ARGUMENT

### A.      THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

To be certified, the putative class must satisfy both the requirements of Federal Rule of Civil Procedure 23(a) and (b). *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

### 1.      All Rule 23(a) Prerequisites Certification Are Present.

Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes. *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003). A proposed settlement class is still subject to the requirements of FRCP Rule 23(a) and (b) which are "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). However, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Id.* Plaintiff respectfully submits that conditional certification is appropriate because the Settlement Agreement satisfies the requirements of both Rule 23(a) and Rule 23(b)(3).

a.      <u>Rule 23(a)(1) — Numerosity</u>

Defendant has already identified over 350 Settlement Class Members that have worked for Defendant between 2015 to 2018. [Hollis Decl. ¶¶ 128; Ex. 7 to Hollis Decl.] A putative class of this size satisfies the Rule 23(a)(1) numerosity element in the settlement context. 5 James Wm. Moore et al., *Moore's Federal Practice*, § 23.22 (3d ed. 1999).

b.      <u>Rule 23(a)(2) — Commonality</u>

The commonality preconditions of Rule 23(a)(2) are "construed permissively." *Hanlon, supra*, 150 F.3d at 1019. The presence of simply one common issue whose resolution will affect all or significant number of the putative class members suffices to satisfy the commonality requirement. *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001). Here, Plaintiff alleges at least one common written policy and practice that results in the underpayment of overtime wages to the Settlement Class. [Hollis Decl. ¶¶ 18-23; 129-132; Ex. 5-6 to Hollis Decl.]  For example, InAlliance's overtime policy from February 2017 states that "[t]he Personal Attendant pay code classification is compensated by pay only *and is paid overtime in excess of 40 hours per week and in accordance with applicable law if other than as set forth in this section*." [Ex. 5 to Hollis Decl.] Plaintiff's common legal theory similarly applies to all Settlement Class Members: considering that InAlliance only operates in California, it was obligated to notify the putative class members of their right to overtime under the California's Domestic Worker Bill of Rights (DWBR) and not just under the FLSA, especially since the DWBR has been effective since 2014.  Plaintiff

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

alleges InAlliance's overtime policy resulted in Settlement Class members not receiving all daily overtime under the DWBR. Therefore, the alleged overtime violations are common to each member of each class and could be proven by presenting evidence of a common overtime policy along with the putative class members' time and pay records.  Similarly, InAlliance's policy requiring putative class members to use their personal cell phones for work-related purposes and its failure to compensate them for this expense and for their time present common issues amenable to class treatment. [See Osegueda Decl., ¶ 11.] Plaintiff and the putative class members suffered similar violations and InAlliance's liability can be determined on a class-wide basis using evidence common to the class.

### c.   Rule 23(a)(3) —Typicality

Under this rule's "permissive standards," the representative Plaintiff's claims are "typical" if they are "reasonably co-extensive with those of absent class members." *Hanlon,* 150 F.3d at 1020. The typicality requirement is satisfied if Plaintiff's claims arise from the same events or course of conduct that give rise to the claims of other class members and are based on the same legal theory. *Ventura v. New York City Health and Hosp., Inc.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989). All of the Independent Living Facilitators were classified as non-exempt and all allegedly suffered the same or similar overtime violations and failures to reimburse for their business expenses. Similarly, Plaintiff's waiting time penalties claim is typical of the Waiting Time Subclass Members because they are derivative of the same alleged failure to properly pay for all overtime hours worked.  Furthermore, the claims of Plaintiff and the putative Class are based on identical legal theories.  Based on the foregoing, the typicality requirement is also satisfied in the settlement context.

### d.   Rule 23(a)(4) —Adequacy of Representation

Adequacy requirements are established on the basis that the proposed Class Representative, Named Plaintiff, has no conflict of interest with other Class Members and is represented by qualified counsel. *Hanlon*, *supra,* 150 F.3d at 1020. Plaintiff Osegueda has demonstrated his commitment to the class and has no known conflicts of interest with the Class. [Hollis Decl., ¶¶ 124-125, Osegueda Decl., ¶34.] Plaintiff has spent significant amounts of time and made personal sacrifices to act as the named Plaintiff in this case. [Osegueda Decl., ¶¶17-25] Plaintiff's Counsel are well-situated to assume the responsibilities of Class Counsel because they are experienced employment and class action litigators who

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

are fully qualified to pursue the interests of the Class. [Hollis Decl., ¶¶ 7-11; Ex. 4 to Hollis Decl.] Class Counsel have demonstrated their commitment to vigorously prosecuting the case on behalf of the Settlement Class. [Hollis Decl. ¶¶113-119.]  Plaintiff's counsel is adequate class counsel under Rule 23(a)(4) and meet the criteria for fairly and adequately representing the class under Rule 23(g)(1).

### 2.    The Settlement Class Satisfies Rule 23(b)(3)

An action that meets all the prerequisites of Rule 23(a) may only be certified as a class action if it also satisfies the requirements of one of the three subdivisions of Rule 23(b). *Leyva*, 716 F.3d at 512. Plaintiff seeks provisional certification under Rule 23(b)(3), which provides that a class action may be maintained only if (1) "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a.    Predominance and Superiority Requirements Are Met

The predominance inquiry focuses on the relationship between the common and individual issues, testing whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Products, Inc., v. Windsor* 591 at 521 U.S. at 623.  Here, Plaintiff's and Settlement Class members' common question of law and fact predominate over any question affecting only individual members.  For example, all class members were classified as personal attendants and covered under the same Personal Attendant's overtime policy. [Ex. 5 to Hollis Decl.] Common questions of law include whether Settlement Class members are entitled to overtime pay for hours worked after the ninth hour of work under the California DWBR; whether Defendant's common written overtime policy results in liability for overtime hours worked after the ninth hour of work; whether Settlement Class members are entitled to reimbursement of their cell phone expenses for their use of their cell phone for work related purposes, among others. [Hollis Decl. ¶¶ 18-23; 129-132; Ex. 5-6 to Hollis Decl.]

Class treatment is the superior method for resolving all claims in this case because a class action would (1) accomplish judicial economy by avoiding multiple suits, and (2) protect the rights of persons who might not be able to present claims on an individual basis. *See generally Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983). This is true in the settlement context, because the Court need not consider the manageability (or lack thereof) of a trial.

Graham**HOLLIS** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

**B.      THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE**

The Court's determination of whether a proposed settlement is fair, adequate, and reasonable is often said to require a balancing of several factors. These factors may include, among others: "the strength of plaintiff's case; the risk, expense, complexity, and the likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.  This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted.)

**1.      The Strength of Plaintiff's Case and Potential Exposure to Defendant's**

Although Plaintiff maintains his claims are meritorious and that he would have prevailed if he had taken the issues to trial, Plaintiff acknowledges that Defendant possesses legitimate defenses to both liability and class certification. [Hollis Decl., ¶¶26-30, 54-59.]  For example, Plaintiff's main claim for failure to pay overtime wages for hours worked on-the-clock and after the ninth hour of work in a workday as well as the overtime hours worked during "sleep time" present real challenges.  Defendant adamantly claim they are exempted from the California DWBR application and there is no clear case law as to whether an exemption should apply here. *Ca. Labor Code §1451(c)*.  Similarly, Defendant claims "sleep time" should not be included in the calculation of overtime hours worked.  Conversely, Plaintiff claims that, under California law, "sleep time," or that time during an employee's 24-hour work shift when he or she is permitted to sleep with or without interruption, *but is still on call* and may be interrupted for work purposes, may *not* be excluded from hours worked or from overtime under any circumstances. *See Mendiola v. CPS Security Solutions, Inc*., 60 Cal.4th 833, 848-849 (2015).  Thus, Plaintiff's overtime claim based on "sleep time" not being properly calculated present the challenge of whether ILFs were on-call or not on-call, and therefore under the employer's control, during the "sleep time." *Id.*; *see also Morillion v. Royal Packing Co*., 22 Cal.4th 575, 587 (2000). While Plaintiff believes that these claims would have been certified, if this case were to proceed to trial,  Defendant would likely argue that plaintiffs' damages are 0, or a very low value, because Defendant paid overtime wages pursuant to the FLSA (and whenever the employees worked over 40 hours a week) and because the employees were not "on-call"

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

during sleep time. Plaintiff acknowledges the alleged claims' challenges in proof and the potential that the Defendant could prevail in their legal arguments, and avoid any liability.

More importantly, and as explain below, even if Plaintiff was successful in all their claims, and were able to prove up the estimated damages, the corporate Defendant had already represented its inability to satisfy a class action and PAGA judgment. [Hollis Decl., ¶¶ 63-64.] Defendant presented confidential financial information and documents at the mediation, that supported Defendant's inability to pay claim. [*Id.* at ¶ 66.]

### 2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

The formal discovery here is still in its early stages. [Hollis Decl., ¶¶ 56-62; 99-100] For example, to date, the parties have not taken any depositions and have not concluded their pre-certification discovery. [*Id.*] Therefore, further litigation could greatly delay resolution of this case and increase expenses. [*Id.*] Prior to any judgment, the parties would have had to litigate class certification, which would have required significant additional discovery, time, and expense. [*Id.*]  As part of the trial, the parties will likely incur in significant additional expense, including the expense of retaining experts to testify at trial.  [*Id.*] Appeals are also likely in this case and create additional uncertainty and delay. [*Id.* at ¶65.]  These factors weigh in favor of settlement of the action.

### 3.    Amount Offered in Settlement

The Settlement represents real monetary value to the class given the precarious financial situation of the Defendant. [Hollis Decl., ¶66.]  Defendant is a non-for-profit organization dedicated to provide essential domestic care and supporting living to persons with developmental disabilities and whose income mostly derives from state and federal grants. [*Id.* at ¶ 63.] Absent a Settlement, the precarious financial situation of the corporate Defendant would have likely lead to a bankruptcy filing, further delay, and the real possibility of recovering $0 for Plaintiff and the class. Therefore, the reasonableness of the proposed settlement is underscored by the fact that Plaintiff will unlikely be able to collect if a judgment is obtained against Defendant, and Defendant potentially viable grounds for not only challenging its liability, but also Plaintiff's estimate of the potential value of each claim—the most valuable of which—the unpaid overtime—Defendant assigned a near zero-dollar value. [*Id.* at ¶¶ 101-102.] Indeed, since this litigation began, Defendant has vehemently denied any liability for the claims alleged, contending that it followed

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

all applicable law with respect to Plaintiff and Class Members' employment and that even if Defendant were found liable, Plaintiff's damage estimates were inflated. [*Id.* at ¶¶ 54-57.] Furthermore, to the extent Plaintiff claims he was subject to illegal policies or procedures during his employment, Defendant maintains that its policies are lawful. [*Id.*]

By contrast, the Settlement will provide fair and reasonable recovery to the entire Class without further delay, especially given Defendant's financial condition. The highest value claims for the ILF Class was for unpaid overtime wages. Plaintiff calculated the value of this claim at approximately $3,800,000. Plaintiff assumed a 100% violation rate based on the company's overtime policy; assumed an average of 11 unpaid overtime hours per employee, per workweek, based on anecdotal interviews and review of a sample of the time and pay records. [Hollis Decl. ¶¶ 52a.] Additionally, Plaintiff alleges reimbursement claims based on using the cell phones for work-related purposes. Plaintiff estimates that the maximum value of these claims was $262,000, and assumed that class members were not reimbursed at a rate of $11.84 per pay period, which were calculating based off of Plaintiff's counsel interviews with witnesses. [Hollis Decl. ¶¶ 52b.]

Assuming preliminary approval is granted, the NSA, currently estimated at $123,026.50, will be distributed a pro-rata among the Class Members depending on the number of workweeks worked during the Class. [Hollis Decl., ¶¶ 76-79.] If all of the 375 estimated class members participate, the average recovery per class member will be approximately $328.06. [Hollis Decl., ¶80.] These are substantial sums that adequately recognizes the Plaintiff's and Class Members damages and compensates each of them appropriately. [*Id.* at ¶¶80-82.] While Settlement and the amounts paid to Class Members represents a significant discount on Plaintiff's estimate of the overall $7 million exposure to Defendant, this reduction represents an extremely reasonable compromise considering Defendant's ability to pay a judgement and the substantial risks Plaintiff would face establishing class certification and establishing liability on all claims against Defendant. [*Id.* at ¶¶ 60-66.] The Settlement commits Defendant to create a Maximum Settlement Fund that will provide Class Members a financial recovery and extinguish the risks attendant to continued litigation and any appeals that would likely be filed following the class certification decision or judgment in Plaintiff's favor. Indeed, such efforts by Defendant would likely result in a delay of several years before this case could finally be resolved, whereas the Settlement provides Class Members with a

significant and timely recovery from the $225,000 settlement amount, making it well within the range of reasonableness. [Hollis Decl. at ¶ 65.]

The settlement reflects a compromise on all of the disputed issues identified above. Plaintiff's risk of collecting any judgment, decertification, entitlement to overtime, minimum wages, and reimbursements owed, and the amounts are all disputed. The settlement reflects compromise on all of these issues. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 628 (9th Cir. 1982). As the Ninth Circuit noted in *Officers for Justice*, "[u]ltimately the amount of the [settlement payments] will be less than what some class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made." *Id*. The Court should approve the Settlement because the payments to Plaintiffs are substantial, and they represent a reasonable compromise of Plaintiff's wage and hour claims. Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Indeed, this settlement avoids expenditures of resources for all parties and the Court, and provides "significant benefit that [Plaintiffs] would not receive if the case proceeded—certain and prompt relief." *Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013).

### 4.     Extent of Discovery and the State of the Proceedings

Federal courts consider whether the proposed settlement agreement (1) appears to be the product of serious, informed, non-collusive negotiations; (2) "does not improperly grant preferential treatment to class representatives or segments of the class," and (3) contains any "obvious deficiencies" prior to granting preliminary approval. *State of California v. eBay, Inc.*, No. 5:12-CV-05874-EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012) Here, settlement discussions between the parties resulted only after exchanging substantial relevant information; conducting formal discovery, and after extensive, arms-length negotiations under the supervision of an experienced mediator. [Hollis Decl., ¶¶ 31-35;37-49.]  Thus, the parties conducted a thorough investigation into the merits of Plaintiff's claims

18

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

prior to entering into the Settlement. The information obtained and exchanged between the parties was sufficient for the parties to make an informed decision at the mediation about the resolution of this case. [*Id*.] It was after a year of litigation, the review of thousands of records, the preparation of calculations and valuations of each claim by counsel for both parties, and after consideration of all the risks of continuing litigation, that the parties agreed to accept the $225,000 in settlement. [*Id*.]  Thus, the parties negotiated the proposed Settlement in good faith and at arms-length, assisted by a competent mediator. [*Id*. at ¶¶ 31-35.]  These informed hard-fought negotiations resulted in the proposed Settlement.

### 5.   Experience and Views of Counsel

Class Counsel have extensive experience in complex California wage and hour litigation. [Hollis Decl., ¶¶ 7-11; Ex. 4 to Hollis Decl.] The settlement is fundamentally fair, adequate, and reasonable. [*Id*. at ¶¶ 98-109.] This settlement is the result of arms-length negotiations, between experienced counsel representing the interests of the Plaintiff and Defendant, facilitated by a skilled mediator, after thorough factual and legal investigation. [*Id*.]

### 6.   Presence of a Government Participant

No government entity participated in this case. However, Plaintiff brought claims under the California Private Attorney General Act of 2004, Cal. Labor Code § 2698 et seq., ("PAGA"). Because Plaintiff will share civil penalties of $11,250 with the State of California, this factor weighs in favor of approval of the settlement. *See Adoma v. Univ. of Phoenix, Inc*., 913 F.Supp.2d 964, 977 (E.D.Cal.2012) (Karlton, J.) (weighing civil penalties paid pursuant to PAGA in favor of settlement approval).

## C.   THE SERVICE AWARD AND ATTORNEY'S FEES AND COSTS PROVISION FALL WELL WITHIN THE RANGE OF REASONABLENESS

### 1.   Courts Routinely Award Class Representative A Service Award

Courts routinely approve service awards to compensate named plaintiffs for the services they provide and the risks they incur during the course of the class litigation. *Ingram v. The Coca- Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In re S. Ohio Corr. Facility,* 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *see also Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726 (2004) (upholding "service payments" to Named Plaintiffs for their efforts in bringing class case); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009) (noting that such awards "may be merited for time spent

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

meeting with class members, monitoring cases, or responding to discovery") (quoting Manual § 21:62 n.971); Manual § 21:62 n.971 (noting that service awards are warranted).

Federal courts recognize that "a class representative is entitled to some compensation for the expense he or she incurred on behalf of the class." *In re Oracle Secs. Litig.*, No. 90–0931, 1994 WL 502054, at *1 (N.D.Cal. June 18, 1994) (citing *In re Continental Ill. Secs. Litig.*, 962 F.2d 566, 571 (7th Cir.1992)). "Such payments, however, must be reasonable in light of applicable circumstances, and not 'unfair' to other class members." *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (S.D.Miss.2003) (citation omitted); *see also In re Oracle Secs. Litig.*, 1994 WL 502054 at *1 (reducing requested payment of $2,500 to $500 for spending "between two and five hours").

Here, Plaintiff assisted counsel with the investigation of the claims, preparation of the complaints, provided relevant documents, and worked with Class Counsel throughout the case, as detailed in the supporting declaration filed concurrently with this motion. [Hollis Decl., ¶ 124; Osegueda Decl., ¶¶16-35.]  Plaintiff was crucial in the prosecution of the litigation. [*Id.*]  Plaintiff spent significant hours discussing with Class counsel the facts related to their employment with InAlliance, including discussing their job duties, schedules, job responsibilities and company policies relating to the payment of regular and overtime wages, among others. [Osegueda Decl., ¶¶16-26.]  Plaintiff estimates he spent over 60 hours in this litigation.  [*Id.* at ¶ 35.]

## 2.   The Significant Amount of Work Performed by Class Counsel Supports the Request for Attorney's Fees and Reimbursement of Actual Costs

Class counsel has performed a significant amount of work to date, including conducting extensive research, investigation and analysis of each potential cause of action.  [Hollis Decl., ¶¶ 111-122.]  Class Counsel is highly experienced in wage and hour matters and class action cases, and has been appointed class counsel in numerous employment class action cases. [Ex. 4 to Hollis Decl.] Additionally, Class Counsel has committed and continues to commit significant financial and staffing resources to the representation of the Class Members.  [Hollis Decl., ¶¶ 117-118.]  Class Counsel's work resulted in the Settlement which provides significant benefits to class members.

When, as in the instant case, a federal court sits in diversity, state law governs the right to fees as well as the calculation of fees. *See Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470 (9th Cir.

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1995). In California, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund." *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977). Our legal system greatly relies on private litigants to enforce substantive provisions of law through class actions, especially Labor Code wage and hour provisions. Therefore, Courts recognize that an attorney providing the essential enforcement services must be provided incentives comparable to those negotiated in the private bargaining that takes place in the legal marketplace. *Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 338 (1980); Menell, A Note on Private Versus Social Incentives to Sue in a Costly Legal System 12 J. Legal Stud. 41 (1983) (Menell). It has therefore been urged (most persistently by Judge Richard Posner) that in defining a "reasonable fee" in such representative actions the law should "mimic the market."

The common fund doctrine rests on the commonsense notion that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund, those who benefited from the fund without contributing would be unjustly enriched while the client who created the fund faces the possibility of receiving no benefit because his recovery might be consumed by expenses. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Awards of common fund fees are also essential to furthering the important societal goal of attracting competent counsel to handle class actions, which California courts recognize as an important, necessary and desirable tool for assuring the effective enforcement of the Labor Code and minimum labor standards. *See, e.g., Vasquez v. Superior Court.*, 4 Cal. 3d 800, 807 (1971) (class action justified to prevent "random and fragmentary enforcement" of employer's legal obligations); *Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462, 473 (1981) ("this state has a public policy which encourages the use of the class action device"); *Bell*, 115 Cal. App. 4th at 741 ("By preventing a failure of justice . . . the class action not only benefits the individual litigant but serves the public interest in the enforcement of legal rights and statutory sanctions.") [citation omitted]. Because our legal system relies upon private litigants "to enforce substantive provisions of law through class and derivative actions, attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it will otherwise be economic for defendants to increase injurious behavior." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 47

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

(2000).  Substantial fee awards in successful cases encourage meritorious class actions, thereby promoting private enforcement of, and compliance with, the law. This common fund approach is especially suitable where, as here, a readily ascertainable (indeed, fixed) settlement fund is available. *See Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1808-09 (1996).

Under the terms of the Settlement, Class Counsel may seek attorneys' fees of up to $75,000 and actual and reasonable litigation costs.  This fee request represents 33% of the Maximum Settlement Sum. Class Counsels' fees and costs request is very fair and reasonable in light of the time, money and effort already invested in this case to date, which exceeds the amount requested. [Hollis Decl., ¶¶111-120.] To date, Class Counsel's lodestars exceed $175,000.  [*Id.* at ¶¶ 113-114.] Nonetheless, Class counsel has agreed to only seek $75,000, which represents only 42 % of the value of the services actually rendered in this case. [Hollis Decl., ¶114.]

As will be explained further in the fee motion that will be filed along with the final approval motion, the requested fees and costs are extremely reasonable. Class Counsel has had to divert many of its resources to this case to effectively prosecute and settle this action. [Hollis Decl., ¶¶116-118.] Accordingly, for purposes of this Motion, and as will be explained in detail in the fee application, the requested fee amount falls well within the range of reasonableness considering that case law supports a fee award as high as 50% on common law settlement funds less than $10 million. *See e.g. Van Vranken,* 901 F. Supp. at 297 (noting class counsel fee awards of 30- 50% are more typical where the common fund is less than $10 million).

## VI.   THE PROPOSED NOTICE TO CLASS MEMBERS IS FAIR AND ADEQUATE

The court must provide class members the best class action settlement notice practicable. See *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). The proposed class notice here satisfies these requirements because it informs Class Members, in plain language, about the terms of the Settlement and explains the payments to which they are entitled under the Settlement. [Exs. 2 and 3 to Hollis Decl.] The proposed notice plan, calling for first-class mailed notice to all Class Members, is consistent with class notices approved by state and federal courts. The Class Notice in this case summarizes the lawsuit, including the contentions and denials of the parties, the proceedings to date, and the terms and conditions of the Settlement. [Hollis Decl., ¶ 94.]

The Class Notice informs Settlement Class Members of where and how to get additional information, and that a final approval hearing has been scheduled. [Ex. 2 to Hollis Decl., pp. 4-5;7.]  It also informs them of their right to object to the adequacy of the Class Representatives and the Settlement, and explains the procedure for filing and appearing to present such objections. [*Id.* at ¶94.] Additionally, it notifies class members of the procedure to request exclusion from the class and opt in to the FLSA action. [*Id.*]

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court enter the concurrently filed [Proposed] Order granting preliminary approval of the Class Action Settlement, and approval of the class notice and notice plan.

Dated: December 16, 2019                               **GRAHAMHOLLIS** APC

By:   _____/s/ Vilmarie Cordero_____
                                 Graham S.P. Hollis
                                 Vilmarie Cordero
                                 Erik A. Dos Santos
                        Attorneys for Plaintiff Joseph Osegueda

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT