GRAHAM**HOLLIS** APC
Graham S.P. Hollis (SBN 120577)
ghollis@grahamhollis.com
Vilmarie Cordero (SBN 268860)
vcordero@grahamhollis.com
Erik A. Dos Santos (SBN 309998)
edossantos@grahamhollis.com

3555 Fifth Avenue, Suite 200
San Diego, California 92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiff Joseph Osegueda and
Aggrieved Employees

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH OSEGUEDA, individually and on behalf of all similarly situated and/or aggrieved employees of Defendants in the State of California,<br><br>        Plaintiff,<br><br>    v.<br><br>NORTHERN CALIFORNIA INALLIANCE; and DOES 1 THROUGH 50, inclusive,<br><br>        Defendants. | Case No.:   2:18-cv-00835-WBS-EFB<br><br>**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     January 13, 2020<br>Time:    1:30 PM<br>Judge:   Hon. William B. Shubb<br>Dept.:    5, 14th Floor |

I, Graham S.P. Hollis, declare as follows:

       1.     I am an attorney at law licensed to practice before all courts of the State of California.  I am a shareholder of the law firm GrahamHollis, APC in San Diego, California. My law firm, GrahamHollis APC is the attorney of record for Plaintiff.  Co-shareholder Vilmarie Cordero and associate Erik A. Dos Santos are the attorneys from my firm primarily handling this case.  I am thoroughly familiar with, and have personal knowledge of, all of the facts set forth herein.  If called as a witness, I could and would competently testify to the information set forth below.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

2.      I submit this declaration in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, which seeks an order: (1) preliminarily approving the proposed Joint Stipulation Settlement and Release; (2) approving the form and content of the Class Notice and FLSA Collective Action Member Consent to Join Form; (3) provisionally certifying the Settlement Class; (4) appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel; (5) approving ILYM Group, Inc. as the Settlement Administrator; and (6) scheduling a Final Approval Hearing.

3.      A true and correct copy of the fully executed Joint Stipulation of Settlement and Release ("Settlement Agreement" or "SA") is attached hereto as **Exhibit 1**.

4.      A true and correct copy of the Notice of Class Action Settlement ("Class Notice") is attached herein as **Exhibit 2** to the Settlement Agreement. A true and correct copy of the FLSA Collective Action Member Consent to Join Form ("FLSA Opt In Form") is attached herein as **Exhibit 3**.

5.      A copy of the Settlement Agreement was provided to the State of California, Labor and Workforce Development Agency ("LWDA") at the same time Plaintiff's Motion for Preliminary Approval of Class Action Settlement was filed with the Court.

6.      I am not aware of any class, representative or other collective action in any other court in this, or any other, jurisdiction that asserts claims similar to those asserted in this action on behalf of a class or group of individuals who would also be members of the class defined in this action. I made a reasonable inquiry of other members of my law firm and they are not aware of any such similar actions.

## I.      CLASS COUNSEL'S CLASS ACTION EXPERIENCE

7.      I have been a member of the State Bar of California since 1985. I have personally tried many bench and jury trials to verdict in various courts in California and I have represented employees and employers in employment litigation matters since 1995. My involvement in various forms of class action litigation spans more than twenty years.

8.      Over the past ten years, my firm has been appointed as Class Counsel and received adequate and fair settlements in over seventy class action lawsuits in the district and state courts of California with claims similar to those presented here. Additionally, my firm currently serves as plaintiff's counsel for approximately 50 wage and hour class and representative employment law cases.  A list of the cases in which my firm has served as class counsel and/or currently serves as counsel for plaintiff in wage

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

and hour employment actions pending throughout California is attached hereto as **Exhibit 4**.

9.     I have also served as defense counsel in the following class action cases: *Garza, et al. v. SRH Investments LLC, et al.*, Superior Court for the County of Los Angeles; *Avila, et al. v. Gateway Ivey Ranch Associates, et al.,* Superior Court for the County of San Diego; *Cabrera, et al. v. Fieldstone Communities, Inc., et al.,* Superior Court for the County of San Diego; *Cheatwood, et al. v. Greystone Homes, Inc., et al.*, Superior Court for the County of San Bernardino; *Castro, et al. v. Kaufman & Broad of Southern California, Inc. et al.*, Superior Court for the County of San Diego; *Flores, et al. v. Eastlake Trails Co. LLC et al.,* Superior Court for the County of San Diego; *Pacheco, et al. v. WL Coral Gate Associates, et al.*, Superior Court for the County of San Diego; *Garcia, et al. v. Cambridge Homes, et al.,* Superior Court for the County of Riverside; *Harris, et al. v. LNC Properties, LTD, et al.,* Superior Court for the County of San Bernardino; *Soriano, et al. v. Kaufman and Broad of Southern California, Inc., et al.,* Superior Court for the County of Kern; *Rodriguez, et al v. Epic Development Corporation, et al.,* Superior Court for the County of Kern; *Gates, et al. v. Kaufman and Broad Coastal Valleys, Inc., et al.,* Superior Court for the County of Los Angeles; *Zimmerman, et al. v. West Venture Development, Inc., et al.*, Superior Court for the County of San Bernardino; *Robles, et al. v. Rockfield Development Corporation, et al.,* Superior Court for the County of San Bernardino; *Riley, et al. v. So Cal Housing Partners, LLC, et al.,* Superior Court for the County of San Bernardino; *Castillo, et al. v. LNC Properties LTD, et al.,* Superior Court for the County of San Bernardino; *Reynoso, et al v. DOES 1-50,* inclusive, Superior Court for the County of San Diego; *Frais v. Forecast Group*, Superior Court for the County of Los Angeles; *Haney v. The Presley Group*, Superior Court for the County of Riverside; *Le Doux v. KB Homes*, Superior Court for the County of Los Angeles; *Long v. West Venture,* Superior Court for the County of Los Angeles; *Manning v. Presley Homes,* Superior Court for the County of Los Angeles; *McLellan v. Stratham Group,* Superior Court for the County of Los Angeles; *Winkler v. West Venture,* Superior Court for the County of Los Angeles.

10.     Ms. Cordero has been a member of the American Bar Association since her admission to the Puerto Rico State Bar on January 2006. Ms. Cordero has been admitted to the New York State Bar since April 2008 and has been a member of the State Bar of California since January 2010. Ms. Cordero further received a Master of Law (LLM) with a concentration in Employment and Labor Law from the

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

3

University of San Diego, School of Law on May 2009. Ms. Cordero has represented employees in employment litigation matters since 2006. In just the past ten years, Ms. Cordero and I have been appointed as class counsel on the following California Superior Court cases – notably *Chavez v. Real Time Staffing Services, Inc.* settled for $1.9 million on behalf of 3,120 class members, and Judge Medel awarded 35% in fees; *Escoto-Miranda v. Evans Tire & Service Centers, Inc.* settled for $800,000 on behalf of 450 class members, and Judge Strauss awarded 33% in fees; *Subia v. National Securities Industries, Inc.* in the Superior Court for the County of Santa Clara settled for $275,000 on behalf of 187 class members, and Judge Lucas awarded 30% in fees; *Flannery v. AGR Group*, settled for $1,324,937 on behalf of approximately 5,182 class members, and Judge Andler awarded 33% in fees; *Costa v. Altman Specialty Plants, Inc.,* settled for $2.4 million on behalf of 4,414 class members; *Parmelee v. Driveline Retail Merchandising, Inc.* settled for $1,000,000 on behalf of approximately 1,261 class members, and Judge Kapetan awarded 33.33% in fees; *Stafford v. Dollar Tree Stores, Inc.*, settled for $4.6 million on behalf of approximately 5,000 class members and Judge Paul L. Beeman awarded 33 and 1/3% in fees; *Digiacomo v. Michael Castelli, Inc.*, Superior Court of the County of Riverside, which settled for $225,000 on behalf of approximately 35 class members and Judge Waters awarded 33% in fees.

11.     My associates and I have considerable experience handling complex wage and hour class action cases with claims similar to those asserted in this action and have successfully represented tens of thousands of employees in state and federal court cases throughout California.

## II.     CASE BACKGROUND AND PROCEDURAL HISTORY

12.     On February 22, 2018, Joseph Osegueda filed this class and representative action in the California Superior Court, County of Sacramento, entitled *Osegueda v. Northern California InAlliance*, Case No. 34-2018-00227716.

13.     On April 6, 2018, InAlliance filed a Notice of Removal, removing the action to the United States District Court for the Eastern District of California, Case No. 2:18-CV-00835-WBS-EFB.

14.     On March 5, 2019, Plaintiff filed a First Amended Complaint ("FAC"), alleging the following causes of action: (1) failure to pay minimum and regular wages; (2) failure to pay all overtime wages; (3) failure to indemnify necessary business expenses; (4) failure to provide accurate itemized wage statements; (5) failure to timely pay all wages due upon separation of  employment; (6) violation of

Business and Professions Code §§ 17200 et seq.; (7) violation of the Private Attorneys General Act of 2004, Labor Code §§ 2698, et seq.; and (8) violation of the Fair Labor Standards Act ("FLSA") (29 U.S.C. §§ 207, 211(c), 216(b)).

15.     On March 19, 2019, Defendant filed an Answer to Plaintiff's First Amended Complaint denying all liability and wrongdoing of any kind associated with the claims alleged in this action, as well as disputing that the action is appropriate for class treatment.

16.     Plaintiff Joseph Osegueda is a former employee of Defendant who worked as an Independent Living Facilitator ("ILF") in Sacramento and Yolo Counties from June 10, 2017 to September 11, 2017.

17.     Defendant InAlliance is a nonprofit agency that provides domestic care and supported living services for people with developmental disabilities to help such people live semi-independently, providing job support, coaching, transportation, and in-home care services to the disabled who are unable to completely support themselves. InAlliance works with the California Department of Developmental Services, Alta Regional Center and receives most of its grant funding through the Regional Centers.

18.     Plaintiff Osegueda alleges that he and other ILFs were not properly paid for all overtime wages because Defendant have a common policy and practice of only paying overtime wages for hours worked over 40 hours in a week. (Attached herein as **Exhibit 5** is a true and correct copy of Defendant's overtime policy.)

19.     Plaintiff alleges he and all other ILFs are covered by and entitled to daily overtime under the provisions of the California Domestic Worker Bill of Rights ("DWBR"), which is codified at Labor Code section 1450 *et seq.*, and became effective in January 2014. Plaintiff alleges that since January 2014 the DWBR entitles domestic workers working for Defendant as ILFs to overtime wages when they work more than nine hours a day.

20.     Plaintiff alleges that Defendant required ILFs to work significant amounts of daily overtime but did not pay the overtime hours at the corresponding overtime hourly rate.

21.     Plaintiff claims that Defendant did not credit toward overtime the ILF's sleep time. Plaintiff alleges InAlliance has a common policy to exclude sleep time from ILFs' overtime calculations. Plaintiff claims that under California Law, ILF's sleep time was still on-call time, and therefore under the control

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

of Defendant, and should have not been excluded from the overtime calculations.

22.     Plaintiff further alleges Defendant frequently communicated with him via cell phone when he was off-duty and he was not compensated for this time. For example, supervisors would send text messages to him and other ILFs, and occasionally call them, about their schedules, issues with the participants, and to discuss their duties.

23.     Plaintiff alleges InAlliance required Plaintiff and other ILFs to use their personal cell phones to communicate with their supervisors regarding issues with the participants and to perform their duties, such as making transportation arrangements, scheduling doctor's appointments, and communicating with the participant's family. InAlliance's cell phone and expense reimbursement policies do not inform ILFs that they are entitled to reimbursement for the work-related use of their cell phones, and for the majority of the class period, InAlliance did not reimburse Plaintiff and ILFs any amount for the cost of their personal cell phones. Attached herein as **Exhibit 6** is a true and correct copy of Defendant's reimbursement policy.

24.     Plaintiff alleges direct and derivative claims resulting from Defendant's failure to include the correct number of overtime hours worked and their corresponding overtime hourly rate in the wage statements provided to Plaintiff and the putative class.

25.     Plaintiff alleges statutory waiting time penalties under California Labor Code section 203 and civil penalties under PAGA resulting from Defendant's alleged failure to pay all overtime wages at the appropriate overtime rate.

26.     Defendant denies any liability or wrongdoing of any kind associated with the claims alleged, and further deny that this Action is appropriate for class treatment for any purpose other than settlement.

27.     Among other things, Defendant maintains that it complies with all of their overtime obligations under both California and Federal law, and that Plaintiff and all Class Members were all properly paid for all overtime wages. Specifically, Defendant claims that Class members' sleep time was exempt from the Domestic Worker Bill of Rights and exempted from the 40-hour workweek rule under both California and Federal law, and therefore, not entitled to overtime pay for sleep time for the sleep time.

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

28.     Defendant also maintains that any work performed by Class Members off-the-clock was performed without its permission, that InAlliance was unaware that Class Members had performed duties off-the-clock, and that, if Defendant had known that Class Members had performed work off-the-clock, it would have provided them compensation for their work.

29.     Defendant vehemently denies that any class member was required to answer calls or remain on-duty while off-the-clock, and that, if any class member did so, was voluntarily. Defendant further claims there are no written policies requiring employees to use their phones for work related purposes, which it claims creates an obstacle for class certification.

30.     With respect to Plaintiff's claim for waiting time penalties, Defendant alleged that its good-faith belief in the use of its timekeeping and payroll practices precludes the imposition of any waiting time penalties since Plaintiff will not be able to prove that Defendant's alleged failure to pay all final wages at the time of separation was "willful."  With respect to PAGA, Defendant claims that it did not engage in any Labor Code or Wage Order violations and Plaintiff will not be able to demonstrate that Defendant is liable for civil penalties under PAGA.

31.     On July 31, 2019, the parties participated in a private mediation with mediator David L. Perrault, Esq., a well-respected neutral third-party mediator who specializes in resolving wage and hour class action matters.

32.     In preparation for this mediation, my firm prepared a comprehensive mediation brief that outlined the relevant factual and legal issues, contained a detailed analysis of the time and payroll records, and presented a complete breakdown of the liability exposure for InAlliance if Plaintiff succeeded on each of his claims at trial.

33.     During the mediation session, the Parties engaged in good-faith, non-collusive negotiations, exchanged additional information regarding the realistic damages exposure to InAlliance, discussed the relative strength and weaknesses of Plaintiff's claims, the risks and delays of further litigation, the current state of the law as it related to Plaintiff's claims, and the difficulty Plaintiff may have in obtaining and maintaining class certification of each of his claims.

34.     The mediator's role in this case was extremely helpful in managing the parties' expectations and provided a useful and neutral analysis of the issues and risks to all parties. At all times

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

the parties' negotiations were hard-fought and conducted at arm's length between attorneys with substantial wage and hour class action experience and the Settlement is evidence of the parties' substantial efforts to reach a mutually agreeable compromise.

35.     The parties were able to reach a settlement at the mediation, subject to the preparation and execution of a comprehensive Settlement Agreement.

36.     No trial date has been set, and neither of the parties have filed any dispositive motions in this action.

### III.     DISCOVERY AND INVESTIGATION OF THE CLASS AND PAGA CLAIMS

37.     My firm conducted a thorough investigation into the merits of Plaintiff's claims and the applicable law related thereto, as well as reviewed numerous documents and records provided by Mr. Osegueda in support of his claims.  My firm also requested Mr. Osegueda's employment file and spent significant time reviewing his employment records prior to the filing of the Complaint in this action.

38.     After the filing of the Complaint, the parties exchanged formal discovery. The parties exchanged initial disclosures in August 2018 and Plaintiff served formal written discovery consisting of interrogatories and document requests on October 11, 2018.

39.     Defendant provided sworn substantive responses and documents to Plaintiff's discovery in January 2019.

40.     Defendant's document production included Plaintiff's personnel file, Defendant's personnel policies, information about Defendant's supported living services program, and Defendant's contract with Alta California Regional Center.

41.     The parties agreed to send out an opt-out notice to the putative class members prior to the release of their names and contact information. Plaintiff obtained the names and contact information for over 270 employees, and Defendant produced over 60,000 paper documents consisting of Defendant's policies and putative class members' time and pay records.

42.     Thereafter, my firm spent significant time reviewing the voluminous production of over 60,000 paper time and pay records prior to the mediation.

43.     For purposes of mediation, my firm reviewed thousands of the time and pay records produced for each of the years at issue. However, from the examination of the time and pay records

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

produced, Plaintiff Defendant failed to produce some of the time and pay records for the putative class for the years 2014, 2016, and 2019.

44.     Prior to the mediation, my firm spent significant time conducting in-depth, fact-finding interviews with Plaintiff and other witnesses regarding their employment at InAlliance. Specifically, attorneys Vilmarie Cordero and Nicole Roysdon, with the help of several paralegals from my firm, conducted detailed phone interviews with a substantial number of the class members regarding the causes of action alleged in the Complaint and how these claims related to class members' employment during the class period. To date, my firm has conducted in-depth phone interviews with over 30 ILFs, including Plaintiff.

45.     Only after conducting independent investigation of the allegations, the Parties agreed to engage in settlement negotiations and agreed to attempt to resolve Plaintiff's claims through private mediation.

46.     My firm has conducted a thorough investigation and discovery into the merits and legal basis of Plaintiff's minimum wage claims, overtime claims, reimbursement claims, and wage statement claims and performed significant legal research with respect to the applicable law and potential defenses raised by InAlliance to Plaintiff's claims.

47.     My firm's investigation and discovery allowed us to prepare a complete liability analysis and potential exposure to InAlliance if Plaintiff succeeded on all claims at trial, which we measured against the relative strength of the claims in order to better identify an appropriate range of settlement figures.

48.     This analysis was based on information represented in InAlliance's records, as well as facts and information gleaned from class member interviews regarding the claims alleged during the class period, including the number of shifts worked per pay period, the average number of employees employed at any given time, class members' average rates of pay, the estimated violation rate for overtime and minimum wage claims, and the amount of any unpaid overtime wages or unreimbursed expenses, among others.

49.     I believe that the documents and information exchanged and analyzed by the Parties through formal discovery, as well as the Parties' discussions during mediation, were sufficient for the

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1 Parties to make an informed decision about a fair resolution of this action at this time.

2 **IV.   CLASS COUNSEL'S EVALUATION OF THE CLAIMS**

3     50.    I believe the $225,000 Settlement provides a real and substantial benefit to the Class

4 Members considering the highly disputed nature of the claims.  Our determination of a fair value of the

5 Settlement was based on a number of factors, including our investigation of the applicable law as it applied

6 to the facts discovered, the suitability of the case for class treatment, Plaintiff's claims and the associated

7 damages, InAlliance's potential defenses thereto and its precarious financial situation.

8     51.    During the nearly two years that this action has been pending, the Parties have engaged in

9 numerous and extensive discussions regarding the factual and legal issues presented by the litigation and

10 InAlliance's potential defenses thereto.

11     52.    My firm used the following methodology to calculate the maximum potential amount of

12 damages Plaintiff and the putative Class Members would be able to recover for the claims alleged in the

13 action:

14     a.   <u>Failure to Pay for All Overtime Wages</u>

15     100% Violation rate

16     x   56,100 (Estimated number of workweeks in class period)

17     x   11    (Average number of unpaid overtime hours per workweek for sleep time)

18     <u>x  $6.25  </u>(Half of average overtime rate of pay owed)

19     =**$ 3,853,789.50**

20

21     b.   <u>Failure to Reimburse for Business Expenses</u>

22     88% Violation rate

23     x   187    (Number of ILFs at any given time)

24     x   11.84  (estimated cost per pay period)

25     <u>x   137   </u>(Number of pay periods in class period)]

26     = **$ 266,929**

27

28

GRAHAM**HOLLIS** APC<br>3555 FIFTH AVENUE SUITE 200<br>SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

c.  Wage Statement Penalties

100% Violation rate

x  229     (Number of ILFS during 226 Period)

x  4,000   (Maximum penalty per Labor Code Section 226)

= $ 916,000

d.  Waiting Time Penalties

243     (Number of ILFs during 203 period)

x  193.60 (Average amount owed per employee)

x  30      (Number of days for waiting time penalties)

x  26.90   (Average hourly regular rate of pay)

= $1,409,876

e.  PAGA Penalties

100 % Violation Rate

x   1      (Labor Code Section 1454 (Domestic Workers))

x   $100   (Penalty Per Violation)

x   13,160 (Estimated pay periods in the PAGA period)

= $ 1,316,000.00

53.    The highest value claims for the Independent Living Facilitator Class was for unpaid overtime wages. Although Plaintiff maintains his claims are meritorious, and believes he would have prevailed if he had taken the issues to trial, Plaintiff acknowledges that Defendant possesses legitimate defenses to both liability and class certification.

54.    For example, Plaintiff's main claim for failure to pay overtime wages for hours worked on-the-clock and after the ninth hour of work in a workday as well as the overtime hours worked during "sleep time" present real challenges. Defendant adamantly claims they are exempted from the California DWBR application and there is no clear case law as to whether an exemption should apply here.

55.    Similarly, Defendant claims "sleep time" should not be included in the calculation of overtime hours worked.  Conversely, Plaintiff claims that, under California law, "sleep time," or that time during an employee's 24-hour work shift when he or she is permitted to sleep with or without interruption,

11

but is still on call and may be interrupted for work purposes, may not be excluded from hours worked or from overtime under any circumstances.

56.     While Plaintiff believes that these claims would have been certified, if this case were to proceed to trial,  Defendant would likely argue that plaintiffs' damages are 0, or a very low value, because Defendant paid overtime wages pursuant to the FLSA (and whenever the employees worked over 40 hours a week) and because the employees were not "on-call" during sleep time. Plaintiff acknowledges the alleged claims' challenges in proof and the potential that the Defendant could prevail in their legal arguments, and avoid any liability.

57.     InAlliance also contends that it had compliant written overtime policies, which again, presents challenges of proof and was planning to bring a summary adjudication motion based on the fact that Plaintiff and class members signed an agreement regarding work/sleep time pay and the federal law governing the issue.  Furthermore, such a showing may have also limited the recovery of Plaintiff's waiting time penalties claim under Labor Code 203 because Defendant may have been able to assert that a "good faith dispute" existed that any unpaid wages were due at the separation of their employment.

58.     Additionally, Defendant would likely try to argue the existence of potentially individualized issues among Plaintiff and Class Members' usage of their personal cell phones, and variations among the duties performed at different locations, and at different times during the class period.

59.     Additionally, Defendant would have challenged these claims by claiming that Plaintiff and class members always had a landline available for work use and that employees' use of their personal cell phones was unnecessary and done only for the employees' convenience.

60.     Plaintiff's maximum-possible damages exposure for the Class and the Waiting Time Penalties Subclass assumed that class certification for both would be granted, and assumed the class certification would be maintained through trial, and assumed that Plaintiff would prevail on all claims at trial and recover the full amount of the estimated damages. Accordingly, the estimated value of Plaintiff's claims was premised on an optimistic "everything goes right" scenario for each claim, for a maximum class-wide damages exposure, and is approximately **$7,762,594**.

61.     While the $225,000 Maximum Settlement Amount represents a significant discount on Plaintiff's estimate of the overall $7 million exposure to Defendant, this reduction represents an extremely

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

reasonable compromise considering the substantial and significant risks that Plaintiffs and class members faced in this litigation. Defendant has legitimate defenses to both class certification and the merits of the claims. Plaintiff's counsel also took in consideration the likelihood of obtaining and maintaining class certification of Plaintiff's class claims through trial and obtaining a 100% of the damages claimed.

62.     Moreover, Plaintiff considered the significant risk that the court may deny class certification and/or reverse a favorable ruling on the merits on appeal. These risks are obviated by the $225,000 Settlement. Moreover, continued litigation would very likely be extremely expensive, and reduce and substantially delay any recovery by Class Members. In contrast the proposed Settlement will guarantee that Class Members will receive timely relief, substantial monetary recovery, and avoid the risk of an unfavorable judgment.

63.     We also took in consideration the financial stability of the Defendant, who is a non-for-profit organization dedicated to provide essential domestic care and supporting living to persons with developmental disabilities. Defendant receives most of its income from grants and federal programs. Defendant presented documentation showing of its precarious financial condition at mediation.

64.     Absent a Settlement, the precarious financial situation of the corporate Defendant would have likely lead to a bankruptcy filing, further delay, and the real possibility of recovering $0 for Plaintiff and the putative class.

65.     The Settlement commits Defendant to create a Maximum Settlement Fund that will provide Class Members a financial recovery and extinguish the risks attendant to continued litigation and any appeals that would likely be filed following the class certification decision or judgment in Plaintiff's favor. Indeed, such efforts by Defendant would likely result in a delay of several years before this case could finally be resolved, whereas the Settlement provides Class Members with a significant and timely recovery from the $225,000 settlement amount, making it well within the range of reasonableness.

66.     Based on my experience litigating almost exclusively wage and hour claims I believe the amount is a fair and reasonable compromise of the claim held by the putative class members based on the strengths and weaknesses of the claims and the avoidance of further risk and the time and expense of pursuing the claims. I believe the information obtained and exchanged between the parties was sufficient for the parties to make an informed decision about the resolution of this case at mediation, especially

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1 considering that Defendant presented documentation of its financial condition at mediation.

2 ## V.   THE SETTLEMENT TERMS

3 67.   The Parties have entered into this non-reversionary Settlement, for which Plaintiff now

4 seeks the Court's approval and the basic terms of which are as follows:

5 ### A. Class Definition

6 68.   "Class" or "Class Member" means all individuals who are members of the Independent

7 Living Facilitator Class and the Waiting Time Penalties Subclass. [Ex. 1 to Hollis Decl., Settlement, at

8 ¶1.1.] The Independent Living Facilitator Class means all current or former employees of InAlliance who

9 worked in the State of California in the position of Independent Living Facilitator ("ILF") at any time

10 from February 22, 2014 through the Preliminary Approval Date. [Ex. 1 to Hollis Decl., Settlement, at

11 ¶1.7.] The Waiting Time Penalties Subclass means any members of the Independent Living Facilitator

12 Class whose employment ended, according to InAlliance records, between February 22, 2015 and the

13 Preliminary Approval Date and who does not timely opt-out of the Settlement Class. [Ex. 1 to Hollis Decl.,

14 Settlement, at ¶1.43.]

15 ### B. Settlement Amounts

16 69.   Maximum Settlement Amount: Defendant will pay a non-reversionary Maximum

17 Settlement Amount of $225,000. [Ex. 1 to Hollis Decl., Settlement, at ¶1.19.] The Maximum Settlement

18 Amount does not include the employer's share of the applicable payroll taxes. [Id.]

19 70.   Net Settlement Amount: The Net Settlement Amount ("NSA") is the portion of the

20 Maximum Settlement Amount available for distribution to participating Class Members after the

21 deduction of the court-approved Class Counsel's fees and costs, the Class Representative Service Award,

22 the Settlement Administration Costs, and LWDA's portion of the PAGA Payment. The NSA is currently

23 estimated in $122,526.50. [Ex. 1 to Hollis Decl., Settlement, at ¶1.20.] Any amounts not awarded to the

24 Class Representative and any amounts not awarded as Class Counsel's Fees and Costs, will be allocated

25 to the Net Settlement and distributed to the Class Members. [Id.]

26 71.   Settlement Administration Costs: The Settlement Administration Costs are estimated not

27 to exceed $10,500.  [Ex. 1 to Hollis Decl., Settlement, at ¶1.38; See also Declaration of Sean Hartfanft

28 filed concurrently herewith.]

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

14

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

72.     Payment to the LWDA: The parties agree to pay the sum of $11,250 for all applicable penalties under PAGA to the Labor and Workforce Development Agency ("LWDA"). The $11,250 will be allocated 75% (or $8,473.50) paid directly to the LWDA and the remaining 25% (or $2,812.50) will be distributed among the PAGA Aggrieved Employees as penalties. [Ex. 1 to Hollis Decl., Settlement, at ¶ 2.4.1.]

73.     Class Counsel Attorney's Fees and Costs: Class Counsel seek an award of $75,000, representing 1/3 of the Maximum Settlement Amount as payment for attorney's fees already incurred for prosecuting this Action. [Ex. 1 to Hollis Decl., Settlement, at ¶ 2.6.1.] Class Counsel also seeks reimbursement of out of pocket expenses incurred not to exceed $9,000. [Ex. 1 to Hollis Decl., Settlement, at ¶ 2.6.2.]

74.     Class Representative Service Payments: Subject to Court approval and the execution of a general and broader release in favor of the Defendant, Plaintiff Joseph Osegueda seeks preliminary approval of a Class Representative Service Award in an amount not to exceed $5,000.  [Ex. 1 to Hollis Decl., Settlement, at ¶ 2.5.1.]

**C. Calculation of The Individual Settlement Payments**

75.     The Settlement Administrator shall have the obligation to calculate the amounts of Individual Settlement Payments in accordance with the methodology set forth in the Settlement.

76.     The Independent Living Facilitator Class: The parties allocated 95% of the Net Settlement Sum to the Settlement of the class claims. Participating Class Members shall receive a pro-rata portion of the Net Settlement Amount available for distribution based upon their respective number of Qualifying Workweeks. [Ex. 1 to Hollis Dec. Settlement, at ¶2.3.4.] In addition, each Participating Class Member who is also a member of the Waiting Time Penalty Subclass will receive an allotment of six (6) additional Qualifying Workweeks. [Ex. 1 to Hollis Dec. Settlement, at ¶2.3.5.] Therefore, each Class Member who does not submit a Request for Exclusion will be mailed a check representing their Individual Settlement, which shall be calculated, depending on the number of qualifying workweeks worked during the class period.

77.     Opt-In FLSA Class: The parties allocated 5% of the Net Settlement Sum to the settlement of the FLSA claims. [Ex. 1 to Hollis Decl. at ¶2.3.6.]   Class Members will need to opt-in to the FLSA

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Settlement by timely submitting their FLSA Opt-In Form to receive their FLSA Settlement Payment. Each FLSA Collective Action Member shall be entitled to a pro-rata share of the FLSA Settlement Fund based on the ratio of the total number of Qualifying Workweeks that he or she worked during the Class Period to the total number of Qualifying Workweeks that all FLSA Collective Action Members worked during the Class Period. [*Id.*] To the extent a Class Member fails to timely submit their FLSA Opt-In Form, he/she will receive his/her proportionate share of the Net Settlement Fund and their release will not include FLSA claims. [*Id.*]

78.     I believe the Settlement provides the fairest way to distribute the Settlement proceeds to class members, which is to calculate each class member's share of the Settlement proceeds based on the number of qualifying workweeks worked by each Class member during the Class Period.

79.     Thus, each one of the Class members shall be entitled to receive a pro-rata portion of the Net Settlement Proceeds available for distribution based upon his or her respective number of qualifying work weeks.  This means, for example, that the Class members that have the larger number of workweeks would receive a larger portion of the Settlement. Thus, all Settlement Class members are treated equitably and fairly.  In my opinion, this method provides a fair and adequate method of distribution of the Settlement proceeds to the class because it takes into consideration the length of employment each class member worked and the number of violations suffered during the class period.

80.     Assuming preliminary approval is granted, the NSA, currently estimated at $123,026.50, will be distributed a pro-rata among the Class Members depending on the number of workweeks worked during the Class. According to Defendant's discovery responses, as of January 2019 there are approximately 350 Class Members. We estimate a total of 375 class members for the class period.  If all of the approximate 375 estimated class members participate, the average recovery per class member will be approximately $326.06.  These are substantial sums that adequately recognizes the Plaintiff's and Class Members damages and compensates each of them appropriately.

81.     We do not currently know the exact number of workweeks worked by each individual Class Member. However, for purposes of this Motion, Class Counsel estimates approximately 58,344 workweeks for the class through the date of preliminary approval. If the Court approves all the payments to the Class Counsel for attorney's fees and costs, and awards the requested enhancement award, Class

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1    Counsel estimates the Net Settlement Amount in $123,026.50.  Thus, Class Counsel estimate that Class

2    Members will receive approximately $2.12 per workweek.

3        82.    I believe the estimated recovery of $2.12 per workweek is a great result for the hotly

4    contested overtime claims and related civil penalties.

5    **D.  Scope of The Release**

6                **i.  Settlement Class Members' Release**

7        83.    The release is carefully tailored to the claims at issue in the case. Upon the Effective Date,

8    the Class Representative and all Participating Class Members shall be deemed to have, and by operation

9    of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished,

10   and discharged all Released State Law Claims and Released PAGA Claims.  [Ex. 1 to Hollis Dec.

11   Settlement, at ¶¶10.1, 10.3.] The Released State Law Claims are defined as any and all claims asserted in

12   the Lawsuit, including and  any and all claims under applicable state laws for the failure to pay any type

13   of overtime compensation or minimum wage to any member of the Independent Living Facilitator Class;

14   any and all for failure to timely pay wages, including payment of wages at termination; any and all claims

15   which arose under applicable state law for reimbursement for all necessary costs, expenditures, losses or

16   expenses incurred by any member of the Independent Living Facilitator Class in connection with their

17   employment with InAlliance; any and all claims which arose under applicable state law for wage statement

18   violations; and (f) all claims for wages, penalties or additional damages, including without limitation

19   waiting time penalties. [Ex. 1 to Hollis Decl., Settlement at ¶ 1.34.]

20       84.    In addition, upon the Effective Date, the Class Representative and all Participating Class

21   Members who submit timely and valid Opt-In Forms shall be deemed to have, and by operation of the

22   Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and

23   discharged all Released Federal Law Claims. [Ex. 1 to Hollis Decl., Settlement at ¶10.2.] The Released

24   Federal Law Claims shall collectively mean any and all federal wage and hour law claims, obligations,

25   demands, actions, rights, causes of action, and liabilities against InAlliance, of whatever kind and nature,

26   character and description, that are alleged or that could have been alleged based on the facts alleged in the

27   First Amended Complaint for any type of relief, based on any and all claims arising under the Fair Labor

28   Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §201, et seq. [Ex. 1 to Hollis Decl., Settlement

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1    at ¶1.32.]

2                 **ii.  Class Representative Release**

3         85.     The Class Representative's Service Award constitutes a service payment for Plaintiff

4 Osegueda's services and assistance to the Class and for the work and the time he put into this Litigation.

5 Additionally, the Service Award is made in recognition for Plaintiff Osegueda's willingness to provide a

6 full and separate general releases of all claims regardless of whether such claims have been alleged against

7 Defendant, including without limitation known or unknown claims, whether for economic damages, non-

8 economic damages, punitive damages, restitution, tort, contract, penalties, injunctive or declaratory relief,

9 attorney's fees, costs, or other monies or remedies. [Ex. 1 to Hollis Decl., Settlement at ¶¶ 2.5.3, 2.5.4.]

10 The Class Representative shall release, acquit and discharge the released parties from all claims against

11 the released parties of any kind whatsoever, whether known or unknown, that arose, accrued or took place

12 at any time on or prior to the date on which the full and general release is executed, and expressly waive

13 the benefit of Section 1542 of the California Code Civil Procedure. [Ex. 1 to Hollis Decl., Settlement at

14 ¶2.5.4.]

15    **E.  Allocation of Unclaimed Funds**

16         86.     The settlement amount is non-reversionary and if any Class Members opt out of the

17 settlement, amounts allocated to those individuals will not revert to Defendant. [Ex. 1 to Hollis Decl.,

18 Settlement at ¶ 9.1.] If checks remain uncashed after 180 days, those amounts will be donated to the Legal

19 Services of Northern California, which provides a wide variety of Pro Bono Legal Services, as a cy pres

20 recipient. (*Id.* at ¶9.2.1.]

21    **F.  Settlement Administration and Notice Procedure**

22         87.     A true and correct copy of the Notice of Class Action Settlement ("Class Notice") is

23 attached herein as **Exhibit 2** to the Settlement Agreement. A true and correct copy of the FLSA Collective

24 Action Member Consent to Join Form ("FLSA Opt In Form") is attached herein as **Exhibit 3**.

25         88.     The parties have selected Ilym Group, Inc. ("ILYM") to serve as the Settlement

26 Administrator.  Defendants will provide the data to the Settlement Administrator pertaining to members

27 of the Classes within 10 business days from the date of entry of the order granting Preliminary Approval.

28 [Ex. 1 to Hollis Decl., Settlement at ¶ 4.1.] Within 14 days following the receipt of the data from

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

Defendants, the Settlement Administrator will mail the Class Notice to each member of the Settlement Class via first class U.S. mail. [Ex. 1 to Hollis Decl., Settlement at ¶ 4.4.]

89.     The Settlement Administrator will initially undertake address verification measures including utilization of an Accurint skip trace as well as searching the National Change of Address Database maintained by the United States Postal Service. [Ex. 1 to Hollis Decl. at ¶4.3.] This will ensure that all reasonable measures have been undertaken to obtain the most up to date address for Class Members *before* the Settlement Notice is mailed. Therefore, prior to the mailing of the Notice to the Class Members, the Settlement Administrator will run one Accurint (or substantially similar) skip trace as well as perform one basic search on the National Change of Address Database to attempt to obtain the best possible address for the Class Members before it mails the notices.

90.     If any Notice Packet is returned to the Settlement Administrator as undeliverable within the 60-calendar day deadline, the Settlement Administrator shall make all reasonable efforts to locate a forwarding address, including performing a skip-trace using that Class Member's social security number and shall re-mail the Notice. [Ex. 1 to Hollis Decl. at ¶4.10.] The Settlement Administrator will promptly resend the Notice Packet to that forwarding address along with a brief letter stating that the recipient of the Notice Packet has until the original deadline set forth on the original Notice, or ten (10) calendar days after the date of re-mailing of the Notice Packet (whichever is later) to object or submit a Request for Exclusion. If any Notice Packet is returned from any mailing and/or re-mailed, the Settlement Administrator will note for its own records and notify the Parties' Counsel of the date of such re-mailings as part of a weekly status report provided to the Parties. [Ex. 1 to Hollis Decl. at ¶4.11.]

91.     Class Members will need to opt-in to the FLSA Settlement by timely submitting their FLSA Opt-In Form to receive their FLSA Settlement Payment.  Class members will have 60 calendar days following the initial mailing of the Notice to submit their FLSA Opt-In Form. [Ex. 1 to Hollis Decl. at ¶4.7.] To the extent a Class Member fails to timely submit their FLSA Opt In Form, he/she will receive his/her proportionate share of the Net Settlement Fund and their release will not include FLSA claims.

92.     Class Members who wish to exclude themselves from the Settlement must submit a Request for Exclusion postmarked by the Objection/Exclusion Deadline. [Ex. 1 to Hollis Decl. at ¶6.1.] The Objection/Exclusion Deadline is 60 calendar days following the initial mailing of the Notice. [*Id.*]

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Any Class Member who properly requests exclusion using this procedure will not receive any payment from the Settlement and will not be bound by the Stipulation of Settlement or have any right to object, appeal or comment thereon. [*Id.*] Class Members who do not submit a valid and timely Request for Exclusion shall be bound by all terms of the Stipulation of Settlement and any judgment entered in the Actions once the Settlement is approved by the Court. [*Id.*]

93. At least 25 days prior to the final approval hearing, the Settlement Administrator shall provide counsel for the parties with an accounting of the Class Maximum Settlement Amount and report the amount of all payments to be made to each Class Member by employee number. [Ex. 1 to Hollis Decl. at ¶8.4.]  Upon completion of administration of the Settlement, the Settlement Administrator will provide a written declaration under oath to certify such completion of the Settlement Administration to the Court and counsel for all parties. [*Id.*]

94. Here, the Class Notices are accurate and informative. The Class Notice summarize the lawsuit, including the contentions and denials of the Parties, the proceedings to date, and the terms and conditions of the Settlement in plain language in an informative and coherent manner. The Class Notices also fully inform Class Members of the terms of the Settlement, of its effect on their rights, of their options as Class Members (*i.e.,* to object, opt out, opt in to the FLSA settlement, and/or do nothing), and of the consequences of exercising those options. The Class Notice also outlines the procedure and deadlines for opting out of the Settlement, for submitting objections to the Settlement, and how to receive a Settlement Payment – stating clearly that Class Members do not need to submit a claim form in order to receive a Settlement Payment except for the FLSA Opt-in Settlement, thereby encouraging Class Member participation and increasing the likelihood of Class Members obtaining recovery.

95. The Class Notice also states the amount of the proposed service award to be paid to Class Representative Joseph Osegueda; states the amount of Class Counsel's request for attorney's fees; states the amount to be paid to the Claims Administrator; states the amount to be paid to the LWDA; states the date, time and place of the final approval hearing; and explains how Class Members can obtain additional information.

96. Furthermore, the Class Notice also makes clear that the Settlement does not constitute an admission of liability by InAlliance, that the Court has not ruled on the merits of the action, and that the

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

final settlement approval decision has yet to be made.

97.     The proposed notice plan, calling for first-class mailed notice to all Class Members, as well as in-depth skip tracing at the outset and further in-depth skip tracing on Class Notices returned without a forwarding address, is consistent with class notices approved by federal courts, and under the circumstances here, is the best notice practicable and the method most likely to reach the greatest number of Class Members.

### VI.     CLASS COUNSEL'S VIEW OF THE CLASS ACTION SETTLEMENT

98.     While the settlement amount represents a discount on the overall exposure to Defendant, assuming Plaintiff prevailed on all issues pertinent to class certification, liability on all claims, and proven damages as estimated, this reduction in compromise is extremely reasonable considering the substantial risks Plaintiffs and Class Members face on class certification, liability, and damages issues.

99.     The parties would have to undergo further extensive and time-consuming discovery including discovery related to class certification and the merits if the case did not settle. The parties have not taken any depositions and have not concluded their pre-certification discovery There would be potential motions for class certification and for decertification of the class if class certification were granted, and the parties would have to retain experts for both class certification and trial.

100.     Absent the Settlement, Plaintiffs and the class would not see any monetary recovery for years.  Although the parties have engaged in a significant amount of investigation, formal discovery and pre-mediation class-wide data analysis, the parties are far from completing formal written discovery. Moreover, there is always the possibility of the Defendants filing additional motions for class decertification in the Action or filing for bankruptcy.  Appeals would also be likely depending on the outcome of class certification and trial, which would create additional uncertainty and delay.

101.     Additionally, Defendant is a non-for-profit corporation, whose income mostly derives from state and federal sources. Absent a Settlement, the precarious financial situation of the corporate Defendant would have likely lead to a bankruptcy filing, further delay, and the real possibility of recovering $0 for Plaintiff and the class.

102.      The reasonableness of the proposed settlement is underscored by the fact that Plaintiff will unlikely be able to collect if a judgment is obtained against Defendant, and Defendant potentially viable

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

grounds for not only challenging its liability, but also Plaintiff's estimate of the potential value of each claim—the most valuable of which—the unpaid overtime—Defendant assigned a near zero-dollar value.

103.    As a result, the parties would incur considerably more attorneys' fees and costs through trial, or the risk of InAlliance becoming insolvent.  This settlement avoids all those risks, and the accompanying expense, and instead provides immediate and substantial monetary relief.

104.    Thus, Plaintiff and I acknowledge the cost, and delay of continued proceedings necessary to prosecute the actions through trial and appeal.

105.    Plaintiff and I have also taken into account the uncertain outcome and the risk of loss in any litigation, especially in complex actions such as these.  Plaintiff and I are also mindful of the inherent problems of proof, and possible defenses to, the causes of action asserted in the actions.  Although Plaintiff asserts that Defendants are liable to all Class Members for their unpaid wages, damages and penalties, none of the claims are certain.  Even though Plaintiff believes his case possesses substantial merit, the litigation cannot legitimately be characterized as being without risk or that Plaintiff would inevitably prevail at trial.  Able counsel who has mounted a vigorous defense on its behalf represents defendants.

106.    Granting approval of the class action settlement, however, would guarantee the payment of the $225,000 settlement sum, which would streamline the litigation process and provide prompt payment to the class members who participate in the settlement.  The class action settlement will allow class members to receive payments in the near future for their claims and other damages and penalties, while litigation could potentially continue for years and might not result in a similar monetary benefit for all class members.

107.    My firm is qualified to evaluate the class claims and viability of defenses in this unpaid wages class action based on our combined experience in other wage and hour cases.

108.    As shown herein, the individual settlement payments, estimated in approximately $2.12 per workweek, provide a fair and reasonable recovery to the entire class.  Moreover, the Settlement guarantees that any amounts not distributed to the Settlement Administrator as administration costs, to Class Counsel as Class Counsel's Fees and Cost, and to the Class Representative as a Service Award will be allocated to the Net Settlement and paid to Class.

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

109.    Therefore, the Settlement provides the best resolution for this case considering the risks involved in continuing litigation, the delay of years, and the expenses the parties will incur, and the fact that this Court has not yet addressed the class certification, liability and damages issues.

## VII.    CLASS COUNSEL'S FEES AND COSTS ARE REASONABLE

110.    My firm will request attorneys' fees up to $75,000, which represents 33.33% of the Maximum Settlement Amount.

111.    The fee is warranted and reasonable because of the substantial work and effort incurred to achieve the Settlement on behalf of the Class.  The fee request will be supported by a detailed explanation of the qualifications of each timekeeper, and their corresponding hourly rate, along with an explanation of the amount of time performed on the various tasks performed on behalf of plaintiffs and the class members.  Similarly, the costs requests will be supported at the time of final approval with an explanation of the amount and nature of the costs incurred.

112.    Although case law supports as high as a 50% fee award on common settlement funds of less than $10 million, class counsel requests an attorney fee award of $75,000 which is 1/3 of the Maximum Settlement Sum.  The amount requested is both reasonable and fair in light of the amount of work performed by class counsel, and the amount of resources and labor employed in the representation of the class claims.

113.    There has been an extraordinary amount of work performed by my firm in the Action. To date, my firm has spent significant time and effort on the following tasks:

      a.    preparing and sending a pre-litigation letters to Defendant requesting documents and Plaintiffs' employment file;

      b.    reviewing Plaintiff's documents and employment file;

      c.    prepare and file a claim letter to the Labor and Workforce Development Agency;

      d.    preparing and filing the original Complaint and First Amended Complaint;

      e.    preparing and serving a first set of interrogatories and request for production of documents; reviewing Defendant's responses to Plaintiff's first set of discovery and engaging in meet and confer efforts;

      f.    reviewing thousands of documents produced by Defendant in response to discovery;

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

g. conducting in-depth, fact-finding interviews with Plaintiff and other potential witnesses regarding their work duties while employed during the class period prior to the filing of the Complaint;

h. preparing for and participating in mediation, including reviewing and analyzing thousands of time and pay records and preparing a comprehensive damages analysis; conducting dozens of witnesses' interviews in preparation for the mediation, and performing extensive legal and factual research;

i. preparing settlement documents and preparing Plaintiff's motion for preliminary approval of the settlement, among others.

114.   My firm's fees and costs request are very fair and reasonable in light of the time, money and effort invested in this case to date, which far exceeds the amount requested. My firm's lodestar to date exceed $175,000.  Nonetheless, we have agreed to only seek $75,000.00 in fees, which represents less than half (or approximately 42%) of the value of the services my firm has already rendered to the Class.

115.   Class Counsel is highly experienced in wage and hour matters and class action cases, and has been appointed class counsel in numerous employment class action cases.

116.   Class Counsel's work resulted in the Settlement which provides significant benefits to class members.

117.   My firm has committed and continues to commit significant financial and staffing resources to the representation of the Class Members.  Multiple attorneys and paralegals were involved in the gathering of information, analysis, discovery, and litigation related to this matter.

118.   My firm's Attorney's Fees Lodestar to date totals over exceed $175,000.  This amount does not include the hours my firm will spend traveling and attending the hearing on preliminary approval of the Class Action Settlement, and if approved, the time my firm will spend on drafting the final approval motion and supporting documents, and attending the hearing on Final Approval of the Settlement.

119.   In making a fee request in class actions, I always analyze the factors that the court must consider in awarding fees.  I believe that such circumstances exist here to justify the requested attorney's fees award of $75,000 including (a) the work involved in achieving an excellent result for the Class and

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1  bringing the action to an efficient conclusion, (b) the associated risks to my firm in taking a matter on a

2  contingent basis.

3       120.    Class Counsel is also seeking for an award of the actually incurred costs. My firm has

4  calculated the reasonable actual costs incurred to date in to be $6,863.

5       121.    All costs incurred were necessary to the prosecution of this action, would normally have

6  been billed to a client paying for my firm's services on a non-contingency basis, and are reasonable for a

7  case such as this, in which substantial discovery and investigation took place over the year and a half since

8  the filing of the Complaint.  Class Counsel is prepared to submit receipts, if requested by the Court, in

9  support of Class Counsel's costs award request.  Class Counsel's request for reimbursement of actual

10  litigation expenses, which counsel anticipates will not exceed $8,000, is reasonable and were necessarily

11  incurred in pursuit of the Class and PAGA Settlement.

12       122.    In my opinion, the requested fee award takes into account the excellent result and the risk

13  undertaken in bringing this case on a purely contingency basis, advancing over $6,863 in costs to date and

14  deferring payment for all the years that my firm has worked on this case, with no guarantee that any of

15  the fees and costs incurred would ever be recovered.

16       123.    I believe that all of these fees and costs are reasonable and was necessarily incurred in

17  pursuit of the settlement.  I believe that the time spent working on this case by attorneys and paralegals at

18  my firm reflect the reasonable and necessary amount of time to properly represent the interests of the

19  members of the Class.

20       **VIII.**   **CLASS REPRESENTATIVE SERVICE AWARD TO PLAINTIFF**

21       124.    At the same time as Class Counsel's fee request, Plaintiff Joseph Osegueda will request a

22  Class Representative Service Award in the amount of $5,000, which shall be in addition to the Individual

23  Settlement Payment that he is entitled to receive as a Class Member. As will be set forth in the

24  accompanying memorandum of points and authorities that Plaintiff will file in support of Plaintiff's

25  Motion for Final Approval, such service awards are routinely made in wage and hour class actions like

26  this case, particularly when, as here, Plaintiff initiated action by seeking legal assistance from Class

27  Counsel, assisted with the preparation of the LWDA letter and Complaint, regularly communicated with

28  Class Counsel via telephone and email, provided relevant documents and helped with initial disclosures,

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

identified potential witnesses, attended a mediation, and worked closely with Class Counsel throughout this litigation to protect the best interests of the Class. Plaintiff's participation was an essential element that allowed Class Counsel to reach a settlement. I believe other Class Members would not have taken any action individually, and they would not have received the compensation afforded by this Settlement but for Plaintiff's contribution.  Furthermore, under the terms of the Settlement, Plaintiff will execute a general release of claims, which is an expansive release that was not required of other Class Members, who will execute a limited release of claims. I believe that the requested service award in the amount of $5,000 for Plaintiff is fair and reasonable.

125.   I am not aware of any personal claim of Plaintiff against Defendants that would be inconsistent with the interests of the class.  I am not aware of the existence of any conflict of interest among Plaintiff and the class.

### IX.   CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

126.   For the purposes of settlement, Plaintiff and Defendant contend conditional certification of the Settlement Class is appropriate.

127.   The Settlement Class definition are precise, objective and presently ascertainable and makes abundantly clear who is a Settlement Class Member. Specifically, the Settlement Class is limited to only those employees of Defendant who worked as Independent Living Facilitators, in the State of California, at any time from February 22, 2014 through the date of preliminary approval.

128.   Defendant identified under oath in its discovery responses 350 Settlement Class Members that have worked for Defendant for part of the class period. Attached herein as **Exhibit 7** is a true and correct copy of Defendant's Response to Special Interrogatory Number 3.  To date, Plaintiff estimates approximately 375 ILF during the Class Period.

129.   During the exchange of information, Defendant produced employee handbooks and policies and procedures that Plaintiff contends were applicable to all ILF throughout the Class Period. [See Exhibit 5 and 6.]

130.   For example, all ILF were classified as "personal attendants" and were not paid for all overtime hours worked pursuant to the Domestic Worker Bill of Rights ("DWBR").  Plaintiff alleges Defendant's written policies provides for ILF to receive overtime only when they work over 40 hours a

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

workweek, but do not pay ILF for daily overtime when they work over nine (9) hours a day, as provided under the DWBR. [See Exhibit 5.]

131.   In addition, InAlliance has a common policy and practice to exclude sleep time from ILFs' worked time. Plaintiff claims that under California law, ILF's sleep time was still on-call and on-duty time, and therefore under the control of Defendant, and may not be excluded from the daily hours worked or overtime calculations under any circumstances.

132.   At all times during their employment with Defendant, Plaintiff worked as ILF and was subject to the same policies and procedures as other Class Members. Therefore, Plaintiff's claims are typical of the Class he seeks to represent because he was subject to the same alleged illegal policies, procedures, practices and course of conduct as Class Members.

133.   Throughout the pendency of this litigation, Plaintiff has had no conflict of interest with the Class and has, along with Class Counsel, worked toward a positive resolution of this case for two years, demonstrating his dedication to prosecuting this action and obtaining the best possible recovery for the Class.

134.   I believe that this case could not have continued without Plaintiff's efforts and desire to obtain this positive result for the Class.

135.   It is my opinion that this Settlement Agreement is fair, reasonable and adequate, and in the best interest of the Class.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 16th day of December, 2019, at San Diego, California

By: _____
GRAHAM S.P. HOLLIS

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# EXHIBIT 1

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

IT IS HEREBY STIPULATED AND AGREED by and between JOSEPH OSEGUEDA ("Plaintiff" or "Class Representative"), on behalf of himself and all others similarly situated, on the one hand, and NORTHERN CALIFORNIA INALLIANCE ("InAlliance" or "Defendant"), on the other hand, hereinafter all referred to jointly as "Settling Parties", as set forth below:

## I.     THE CONDITIONAL NATURE OF THIS STIPULATION

This Stipulation and Settlement Agreement and all associated exhibits and attachments (herein "Stipulation") are made for the sole purpose of settling the Litigation on a representative, collective, and class-wide basis. This Stipulation and the settlement it evidences is made in compromise of disputed claims.   Because this action was pled as a class, collective, and representative action, this settlement must receive preliminary and final approval by the Court. Accordingly, the Settling Parties enter into this Stipulation and associated settlement on a conditional basis.  In the event that the Court does not enter the Order Granting Final Approval of Settlement, or in the event that the associated Judgment does not become a Final Judgment for any reason, this Stipulation (except for those provisions relating to publicity and confidentiality in Section 11 of this Stipulation) shall be deemed null and void *ab initio*, it shall be of no force or effect whatsoever, it shall not be referred to or utilized for any purpose whatsoever, and the negotiation of the Stipulation shall remain confidential and the terms and entry of the Stipulation shall remain subject to the provisions of Federal Rule of Evidence 408, California Evidence Code section 1152 and any other analogous rules of evidence that are applicable.  In such event, all of the Class Representative's individual and putative class and representative claims shall proceed as though no settlement or compromise had been reached.

InAlliance denies all claims as to liability, damages, penalties, interest, fees, restitution, injunctive relief and all other forms of relief as well as the representative and class allegations asserted in the Litigation.  InAlliance has agreed to resolve the Litigation via this Stipulation, but to the extent this Stipulation is deemed void or the Effective Date does not occur, InAlliance does not

waive, but rather expressly reserves, all rights to challenge all such claims and allegations in the Litigation upon all procedural and factual grounds, including without limitation the ability to challenge class and representative action treatment on any grounds, as well as asserting any and all other potential defenses or privileges.   The Class Representative and Class Counsel agree that InAlliance retains and reserves these rights and they agree not to take a position to the contrary; specifically the Class Representative and Class Counsel agree not to argue or present any argument, and hereby waive any argument that based on this Stipulation, InAlliance could not contest class or collective certification or representative action treatment on any grounds, or assert any and all other potential defenses and privileges if this Litigation were to proceed.

## II.     THE PARTIES TO THIS STIPULATION

This Stipulation (with the associated exhibits) is made and entered into by and among the following Settling Parties:   (i) the Class Representative, on behalf of himself and each of the Settlement Class Members, with the assistance of Class Counsel; and (ii) InAlliance, with the assistance of its counsel of choice.

## III.    THE LITIGATION

On February 22, 2018, Joseph Osegueda filed a proposed class and representative action in the Sacramento County Superior Court, entitled *Osegueda v. Northern California InAlliance*, Case No. 34-2018-00227716 (the "Litigation").   On April 6, 2018, InAlliance filed a Notice of Removal, removing the action to the United States District Court for the Eastern District of California, Case No. 2:18-cv-00835-WBS-EFB.   On March 5, 2019, Plaintiff filed a First Amended Complaint ("FAC"), alleging the following causes of action:  (1) failure to pay minimum and regular wages; (2) failure to pay all overtime wages; (3) failure to indemnify necessary business expenses; (4) failure to provide accurate itemized wage statements; (5) failure to timely pay all wages due upon separation of employment; (6) violation of Business and Professions Code §§ 17200 *et seq.*; (7) violation of the Private Attorneys General Act of 2004, Labor Code §§ 2698, *et seq.*; and (8) violation of the Fair Labor Standards Act ("FLSA") (29 U.S.C. §§ 207, 211(c), 216(b)).

The Settling Parties engaged in settlement negotiations and agreed to attempt to resolve Plaintiff's claims through private mediation.  On July 31, 2019, the Settling Parties participated in a private mediation with mediator David L. Perrault, Esq. The mediation among the Settling Parties and subsequent mediator's proposal ultimately resulted in this Stipulation and Settlement Agreement. The Settling Parties intend this Stipulation to fully, finally, and forever resolve, discharge, and settle the Released State Law Claims and the Class Representative's Released Claims upon and subject to the terms and conditions hereof.  The Settling Parties intend this Stipulation to fully, finally, and forever resolve, discharge, and settle the Released Federal Law Claims as to those Class Members who timely submit an Opt-In Form as described in Section 1 of this Stipulation.  InAlliance retains the right to void the Stipulation if any of the above released claims covered by this settlement and Stipulation are not extinguished as of the Effective Date.

## IV.   INALLIANCE'S DENIAL OF WRONGDOING OR LIABILITY

Inalliance specifically and generally denies all of the claims asserted in the FAC and the Litigation.  InAlliance also denies any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the FAC or the Litigation, and makes no concessions or admissions of wrongdoing or liability of any kind whatsoever. InAlliance maintains that all of its Independent Living Facilitators have been properly paid.  InAlliance also maintains that, for any purpose other than settlement, the claims alleged in the FAC and the Litigation are not suitable or appropriate for class or representative action treatment.  Nonetheless, InAlliance has concluded that further conduct of the Litigation would be protracted, distracting, and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.  InAlliance has also taken into account the uncertainty and risks inherent in any litigation.  InAlliance has therefore determined that it is desirable and beneficial to it to settle the Litigation in the manner and upon the terms and conditions set forth in this Stipulation.

## V.   CLAIMS OF THE CLASS REPRESENTATIVES AND BENEFITS OF SETTLEMENT

The Class Representative and Class Counsel believe that the claims asserted in the Litigation have merit and believe that evidence developed to date supports the claims.  However, the Class Representative and Class Counsel recognize and acknowledge the expense and length of time of the type of continued proceedings necessary to prosecute the Litigation against Defendant through trial and through appeals.  The Class Representative and Class Counsel have also taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in all litigation.  Based upon their evaluation, the Class Representative and Class Counsel have determined that the settlement set forth in the Stipulation is in the best interests of the Class Representative and the Settlement Class.  The Settling Parties have entered into this Stipulation following an "arms' length," full-day mediation with respected mediator David L. Perrault, Esq., which occurred after an exchange of discovery and an extensive investigation of the claims by Class Counsel and the Class Representative.

## VI.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY FURTHER STIPULATED AND AGREED by and between the Class Representative (for himself and the Settlement Class Members) and InAlliance, with the assistance of their respective counsel or attorneys of record, that, as among the Settling Parties, the Released State Law Claims, Released Federal Law Claims, and PAGA Released Claims (as defined in Section 1 below) shall be finally and fully compromised, settled, and released, upon and subject to the terms and conditions of the Stipulation and the Judgment.

1.     *Definitions.*

As used in all parts of this Stipulation, the following terms have the meanings specified below:

1.1   "Class" or "Class Member" means all individuals who are members of the Independent Living Facilitator Class and the Waiting Time Penalties Subclass (as defined below).

1.2   "Class Counsel" means the law firm of GrahamHollis APC.

1.3   "Class Notice" means the Court-approved Notice of Proposed Class Action Settlement, substantially in the form attached hereto as **Exhibit A**.

1.4   "Class Period" for the purposes of this Settlement means the period from February 22, 2014 through the Preliminary Approval Date.

1.5   "Class Representative" means Joseph Osegueda.

1.6   "Court" means the United States District Court for the Eastern District of California.

1.7   "Defendant" means Northern California InAlliance.

1.8   "Effective Date" means the date of the Final Approval Date, if there is no objections to this Stipulation. If there is any objection to this Stipulation, "Effective Date" means the date on which the Court's order granting Final Approval is no longer appealable or the final resolution of any appeal in any favor of approving the settlement. Thus, this date is the later of the following: (1) the date the Final Approval is entered by the Court if no objections are filed to the settlement; (2) if objections are filed and overruled, and no appeal is taken of the final approval order, sixty-five (65) days after the Final Approval is entered by the Court; or (3) if an appeal is taken from the Court's overruling of objections to the settlement, ten (10) days after the appeal is withdrawn or after an appellate decision affirming the final approval decision becomes final.

1.9   "Final Approval" means the final formal court order and judgment signed by the Court following the Final Fairness and Approval Hearing in accordance with the terms herein, approving this Stipulation.

1.10  "FLSA" means the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*.

1.11  "FLSA Collective Action Member" means a Class Member who has opted in to the Settlement by submitting a timely and valid Opt In Form to the Settlement Administrator signed under penalty of perjury.

1.12  "FLSA Opt In Form" means the form in the same or substantially same composition as that entitled "FLSA Collective Action Member Consent Form" as seen in **Exhibit B**

to this Stipulation, as approved by the Parties, through their respective counsel, and by the Court, which Class Members must complete and timely submit in order to become a FLSA Collective Action Member and receive a FLSA Settlement Payment pursuant to this Stipulation.

1.13 "FLSA Opt-In Deadline" means the date by which a Class Member may timely return the FLSA Opt In Form to the Settlement Administrator, which will be the same as the Objections/Request for Exclusions Deadline.

1.14 "FLSA Settlement Fund" means the portion of the QSF attributable to the FLSA claims asserted in the Action as set forth in Section 2.36 of this Stipulation.

1.15 "FLSA Settlement Payment" means the gross amount of the pro rata portion of the FLSA Settlement Fund due to each FLSA Collective Action Member, subject to applicable withholdings and deductions.

1.16 "Independent Living Facilitator Class Member" means all current or former employees of InAlliance who worked in the State of California in the position of Independent Living Facilitator ("ILF") at any time from February 22, 2014 through the Preliminary Approval Date.

1.17 "Individual Settlement Payment(s)" means the portion of the Net Settlement Amount that each Participating Class Member shall be entitled to receive pursuant to this Settlement, minus the FLSA Settlement Payment.

1.18 "Litigation" means the proposed class, representative, and collective action pending in the United States District Court for the Eastern District of California, entitled *Osegueda v. Northern California InAlliance*, Civil Case No. 2:18-cv-00835-WBS-EFB, including the claims asserted in the First Amended Complaint ("FAC").

1.19 "Maximum Settlement Amount" or "Gross Settlement Amount" means the maximum gross settlement sum of Two Hundred and Twenty Five Thousand Dollars ($225,000) that Defendant shall be required to pay pursuant to this Settlement on a non-reversionary basis. The Maximum Settlement Amount includes: (1) all Settlement Payments to Participating Class Members; (2) the Class Representative Service Award; (3) Class Counsel's Fees and Costs; (4) all Settlement Administration Costs; and (5) the PAGA Payment. The Maximum Settlement Amount does not

include Defendant's share of all state and federal payroll taxes and withholdings such as FICA, FUTA, UI, ETT, and SDI ("Payroll Taxes"), which will be paid separate and apart from the Maximum Settlement Amount.

1.20 "Net Settlement Amount" means the portion of the Maximum Settlement Amount available for distribution to Participating Class Members and FLSA Collective Action Members after deduction of the Court-approved attorney's fees and costs to Class Counsel, Settlement Administration Costs, the Class Representative Service Award, and the LWDA's portion of the PAGA payment.

1.21 "Notice Packet" refers to the documents mailed to the Class Members pursuant to the terms of this Stipulation, and includes the following documents: (1) Class Notice (Exhibit 1) and (2) FLSA Opt In Form (Exhibit 2). The FLSA Opt In Form will be part of the Notice Packet and it will include a prepaid envelope addressed to the Settlement Administrator.

1.22 The "Notice Response Deadline" shall be sixty (60) calendar days after the Settlement Administrator first mails the Notice Packet to Class Members, by which date Class Members who wish to object to, or exclude themselves from, or Opt In, the Settlement must submit a timely and valid written objection or Request for Exclusion or FLSA Opt In Form, respectively. The timeliness of a Class Member's Request for Exclusion or written objection shall be determined based on the postmarked date of mailing. The Opt In Form must be validly completed, signed and returned by mail (determined by the postmark date) as forth in Section 4.7, 4.8 and 4.9.

1.23 "Objection/Request for Exclusion Deadline" means the date sixty (60) calendar days after the Settlement Administrator first mails the Class Notice to Class Members, by which date Class Members who wish to object to, or exclude themselves from, the Settlement must submit a timely and valid written objection or Request for Exclusion. The timeliness of a Class Member's Request for Exclusion or written objection shall be determined based on the postmarked date of mailing.

1.24  "Order of Final Approval" or "Order Granting Final Approval of Settlement" shall mean an order to be entered and filed by the Court determining that the parties' settlement was reached in good faith and granting final approval of the settlement.

1.25  "PAGA Aggrieved Employees" mean all current and former employees of Defendant in the State of California in the position of Independent Living Facilitator ("ILF") during the PAGA Period.

1.26  "PAGA Period" means February 22, 2017 through the date of Preliminary Approval of the Settlement.

1.27  "PAGA Payment" means the sum of $11,250, which shall be allocated from the Maximum Settlement Amount to pay all applicable penalties under PAGA, seventy-five percent (75%) of which will be paid to the LWDA, with the remaining twenty-five (25%) to be distributed to the PAGA Aggrieved Employees only and categorized as penalties.

1.28  "Participating Class Member" means each Member of the Class who does not timely submit an Opt Out form.

1.29  "Preliminary Approval" means the entry of an order by the Court preliminarily approving the Settlement.

1.30  "Qualified Settlement Fund" or "QSF" means the account set up by the Settlement Administrator and from which the Individual Settlement Payments to Participating Class Members shall be made. The QSF shall be an interest-bearing account within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, at a federally insured bank that is mutually acceptable to the Parties and the Settlement Administrator. The Settlement Administrator shall serve as a Trustee of the QSF and shall act as a fiduciary with handling of all tax-related issues, reporting and payments. The Settlement Administrator shall act in a manner necessary to qualify and maintain the QSF as a Qualified Settlement Fund and the Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Parties agree that the

QSF shall be a non-reversionary fund and that under no circumstance will there be any reversion to Defendant of any of the funds from the QSF or the Maximum Settlement Amount.

  1.31  "Qualifying Workweek" means any week in which a Participating Class Member actively worked at least one day of the week (i.e., was not on vacation or a leave of absence) as a Class Member during the Class Period, according to Defendant's records. Workweeks of Non-Participating Class Members will not be included in the total number of workweeks for purposes of calculating and distributing the Individual Settlement Payments to Participating Class Members.

  1.32  "Released Federal Law Claims" shall collectively mean any and all federal wage and hour law claims, obligations, demands, actions, rights, causes of action, and liabilities against Defendant, of whatever kind and nature, character and description, that are alleged or that could have been alleged based on the facts alleged in the FAC, including without limitation claims for wages, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, based on any and all claims arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §201, *et seq*.

  1.33  "Released PAGA Claims" shall mean any and all civil penalties claims and liabilities against Defendant under PAGA for underlying violations of the California Labor Code or the California Industrial Welfare Commission Wage Orders that were alleged in the FAC.

  1.34  "Released State Law Claims" shall mean any and all wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities under state or local law, whether in law or equity, and related or derivative claims that are alleged or that could have been alleged based on the facts alleged in the FAC. The Released State Law Claims include but are not limited to: (a) any and all claims asserted in the FAC; (b) any and all claims for failure to pay minimum and regular wages; (2) any and all claims for failure to pay all overtime wages; (3) any and all claims failure to indemnify necessary business expenses; (4) any and all claims failure to provide accurate itemized wage statements; (5) any and all claims for failure to timely pay all wages due upon

separation of employment; (6) any and all claims under the California Business and Professions Code §§ 17200 et seq. based on the facts alleged in the FAC.

1.35 "Releasees" means Defendant InAlliance, each of its affiliates and related entities (including, without limitation, their parents and subsidiaries), predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, re-insurers, shareholders, attorneys, and personal or legal representatives.

1.36 "Request for Exclusion" means a letter or written request to be excluded from the Settlement submitted by a Class Member to the Settlement Administrator and postmarked by the Objection/Request for Exclusion Deadline. In order to be valid, the Request for Exclusion must include the Class Member's name and signature, current address, telephone number, the last four digits of their Social Security Number, and contain a statement to the effect of: "I wish to be excluded from the Settlement.

1.37 "Settlement Administrator" means Ilym Group, Inc. ("ILIM") the third-party entity selected by the Settling Parties to mail the Notice Packets to Class Members and perform all duties relating to the administration of the Settlement.

1.38 "Settlement Administration Costs" means the actual and direct fees and expenses reasonably incurred by the Settlement Administrator in administering the Settlement. Settlement Administration Costs will include, but are not limited to, fees and costs payable to the Settlement Administrator for printing, distributing (including with appropriate postage), and tracking documents for this Settlement, translating the Class Notice in Spanish, any searches to locate any Class Members, calculating estimated amounts per Class Member, tax reporting, distributing the Individual Settlement Payments, Class Representative Service Award, Class Counsel Fees and Costs, payment to LWDA, and providing necessary certification of completion of notice, reports and declarations, establishing and administering a QSF account, required tax reporting and withholding on the Individual Settlement Payments, the issuing of 1099 and W-2 IRS forms, as well as determining the validity of any disputes (and communicating the determination of those disputes to the disputing class

member, Class Counsel and Defendant's Counsel) and opt-outs, calculating all amounts to be paid from the Maximum Settlement Amount, and such other responsibilities and duties as reasonably and customarily performed by third-party settlement administrators or as requested by the Parties. The Settlement Administration Costs are estimated not to exceed $10,500.

1.39 "Settlement Class" means all of the Class Members who do not request exclusion of the Settlement.

1.40 "Settling Parties" means Defendant and the Class Representative on behalf of himself and all Members of the Settlement Class.

1.41 "Stipulation" means this agreement, *i.e.*, the Joint Stipulation of Settlement and Release together with all of its attachments and exhibits, which the Settling Parties understand and agree sets forth all material terms and conditions of the Settlement between them, and which is subject to Court approval. It is understood and agreed that Defendant's obligations for payment under this Stipulation are conditioned on, *inter alia,* the occurrence of the Effective Date.

1.42 "Waiting Time Penalties Subclass" means any members of the Independent Living Facilitator Class whose employment ended, according to InAlliance records, between February 22, 2015 and the Preliminary Approval Date and who does not timely opt-out of the Settlement Class.

1.43 "Waiting Time Penalties Subclass Settlement Allocation" means the portion of the Net Settlement Amount allocated to the members of the Waiting Time Penalties Subclass in accordance with Section 2.3.4.

2. _The Settlement._

2.1 Certification of a Class and Collective Action for Settlement Purposes Only.

2.1.1 The Settling Parties stipulate, for settlement purposes only, to the certification by the Court of a class as to all claims asserted in the Litigation pursuant to state law and to the conditional certification of a collective as to all claims asserted in the Litigation under the FLSA.

2.1.2   If for any reason the Court does not approve this Stipulation, fails to enter the Order of Final Approval, or fails to enter the Judgment or Final Judgment, or if this Settlement Agreement and Stipulation is lawfully terminated for any other reason, InAlliance shall retain the absolute right to dispute the propriety of class and collective certification and/or the ability of this action to proceed as a representative action on all applicable grounds.

2.2   *Consideration to Settlement Class Members.*

2.2.1   The Court will direct InAlliance to fund a QSF maintained by the Settlement Administrator within five (5) calendar days of the Effective Date with the following amounts: (1) the Maximum Settlement Amount and (2) the amount to be paid for the applicable employer's share of payroll taxes. The Settlement Administrator shall have control over the distribution of funds from the QSF, once funded.  With respect to the QSF, the Settlement Administrator shall:  (1) calculate, withhold, remit and report each Participating Class Member's share of applicable payroll taxes pursuant to Section 2.7; (2) satisfy all federal, state and local and income and other tax reporting, return, and filing requirements with respect to the QSF and any interest or other income earned by the QSF; (3) satisfy out of the QSF all fees, expenses and costs incurred in connection with the opening and administration of the QSF and the performance of its duties and functions as described in this Stipulation; and (4) notify InAlliance of the amount to be paid for the applicable employer's share of payroll taxes to be deposited in the QSF.  The aforementioned fees, costs and expenses, apart from the employer's share of payroll taxes to be paid by InAlliance, shall be treated as and included in the costs of administering the QSF and as Administrative Costs.  The Parties agree to cooperate with the Settlement Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section.  If the Court does not enter the Order of Final Approval or if the Effective Date does not occur, the funds in the QSF shall remain the sole and exclusive property of InAlliance.

2.3     *Individual Settlement Payments*.

2.3.1    The Settlement Administrator, according to the terms, conditions, and procedures set forth in this Stipulation, shall have the authority and obligation to calculate the amounts of Individual Settlement Payments in accordance with the methodology set forth in this Stipulation and any Orders of the Court.  First, the Settlement Administrator will deduct from the Maximum Settlement Amount: (i) the Court-approved Class Representative Service Award to Plaintiff; (ii) the Court-approved Attorney's Fees and the approved Costs to Class Counsel; (iii) the court approved Settlement Administration Costs; (iv) and the PAGA Payment which shall be distributed to the LWDA and the Aggrieved Employees as provided in Section 2.4. The amount remaining from the Maximum Settlement Amount shall constitute the Net Settlement Amount, which the Settlement Administrator will distribute among the Participating Class Members as follows:

2.3.2    The Parties agree that the Individual Settlement Payments will be calculated based on the respective number of Qualifying Workweeks each Participating Class Member worked during the Class Period.

2.3.3    *Calculating Qualifying Workweeks*. It shall be the duty of the Settlement Administrator to calculate the respective number of Qualifying Workweeks for each Class Member worked during the Class Period. Defendant shall provide the Settlement Administrator all personnel records and documents necessary to perform this calculation.

2.3.4    *Distribution Formula*. The parties agree to allocate 95% of the Net Settlement Sum to the settlement of the Released State Law Claims. Participating Class Members shall be allocated a pro-rata portion of the Net Settlement Amount available for distribution based upon their respective number of Qualifying Workweeks. In addition, each Participating Class Member who is also a member of the Waiting Time Penalty Subclass will receive an allotment of six (6) additional Qualifying Workweeks.  The Settlement Administrator will add up all the Qualifying Workweeks and calculate the total Qualifying Workweeks for the Participating Class Members. Each Participating Class Member shall be entitled to a pro-rata share of the Net Settlement Amount based on the ratio of the total number of Qualifying Workweeks that he or she worked during the Class

Period to the total number of Qualifying Workweeks that all Participating Class members worked during the Class Period. Thus, the Individual Settlement Payments shall be calculated using the following formula:

> Individual Settlement Payments = Net Settlement Amount x (Participating Class Member's Qualifying Workweeks/Total No. of Qualifying Workweeks for All Participating Class Members).

2.3.5   *Waiting Time Penalties Subclass*. Each member of the Waiting Time Penalties Subclass will be entitled to receive an allotment of six (6) additional Qualifying Workweeks as a waiting time penalty. The entire amount paid to the Waiting Time Penalty Subclass will be allocated as penalties.

2.3.6   *FLSA Settlement Fund*. The Settling Parties agree to allocate 5% of the Net Settlement Sum to the settlement of the Released Federal Law Claims. Class Members will need to opt-in to the FLSA Settlement by timely submitting their FLSA Opt In Form to receive their FLSA Settlement Payment. Each FLSA Collective Action Member shall be entitled to a pro-rata share of the FLSA Settlement Fund based on the ratio of the total number of Qualifying Workweeks that he or she worked during the Class Period to the total number of Qualifying Workweeks that all FLSA Collective Action Members worked during the Class Period. To the extent a Class Member fails to timely submit their FLSA Opt In Form, he/she will receive his/her proportionate share of the Net Settlement Fund and their release will not include FLSA claims.

2.3.7   The Parties agree that Class Members will not have to submit a claim form in order to receive their Individual Settlement Payment.  Each Class Member who does not submit a Request for Exclusion will automatically be mailed a check for their Individual Settlement Payment.

2.3.8   To the extent administratively convenient, the payment to each Participating Class Member shall be made via a single settlement check.

2.3.9   The payments set forth in Section 2.3.3, 2.3.4, and 2.3.5 shall be allocated for reporting reasons as follows: (a) one hundred percent (100%) of payments for waiting

time penalties as penalties; (b) forty percent (40%) of the non-waiting time penalties Individual Settlement Payments and the FLSA Settlement Payment shall be deemed payment in settlement for claims of statutory penalties, liquidated damages, interest, and all other non-wage recovery, and (c) twenty percent (20%) of the non-waiting time penalties Individual Settlement Payments and the FLSA Settlement Payment to the payment of wages. Defendant's share of payroll taxes on the 20% amount allocated to payment of wages shall be paid separate and apart from the Gross Settlement Amount.

  2.4 *Payment to the Labor and Workforce Development Agency.*

   2.4.1 Subject to Court approval, Eleven Thousand Two Hundred and Fifty Dollars ($11,250) will be allocated to the Released PAGA Claims under PAGA, 75% of which ($8,473.50) will be paid directly to the LWDA and the remaining 25% ($2,812.50) will be distributed among the PAGA Aggrieved Employees as penalties.

  2.5 *Class Representative Service Award and Release.*

   2.5.1 Subject to Court approval and the execution of a general release in favor of the Releasees, Defendant agrees to pay Plaintiff Joseph Oseguada a Class Representative Service Award in an amount not to exceed Five Thousand Dollars ($5,000) from the Maximum Settlement Amount, in addition to their Individual Settlement Payment and FLSA Settlement Payment. If the Court approves a Class Representative Service Award to Plaintiff that is less than the amount sought, the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members.

   2.5.2 The Parties intend this payment to constitute a service payment in consideration for Plaintiff's litigation efforts, and the work and time Plaintiff put into this Litigation as Class Representative.

   2.5.3 The Class Representative Service Award is also provided in consideration for Plaintiff's willingness to provide a full and separate general release on their own behalf and on behalf of their heirs, spouses, executors, administrators, attorneys, agents and assigns of any and all claims against the Releasees regardless of whether such claims have been alleged

against Defendant, including any and all known or unknown claims, demands, rights, liabilities, causes of action, losses, debts, and expenses whether for wages, economic damages, non-economic damages, punitive damages, restitution, tort, contract, penalties, injunctive or declaratory relief, attorney's fees, costs, or other monies or remedies. This release by Plaintiffs includes all federal and state statutory claims, and federal and state common law claims (including but not limited to those for contract, tort, and equity), as well as, inter alia, the Americans with Disabilities Act, Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §1981, 42 U.S.C. § 1983, the Fair Labor Standards Act, the Employee Retirement Security Income Act of 1974, the California Constitution, the California Fair Employment and Housing Act, the California Unfair Competition Act (California Business and Professions Code section 17200, et seq.), the California Labor Code, the Fair Labor Standards Act, and claims for additional compensation relating to stock options.

2.5.4   Furthermore, through the general release, the Class Representative himself (and not on behalf of the Class) shall release, acquit and discharge the Releasees from any and all claims of any kind whatsoever (upon any legal or equitable theory whether contractual, common law, constitutional, statutory, federal, state, local or otherwise), whether known or unknown, that arose, accrued or took place at any time on or prior to the date on which the full and general release is executed. Through the full and general release discussed in this Section, the Class Representatives will expressly waive the benefit of Section 1542 of the California Civil Code and acknowledges the language of Section 1542 of the California Civil Code, which provides:

2.5.5   **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**Because the Class Representative Service Award represents a payment to the Class Representative for services to the Class and not wages, taxes will not be withheld from the Class Representative Service Award.  No Party has made any representation to Plaintiff regarding the taxability of any Class Representative Service Award. The Settlement

Administrator will report the Class Representative Service Award on a 1099 form, which it will provide to the Class Representative and the pertinent taxing authorities, as required by law.  The Class Representatives assumes full responsibility for paying all federal and state taxes and penalties, if any, due as a result of their receipt of the Class Representative Service Award.

        2.5.6   The Class Representative fully supports the Settlement and believes the Settlement is fair, reasonable and adequate and in the best interest of the Class Members.

      2.6   *Class Counsel's Attorney's Fees and Costs*.

        2.6.1   Class Counsel will request a payment in an amount not to exceed Seventy Five Thousand Dollars ($75,000) or 1/3 of the Maximum Settlement Amount, to compensate Class Counsel for all of the work already performed in this Litigation and all work remaining to be performed.

        2.6.2   Class Counsel will also request reimbursement for actual reasonable litigation costs and expenses incurred in prosecuting the Litigation and implementing the terms of the Settlement, in an amount not to exceed $9,000, which shall be paid from the Maximum Settlement Amount.

        2.6.3   Defendant agrees to not object to Class Counsel's request for fees and costs as long as the request is consistent with the terms of this Stipulation.

        2.6.4   The amount paid for Class Counsel's Fees and Costs shall constitute full satisfaction of any obligation to pay any amounts to any person, attorney or law firm for attorneys' fees, expenses or costs in the Litigation incurred by any attorney on behalf of Plaintiff and Class Members, and shall relieve Releasess of all claims or liability to any attorney or law firm for any attorneys' fees, expenses and/or costs that may be claimed on behalf of Plaintiff and/or the Class Members.

        2.6.5   If the amount awarded to Class Counsel for attorney's fees is less than the amount sought, the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members, with each to bear their own fees and costs in all other respects.

2.7    *Taxes.*

2.7.1    Those payments allocated to the settlement of claims for unpaid wages: (a) shall be subject to required withholdings and deductions, and so the net amounts payable will be less than the gross amounts; and (b) shall be reported in the year of payment as wage income to the Participating Class Member on a Form W-2 and such other state or local tax reporting forms as may be required by law.

2.7.2    Those payment amounts allocated to all other claims, including without limitation claims for penalties, reimbursement, liquidated damages, interest, and other non-wage recovery (a) shall not be subject to required withholdings and deductions, and so the net amounts payable will be equal to the gross amounts; and (b) shall be reported in the year of payment as non-wage income to the Participating Class Members on a Form 1099 and such other state or local tax reporting forms as may be required by law.

2.7.3    Participating Class Members shall be solely responsible for the reporting and payment of the employee's share of any federal, state, and/or local income or other tax or any other withholdings, if any, on any of the payments made pursuant to this Section VI of this Stipulation.   The Settlement Administrator shall calculate and inform Defendant of its share of payroll taxes associated with the settlement payments.   Defendant will contribute any share of payroll taxes to the QSF and Defendant's share of the payroll taxes will be paid out of the QSF, in addition to the Settlement Amount.   Neither Class Counsel nor Defendant makes any representations, and it is understood and agreed that Defendant and Class Counsel have not made any representations, as to the taxability to any Participating Class Members of any portions of the settlement payments, the payment of any costs or an award of attorneys' fees, or any payments to the Class Representative.

3.    *The Settlement Approval Procedure.*

3.1    The Class Representative, through his counsel of record in the Litigation, shall file this Stipulation with the Court and move for preliminary approval of this Stipulation.   Defendant agrees not to oppose Plaintiff's motions for Preliminary or Final Approval unless the motions are

inconsistent with the terms set forth in this Settlement and Defendant will be provided an opportunity to review the motion before it is filed.

3.2    The Settling Parties agree to the conditional certification of the Class for the sole purpose of effectuating this Settlement. Should, for whatever reason, the Settlement not become final, the fact that the Parties were willing to stipulate to class certification as part of the Settlement shall have no bearing on, and shall not be admissible in, this Litigation or any other legal proceeding in any jurisdiction. As is discussed elsewhere in this Stipulation, Defendant expressly reserves the right to oppose class certification in this Litigation should the Settlement not become final.

3.3    The Parties agree to fully cooperate with each other to accomplish the terms of this Stipulation, including but not limited to, execution of such documents and to take such other actions as may reasonably be necessary to implement the terms of this Stipulation.

3.4    If the Court grants Preliminary Approval, then at the resulting Final Approval Hearing, the Class Representative and Defendant, through their counsel of record, shall address any timely written objections from Class Members or any concerns from Class Members who attend the hearing, and any concerns of the Court, if any, and shall and hereby do, unless provided otherwise in this Stipulation, stipulate to final approval of this Stipulation and entry of the Judgment by the Court.

4.    *The Notice*.

4.1    Within ten (10) business days following the Court's entry of its Order Granting Preliminary Approval of Settlement Defendant shall provide the Settlement Administrator with a list containing the names, last known addresses, last known telephone numbers, social security numbers of all Class Members, the dates of employment of each Class Member who worked for Defendant in California during the Class Period, the last date of employment for each Class Member and all other information necessary for the Settlement Administrator to calculate the number of Qualifying Workweeks worked by each Class Member during the Class Period and to determine which Class Member is also a member of the Waiting Time Penalty Subclass and identify the Class Members that are also Aggrieved Employees (the "Class Data").

4.2     Defendant's Counsel shall consult with the Settlement Administrator prior to the production date to ensure that the format of the database will be acceptable to the Settlement Administrator. The Settlement Administrator shall not share the information in the Class Data, including the identity of Class Members with the Class Representatives or Class Counsel, except as otherwise provided herein.

4.3     Prior to mailing the Notice Packets to Class Members, the Settlement Administrator shall perform a National Change of Address (NCOA) search and an Accurint (or substantially similar) in-depth skip trace in order to obtain the best possible address for Class Members.

4.4     The Notice Packets for the Class will contain both the Class Notice and the FLSA Opt In Form and prepaid envelope addressed to the Settlement Administrator. The Notice Packet shall be mailed via first class mail through the United States Postal Service, postage pre-paid, within fourteen (14) calendar days after receipt of the Class Data.

4.4.1   The Notice Packet and its envelope or covering shall be marked to denote the return address of the Settlement Administrator.  The envelope containing the Notice Packet shall bear the following phrase in bold type, "**RETURN SERVICE REQUESTED**." The envelope shall also bear the following phrase in the bottom left hand corner: IMPORTANT—INALLIANCE CLASS ACTION SETTLEMENT INFORMATION. PLEASE OPEN IMMEDIATELY. Included with the Class Notice shall be a pre-paid, pre-addressed envelope for the Class Member to return their FLSA Opt In Form.

4.5     The Class Notice shall provide that Class Members who wish to exclude themselves from the Settlement must submit a Request for Exclusion to the Settlement Administrator postmarked by the Objection/Request for Exclusion Deadline – sixty (60) calendar days following the initial mailing of the Class Notice. Any Class Member who properly requests exclusion will not receive an Individual Settlement Payment and will not be bound by this Settlement or have any right to object, appeal, or comment thereon. Class Members who do not submit a valid and timely Request for Exclusion shall be bound by the terms of the Settlement and any judgment entered in the

Litigation once the Settlement receives Final Approval. The Class Notice will provide this information to Class Members.

4.6     The Class Notice shall provide that Class Members who wish to object to the Settlement must file their written objection with the Court by the Objection/Request for Exclusion Deadline as well as mail a copy of their written objection to the Settlement Administrator postmarked no later than the Objection/Request for Exclusion Deadline. Class Members who fail to object in the manner specified in this Stipulation of Settlement will be deemed to have waived all objections to the Settlement and will be foreclosed from making any objections, whether by appeal or otherwise, to the Settlement.

4.7     The Class Notice shall provide that Class Members who wish to Opt In to receive their FLSA individual settlement allocation must complete, sign and postmark their FLSA Opt In Form by the FLSA Opt-In deadline- sixty (60) calendar days following the initial mailing of the Class Notice.

4.8     The Opt In Form shall also include instructions on how to submit the form and shall notify Class Members of the FLSA Opt In Deadline.  The date of the postmark on the return envelope shall be the exclusive means used to determine whether a Class Member has "timely" returned his or her Opt In Form.  For purposes of this Stipulation, an Opt In Form shall be deemed "valid" only if:  (a) the Class Member has provided on the Opt In Form his or her name (b) the Class Member has dated and signed the Opt In Form; and (c) the name provided by the Class Member on the Opt In Form matches Defendant's records as provided to the Settlement Administrator.  If a Class Member's Opt In Form is defective as to any of these three requirements, the Class Member shall be given an opportunity to cure the defect(s).

4.9     If a FLSA Opt In Form is submitted by a Class Member but has not been signed or is otherwise deficient, the Settlement Administrator will send a deficiency notice within three (3) business days of the date the Settlement Administrator becomes aware of such deficiency. The Settlement Administrator shall clearly state in the deficiency notice all the reasons why the FLSA Opt In Form is deficient and inform the Class Member of the need to cure all these

deficiencies and re-submit the FLSA Opt In Form to be able to receive their FLSA Settlement Payment. Any deficient FLSA Opt In Form that was originally submitted on or before the FLSA Opt In Deadline shall be accepted and paid if the deficiency is cured within three (3) calendar days prior to the date of the Final Approval Hearing.

4.10    If a Notice Packet is returned as undeliverable with a forwarding address provided by the United States Postal Service on or by the Objection/Request for Exclusion Deadline, the Settlement Administrator will promptly resend the Notice Packet to that forwarding address along with a brief letter stating that the recipient of the Notice Packet has until the original deadline set forth on the original Notice, or ten (10) calendar days after the date of re-mailing of the Notice Packet (whichever is later) to object or submit a Request for Exclusion. If any Notice Packet is returned from any mailing and/or re-mailed, the Settlement Administrator will note for its own records and notify the Parties' Counsel of the date of such re-mailings as part of a weekly status report provided to the Parties.

4.11    If a Notice Packet is returned as undeliverable without a forwarding address from its first mailing, the Settlement Administrator shall undertake reasonable efforts to locate a current address, including performing an Experian (or substantially similar) in-depth skip trace or mass search on LexisNexis databases based on set criteria. If the Settlement Administrator obtains a more current address, the Settlement Administrator shall resend the Notice Packet to that address along with a brief letter stating that the recipient of the Notice Packet has until the original deadline set forth on the original Notice or ten (10) calendar days after the date of re-mailing of the Notice Packet (whichever is later) to submit a Request for Exclusion.

4.12    The Settlement Administrator will keep a log of all communications with any Settlement Class Member.  If the Settlement Administrator cannot resolve the question or issue raised by a particular Settlement Class Member, the Settlement Administrator will be instructed to forward the question or issue in writing to Class Counsel and counsel for Defendant.

4.13    The Settlement Administrator shall provide the Parties' Counsel with a weekly report showing: (1) the number of Class Notices mailed to Class Members; (2) the number of Class

Notices returned as undeliverable; (3) the number of re-mailed Class Notices; (4) the number of Class Members who have submitted Requests for Exclusion; (5) the number of Class Members who have submitted objections; and (6) the number of Class Members who have disputed the number of Qualifying Workweeks being credited to that Class Member. Additionally, the Settlement Administrator shall provide to the Parties' Counsel any updated reports regarding the administration of the Settlement as needed or requested.

5. *Resolution of a Dispute.*

5.1     If a Class Member who receives the Class Notice wishes to dispute the number of his or her Qualifying Workweeks represented therein, the Class Member must notify the Settlement Administrator no later than the Objection/Request for Exclusion Deadline. The Class Member must produce any available supporting evidence to the Settlement Administrator regarding the correct number of Qualifying Workweeks that the Class Member contends he or she worked for Defendant during the Class Period, as explained in the Class Notice. The Settlement Administrator will notify the Parties' Counsel of any disputes via email. Defendant shall review its records and provide information to the Settlement Administrator in response to any such disputes. Defendant's records shall be presumed to be determinative, but the Settlement Administrator shall evaluate the evidence submitted by the Class Member and make the decision as to which dates should be applied. The determination by the Settlement Administrator shall be final and binding.

6. *Requests for Exclusion from Class.*

6.1     In order for any other Class Member to validly exclude himself or herself from the Class and this Settlement (i.e., to validly opt out), the Class Member or his or her authorized representative must send a Request for Exclusion to the Settlement Administrator, postmarked or faxed by no later than sixty (60) calendar days after the date the Settlement Administrator initially mails the Class Notice to the Class Members or ten (10) calendar days after the Settlement Administrator re-mails the Notice to the Class Member, whichever is later. The date of the initial mailing of the Class Notice was postmarked or faxed, shall be conclusively determined according to the records of the Settlement Administrator. Any Class Member who timely and validly submits a

Request for Exclusion will not be entitled to any Individual Settlement Payment, will not be bound by the terms and conditions of this Stipulation, and will not have any right to object to the Settlement or appeal the Court's Orders in this case.

6.2    Any Class Member who fails to timely submit a valid Request for Exclusion shall be deemed a Class Member whose rights and claims with respect to the issues raised in the Litigation are determined by the Court's Final Order, and by the other rulings in the Litigation. Thus, said Class Member's rights to pursue any claims released in this Stipulation will be extinguished.

6.3    The Settlement Administrator will provide the Parties with the number of valid and timely Request for Exclusion letters received within seven (7) calendar days after the Objection/Exclusion Deadline.

7.    *Objections to Settlement.*

7.1    In order for any other Class Member to object to this Stipulation, or any term of it, the person making the objection must not submit a timely request for exclusion (i.e., must not opt out), and must file their objection with the Court by the Objection/Request for Exclusion Deadline as well as mail a copy of their written objection to the Settlement Administrator postmarked no later than the Objection/Request for Exclusion Deadline (or ten (10) days after the Settlement Administrator re-mails the Notice to the Class Member, whichever is later), a completed and signed objection, along with any supporting papers. The date of the initial mailing of the Class Notice Packet, and the date the signed Objection Form was postmarked or faxed, shall be conclusively determined according to the records of the Settlement Administrator. The Settlement Administrator shall send any objections it receives to Defense Counsel and Class Counsel within three (3) business days of receipt. The Court retains final authority with respect to the consideration and admissibility of any Class Member objections.

7.2    The Parties to this Stipulation and the counsel representing such Parties shall not, directly or indirectly, through any person, encourage or solicit any Class Member to exclude himself or herself from this Settlement (opt out) or to object to it. However, Class Counsel, Defense

Counsel, and Defendant may respond to inquiries from Class Members with truthful information and nothing that discourages participation.

      8.     *Settlement Funding and Distribution.*

      8.1     Settlement Funding Date: Defendant shall deposit the full amount of the Maximum Settlement Amount into the Qualified Settlement Fund set up by the Settlement Administrator no later than fourteen (14) calendar days after the Effective Date.

      8.2     Disbursement Date: No later than seven (7) calendar days after Defendant funds the QSF, the Settlement Administrator shall disburse: (a) Individual Settlement Payments to Participating Class Members; (b) the Class Representative Service Award; (c) the portion of the PAGA Payment to be made to the LWDA; (d) the Settlement Administrator's Costs; and (e) Class Counsel's Attorney's Fees and Costs, all as previously approved by the Court.

      8.3     Within 250 calendar days of the Effective Date of the Settlement, the Settlement Administrator shall provide written certification of such completion to the Court, Class Counsel and Defendant's Counsel. Class Counsel shall file that written certification with the Court.

      8.4     Subject to Court approval, the following is a summary of the proposed timeline related to this Settlement:

| EVENT | DEADLINE |
|---|---|
| Preliminary Approval of the Settlement by the Court | TBD |
| Defendant to provide Settlement Administrator with the list of Class Members and all required Class Data | 10 business days after entry of the order granting Preliminary Approval |
| Settlement Administrator to mail Notice to Class Members | 14 calendar days after receiving the Class Data |
| Objections/Exclusion Deadline | 60 calendar days after mailing of Notice |
| FLSA Opt In Deadline | 60 calendar days after mailing of the Notice |
| Settlement Administrator to provide the | 7 calendar days after the Objection/Exclusion |

| parties notice of the valid request of exclusion letters and objections received | Deadline |
|---|---|
| Deadline for Defendant to exercise its option to cancel the settlement if 5% or more of the Class Members submit a timely and valid request for exclusion | 10 business days after Settlement Administrator notifies the Parties of the number of valid and timely requests for exclusion |
| Settlement Administrator to provide declaration of due diligence | 25 calendar days prior to Final Approval Hearing |
| Final Approval Hearing | TBD |
| Effective Date of the Settlement | Date the Court enters the Final Approval Order and Judgment, if no objections to the Settlement. |
| Funding Obligation Date | 14 calendar days after Effective Date of the Settlement |
| Settlement Administrator to mail Individual Settlement Payments | 7 calendar days after the Defendant makes all the necessary payments into the Qualified Settlement Fund |
| Un-cashed Checks Become Void | 180 calendar days after mailing of the Individual Settlement Payment Checks |
| Settlement Administrator to Provide Certificate of Completion of Settlement | 250 calendar days After Effective Date of Settlement |

9.      *Disposition of Returned or Un-Cashed Checks*

9.1    This is a non-reversionary "all-in" settlement. No unclaimed amounts will revert to Defendant.

9.2    *Returned Checks*.

9.2.1   If any Individual Settlement Payments are returned as undeliverable, the Settlement Administrator will take all steps necessary to locate an updated mailing address for the Class Member, including without limitation, using Experian (or substantially similar) in-depth skip-trace. In the event the Settlement Administrator is unable to locate an updated address or the Individual Settlement Payments are returned as undeliverable after a second mailing, the amount of

any returned checks shall be distributed to Legal Services of Northern California as a cy pres award under CCP section 384.

         9.3    *Un-cashed Checks*.

         9.3.1   Any checks that are not returned but remain un-cashed one hundred and eighty (180) calendar days after mailing or re-mailing (pursuant to paragraph 9.2) shall be distributed to Legal Services of Northern California as a cy-pres award under CCP section 384. Participating Class Members who do not timely cash their Individual Settlement Payments shall be bound by all of the terms of the Settlement, including without limitation, the Released Claims set forth herein.

         10.    *Releases.*

         10.1   Upon the Effective Date, the Class Representative and all Participating Class Members, and each of their heirs, representatives, successors, and assigns shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released State Law Claims as defined in Section 1.34.

         10.2   In addition, upon the Effective Date, the Class Representative and all Participating Class Members who submit timely and valid Opt In Forms, and each of their heirs, representatives, successors, and assigns shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Federal Law Claims as defined in Section 1.32.

         10.3   In addition, upon the Effective Date, the Class Representative and all Aggrieved Employees, and each of their heirs, representatives, successors, and assigns shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, all Released PAGA Claims as defined in Section 1.33.

         10.4   In addition, upon the Effective Date, the Class Representative, on behalf of himself, and each of his heirs, representatives, successors, and assigns, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all claims as defined in Section 2.5.3 and 2.5.4.

11.    *Limitation on Publicity.*

11.1    Counsel for Plaintiff and the Class shall not publicize this Settlement in any way, nor shall they be permitted to contact or respond to any requests from the press (including print, television, radio, internet, or any other media) regarding this Settlement, except to refer them to the Court's file for further information.  Except for the agreed-upon motions and notices and as otherwise stated in this Settlement [THIS IS REFERRING TO THE PRELIMINARY AND FINAL APPROVAL MOTIONS AND CLASS NOTICE], the Parties shall not at any time make any announcement of the settlement of this case or otherwise publicize such settlement.

11.2    Counsel for Plaintiff will keep strictly confidential all terms of this Stipulation in this Litigation, and will not disclose any information pertaining to the terms or conditions of this Stipulation or any other information concerning this Settlement to any person or entity of any kind whatsoever, unless specifically authorized to do so in the notice or compelled to do so by a state or federal court having jurisdiction to so order.  However, Class Counsel will be permitted to respond to questions from Class Members concerning the Settlement and this agreement. Plaintiff shall not respond to any inquiries directed to him by Class Members or any other person or entity.  Plaintiff must refer all such inquiries to Class Counsel.

12.    *Termination of Settlement*

12.1    If the Effective Date does not occur, or if disposition of this Litigation is not effectuated, any certification of the Class will be vacated and Plaintiff, Defendant, and the Class will be returned to their positions with respect to the Litigation as if the Stipulation had not been entered into.

12.2    In the event that the Effective Date does not occur:  (a) any Court orders preliminarily or finally approving certification of any class contemplated by this Stipulation shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity; and (b) the fact of the settlement reflected in this Stipulation, the fact that Defendant did not oppose the certification of a Class under this Stipulation, or that the Court preliminarily approved the certification of the Class, shall not be used or cited thereafter by any person or entity, including in

any manner whatsoever, including without limitation any contested proceeding relating to the certification of any class.

12.3    If the Effective Date does not occur, this Stipulation and any of the related negotiations or proceedings shall be deemed null and void, shall be of no force or effect whatsoever, and shall not be referred to or used for any purpose whatsoever. All Parties to this Stipulation shall stand in the same position, without prejudice, as if the Stipulation had been neither entered into nor filed with the Court.

12.4    Defendant may void the Settlement in the event five percent (5%) or more of the Class Members submit a timely and valid Request for Exclusion. Defendant must exercise this right within ten (10) business days after the Settlement Administrator notifies the Parties of the number of valid and timely Request for Exclusion letters received, which the Settlement Administrator must do within seven (7) calendar days after the Objection/Exclusion Deadline. If Defendant chooses to withdraw it will be responsible for all costs incurred by the Settlement Administrator in administrating the settlement up through the date of withdrawal.

12.5    In the event a timely appeal is filed from the Final Approval Order and Judgment, the Final Order shall be stayed and the Gross Settlement Amount shall not be distributed pending the completion of the appeal.

12.6    Invalidation of any material portion of this Stipulation shall invalidate this Stipulation in its entirety unless the Parties shall subsequently agree in writing that the remaining provisions shall remain in full force and effect.

13.    *Miscellaneous Provisions*

13.1    Defendant's Costs: All of Defendant's own legal fees, costs, and expenses incurred in this Litigation shall be borne by Defendant.

13.2    The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in administration of the Settlement, noting that the cost of administering the Settlement shall be deducted from the Maximum Settlement Fund subject to approval by the Court.

13.3     Authority to Enter into Settlement: The signatories hereto represent that they are fully authorized to enter into this Settlement and bind the Parties to the terms and conditions herein.

13.4     Cooperation in Drafting:   The Parties have cooperated in the negotiation and preparation of this Stipulation. This Stipulation will not be construed against any Party on the basis that the Party, or the Party's counsel, was the drafter or participated in the drafting of this Stipulation.

13.5     Mutual Full Cooperation: The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court to effectuate this Settlement and the terms set forth herein. In the event the Parties are unable to reach a Stipulation on the form or content of any document needed to implement the Settlement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Settlement, the Parties shall seek the assistance of the Court to resolve such disagreement.

13.6     No Admission: Nothing contained herein, nor the consummation of this Settlement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or any of the other Released Parties. Each of the Parties hereto has entered into this Settlement with the intention of avoiding further disputes and litigation with the attendant risk, inconvenience and expenses. This Settlement is a settlement document and shall, pursuant to California Evidence Code section 1152 and/or Federal Rule of Evidence 408 and/or any other similar law, be inadmissible as evidence in any proceeding, except an action or proceeding to approve the Settlement, and/or interpret or enforce this Settlement.

13.7     Construction: The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive, arm's-length negotiations between the Parties and that this Settlement shall not be construed in favor of or against any of the Parties by reason of the extent to which any Party participated in drafting this Settlement.

13.8    Headings:   The descriptive heading of any section or paragraph of this Stipulation is inserted for convenience of reference only and does not constitute a part of this Stipulation and shall not be considered in interpreting this Stipulation.

13.9    Representation by Counsel: The Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Stipulation, and that this Stipulation has been executed with the consent and advice of counsel.

13.10   No Reliance on Representations:  The Parties have made such investigation of the facts and the law pertaining to the matters described herein and to this Stipulation as they deem necessary, and have not relied, and do not rely, on any statement, promise, or representation of fact or law, made by any of the other parties, or any of their agents, employees, attorneys, or representatives, with regard to any of their rights or asserted rights, or with regard to the advisability of making and executing this Stipulation, or with respect to any other matters. No representations, warranties, or inducements have been made to any party concerning this Stipulation.

13.11   Jurisdiction of the Court: Except for those matters to be resolved by the Settlement Administrator as expressly stated, any dispute regarding the interpretation or validity of this Settlement, or relating to the Litigation or Released Federal Law Claims, Released State Law Claims or Released PAGA Claims, shall be subject to the exclusive jurisdiction of the Court, and Plaintiff, Class Members, and Defendant agree to submit to the personal and exclusive jurisdiction of the Court. The Judgment entered by the Court will not adjudicate the merits of the Litigation or the liability of the Parties resulting from the allegations of the Litigation. The Court shall retain jurisdiction solely with respect to the interpretation, implementation and enforcement of the terms of this Stipulation and all orders, judgments entered in connection therewith, and post-judgment matters.

13.12   California Law Governs: All terms of this Settlement and exhibits hereto shall be governed by and interpreted according to the laws of the State of California, regardless of its conflict of laws.

13.13   Invalidity of Any Provision: The Parties request that before declaring any provision of this Stipulation of Settlement invalid, the Court shall first attempt to construe all

provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions in this Stipulation of Settlement valid and enforceable.

13.14   Amendment or Modification: This Settlement may be amended or modified only by a written instrument signed the Parties or their successors-in-interest.

13.15   Interim Stay of Proceedings: The Parties agree to hold in abeyance all proceedings in the Litigation, except such proceedings necessary to implement and complete the Settlement, pending the Final Approval Hearing to be conducted by the Court.

13.16   Counterparts and Fax/Electronic Signatures: This Settlement may be executed in counterparts by facsimile, electronic signature, or email, which for purposes of this Stipulation shall be accepted as an original. All executed counterparts and each of them will be deemed to be one and the same instrument. Any executed counterpart will be admissible in evidence to prove the existence and contents of this agreement. A fax or electronic signature, such as Docusign, on this Stipulation shall be as valid as an original signature.

13.17   Entire Agreement: This Stipulation and exhibits hereto constitute the entirety of the Settlement terms. No other prior or contemporaneous written or oral agreements may be deemed binding on the Parties, and this Stipulation supersedes all prior agreements and understandings among the Parties hereto with respect to the settlement of the Litigation, including correspondence between Class Counsel and Defense Counsel and drafts of prior agreements or proposals. The Parties expressly recognize that California Civil Code Section 1625 and California Code of Civil Procedure Section 1856(a) provide that a written agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence, and agree that no such extrinsic oral or written representations will modify, vary or contradict the terms of the Settlement. In case of any conflict between text contained in Sections 1 through 14 of this Stipulation and text contained in the Exhibits to this Stipulation, the former (*i.e.,* Sections 1 through 14) shall be controlling, unless the Exhibits are changed by or in response to a Court order. There are no restrictions, promises, representations, warranties, covenants, or undertakings governing the subject matter of this Stipulation other than those expressly set forth or referred to herein.

13.18   Waiver:  Any failure of any Party, Defense Counsel, or Class Counsel hereto to comply with any obligation, covenant, agreement, or condition herein may be expressly waived in writing, to the extent permitted under applicable law, by the Party or Parties and their respective counsel hereto entitled to the benefit of such obligation, covenant, agreement, or condition. A failure to insist upon strict compliance with any representation, warranty, covenant, agreement, or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

13.19   No Prior Assignments: The Parties and the Parties' Counsel represent and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of liability, claim, demand, action, cause of action or right released and discharged in this Stipulation of Settlement.

13.20   Assignment: None of the rights, commitments, or obligations recognized under this Stipulation may be assigned by any Party, Class Member, Class Counsel, or Defense Counsel without the express written consent of each other Party and their respective counsel. The representations, warranties, covenants, and agreements contained in this Stipulation are for the sole benefit of the Parties under this Stipulation, and shall not be construed to confer any right or to avail any remedy to any other person.

13.21   Binding on Successors and Assigns: This Settlement will be binding upon, and inure to the benefit of, the successors or assigns of the Parties to this Settlement.

13.22   Deadlines Falling on Weekends or Holidays: To the extent that any deadline set forth in this Stipulation falls on a Saturday, Sunday or legal holiday, that deadline shall be continued until the following business day.

**IT IS SO AGREED.**

Dated: November 23, 2019          **PLAINTIFF**:

_____
                                         JOSEPH OSEGUEDA

Dated: November __14__, 2019

**DEFENDANT:**
NORTHERN CALIFORNIA INALLIANCE

By: _____
(Authorized Representative of Defendant)

**APPROVED AS TO FORM AND CONTENT:**

Dated: November __15__, 2019

**CLASS COUNSEL**:
GRAHAMHOLLIS, APC

By: _____
GRAHAM S.P. HOLLIS
VILMARIE CORDERO

Dated: November __15__, 2019

**DEFENDANT'S COUNSEL**:
LAW OFFICES OF MATHENY SEARS
LINKERT & JAIME, LLP

By: _____
MATTHEW C. JAIME
ROBERT W. SWEETIN

Joint Stipulation of Settlement and Release        -34-

# EXHIBIT 2

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**UNITED STATES DISTRICT COURT-EASTERN DISTRICT OF CALIFORNIA**
*Osegueda v. Northern California InAlliance, Case No. 2:18-cv-00835-WBS-EFB.*

Indicate Name/Address Changes, if any:

<<Name>>
«Address»
<<City>>, <<State>> <<Zip Code>>
XX - XX - __ __ __ __

**YOU MAY BE ENTITLED TO RECEIVE MONEY FROM A SETTLEMENT RELATED TO YOUR EMPLOYMENT WITH NORTHERN CALIFORNIA INALLIANCE ("INALLIANCE").**

*A California Court authorized this notice.  This is not a solicitation from a lawyer.*

YOU ARE HEREBY NOTIFIED that a proposed settlement ("the Settlement") of the above class action ("the Action") filed in the United States District Court for the Eastern District of California has been reached by the Parties and has been granted Preliminary Approval by the Court supervising the Action. The purpose of this Class Notice is to inform you of the Settlement of this class action and your legal rights.  The two sides disagree on whether InAlliance is liable for the allegations raised in this case and how much money could have been won if the employees won at trial.  **Your legal rights may be affected. <u>Read this notice carefully</u>.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **Get a Payment** | If you are a Settlement Class Member, you will automatically receive a payment.  After final approval by the Court, the payment will be mailed to you at the same address as this notice. If your address has changed, please notify the Settlement Administrator as explained below. |
| **Opt In to Get the Additional FLSA Settlement Payment** | Get an additional payment. You will need to complete the attached Opt-In Form to get the additional FLSA Settlement Payment on or before [INSERT DATE] |
| **Exclude Yourself** | Get no payment. Send a letter to the Settlement Administrator as provided below. This is the only option that allows you to bring your own claim against InAlliance about the legal claims in this case. |
| **Object** | Send a letter to the Settlement Administrator as provided below about why you do not like the settlement.  Directions are provided below. |

## WHY DID YOU RECEIVE THIS NOTICE?

This notice explains a proposed settlement of a lawsuit, and informs you of your legal rights under that proposed settlement.  You are receiving this notice because you may be a member of a class on whose behalf this lawsuit has been brought because you.

## WHAT IS THIS LAWSUIT ABOUT?

On February 22, 2018, Plaintiff Joseph Osegueda filed a proposed Class Action and representative action against InAlliance alleging the following causes of action:  (1) failure to pay minimum and regular wages; (2) failure to pay all overtime wages; (3) failure to indemnify necessary business expenses; (4) failure to provide accurate itemized wage statements; (5) failure to timely pay all wages due upon separation of employment; (6) violation of Business and Professions Code §§ 17200 et seq.; (7) violation of the Private Attorneys General Act of 2004, Labor Code §§ 2698, et seq.; and (8) violation of the Fair Labor Standards Act ("FLSA") (29 U.S.C. §§ 207, 211(c), 216(b)).

InAlliance denies any liability or wrongdoing of any kind associated with the claims alleged in the lawsuit and further denies that, for any purpose other than that of settling this lawsuit, the lawsuit is appropriate for class treatment.  InAlliance contends, among other things, that it complied at all times with the California Labor Code, the California Business and Professions Code, and all other applicable laws. The Court has made no ruling and will make no ruling on the merits of the Action and its allegations and claims.

## WHY IS THIS A CLASS ACTION?

In a class action, one or more people, called Class Representatives (in this case Plaintiff Joseph Osegueda), sue on behalf of people who have similar claims. All these people are a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

## WHY IS THERE A SETTLEMENT

The Court did not decide in favor of Plaintiffs or Defendants. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Class Representative and the attorneys think the settlement is best for everyone who was injured or exposed. The Court has determined only that there is sufficient evidence to suggest that the proposed settlement might be fair, adequate, and reasonable and that any final determination of those issues will be made at the final hearing.

## WHAT DOES THE SETTLEMENT PROVIDE?

**A.**   **Who is in the Class?**

The Settlement Class consists of all current and former employees of InAlliance who worked in the State of California in the position of **Independent Living Facilitator** ("ILF") at any time from February 22, 2014 through [DATE the Preliminary Approval Date] who have not excluded themselves from the Settlement in accordance with the requirements set forth herein.  You are part of the Waiting Time Penalties Subclass if you worked as an ILF and separated employment any time from February 22, 2015 through [DATE the Preliminary Approval Date] who have not excluded themselves from the Settlement.

2

**B.**      **What Can I Get from The Settlement?**

InAlliance will pay a total of Two Hundred and Twenty-Five Thousand Dollars ($225,000) (the "Maximum Settlement Amount") to settle the lawsuit.  The Maximum Settlement Amount does not include Defendant's share of all state and federal payroll taxes and withholdings such as FICA, FUTA, UI, ETT, and SDI ("Payroll Taxes"), which will be paid separate and apart from the Maximum Settlement Amount

**The following amounts will be paid from the Maximum Settlement Amount**: all settlement payments to the Settlement Class, attorneys' fees (not to exceed $75,000), litigation expenses not to exceed $9,000, administrative costs estimated in an amount not to exceed $ _____, 75% of the PAGA payment in the amount of $11,250 to be paid to the California Labor & Workforce Development Agency, and an enhancement payment to the Plaintiff Osegueda in the amount of $5,000.  After all this money is taken out, the amount left is called the "Net Settlement Amount".

The Settlement Administrator shall cause the Court approved enhancement to Named Plaintiff, Court approved attorneys' fees and litigation costs, administration costs, and PAGA payment to be paid at the same time and manner as the settlement payments to the Settlement Class Members.

### Your Individual Payment Amount.

The amount of the payments provided to Settlement Class Members will be calculated using (a) your total number of Qualifying Workweeks (i.e., each week, or fraction thereof, you worked for InAlliance during the Settlement Period as described above); (b) divided by the aggregate number of Qualifying Workweeks of all Class Members; (c) multiplied by the value of the Net Settlement Amount, less any applicable withholding taxes.  In addition, members of the Waiting Time Penalties Subclass will be entitled to receive an allotment of six (6) additional Qualifying Workweeks as a waiting time penalty.

Currently, it is estimated that based on your number of Qualifying Workweeks you will receive a minimum of $_____. This amount [includes/does not include] the additional 6 weeks because [you are/you are not] a member of the Waiting Time Subclass.  This number may change based on how much the court awards in attorneys' fees, litigation expenses, the enhancement payment to the Named Plaintiff, and the number of individuals who ask to be excluded from the settlement.

### Your FLSA Payment Amount

**To receive your additional FLSA Payment Amount YOU MUST COMPLETE AND MAIL the attached FLSA Opt-In Form on or before [DATE].**

Currently, it is estimated that you will receive a minimum FLSA Payment of $_____ if you timely submit the attached FLSA Opt-In Form. Each Settlement Class Member that timely submits the FLSA Opt-In Form will receive an equal share of the FLSA Settlement Fund, which is estimated in $_____ or 5% of the Net Settlement Amount.

### Tax Matters.

The Settlement Administrator will distribute IRS Forms W-2 and 1099 (and the equivalent California forms) to Settlement Class Members reflecting the payments each Settlement Class Member receives under the Settlement. For tax purposes, payments will be allocated as follows: 1/3 as wages; 2/3 as interest, penalties and other non-wage damages.  Forms W-2 and/or Forms 1099 will be distributed at

3

times and in the manner required by the Internal Revenue Code. The entire amount paid to the Waiting Time Penalty Subclass will be allocated as penalties.

Interest and penalties paid under this Settlement shall not be subject to federal, state and local payroll withholding taxes.  The Settlement Administrator shall issue an IRS form 1099 for payments of interest and penalties. The usual and customary deductions will be taken out of the amounts attributable to unpaid wages.  Settlement Class Members should consult with their tax advisors concerning the tax consequences of the payment they receive under the Settlement.

Any and all Employer Taxes that Center normally would be responsible for paying will be paid by InAlliance separately.

## C.   **What Are You Giving Up To Get A Payment Or Stay In The Class?**

Upon the Date of Final Approval, Named Plaintiff and all Settlement Class Members, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged Defendant InAlliance and its affiliates and related entities (including, without limitation, their parents and subsidiaries), predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, re-insurers, shareholders, attorneys, and personal or legal representatives (collectively, the "Releasees"), from all "**Released PAGA Claims**" and "**Released State Law Claims**."

**Released PAGA Claims** means any and all civil penalties claims and liabilities against Defendant under PAGA for underlying violations of the California Labor Code or the California Industrial Welfare Commission Wage Orders that were alleged in the FAC.

**Released State Law Claims means** any and all wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities under state or local law, whether in law or equity, and related or derivative claims that are alleged or that could have been alleged based on the facts alleged in the FAC. The Released State Law Claims include but are not limited to: (a) any and all claims asserted in the FAC; (b) any and all claims for failure to pay minimum and regular wages; (2) any and all claims for failure to pay all overtime wages; (3) any and all claims failure to indemnify necessary business expenses; (4) any and all claims failure to provide accurate itemized wage statements; (5) any and all claims for failure to timely pay all wages due upon separation of employment; (6) any and all claims under the California Business and Professions Code §§ 17200 et seq. based on the facts alleged in the FAC.

In addition, all Settlement Class Members that timely submit a completed FLSA Opt-In Form will also release all any and all federal wage and hour law claims, obligations, demands, actions, rights, causes of action, and liabilities against Defendant, of whatever kind and nature, character and description, that are alleged or that could have been alleged based on the facts alleged in the FAC, including without limitation claims for wages, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, based on any and all claims arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §201, et seq. ("Released Federal Law Claims.")

## THE FINAL APPROVAL HEARING

Presently, the Court has determined only that there is sufficient evidence to suggest that the proposed settlement might be fair, reasonable and adequate.  The Court will conduct a final approval hearing regarding the proposed settlement (the "Final Approval Hearing") on_____, 2019, at _:00 am, at

4

_____, in Department of the United States District Court, Eastern District of California, Located at _____.

The Court will determine: (i) whether the settlement should be given the Court's final approval as fair, reasonable, adequate and in the best interests of the Settlement Class Members; (ii) whether the Settlement Class Members should be bound by the terms of the settlement; (iii) the amount of the attorneys' fees and litigation costs that should be awarded to Plaintiff's counsel; and (iv) the amount that should be awarded to the Plaintiff as an enhancement payment. At the Final Approval Hearing, the Court will hear all objections, as well as arguments for and against the proposed settlement. You have a right to attend this hearing, but you are not required to do so. You also have the right to hire an attorney to represent you, or to enter an appearance and represent yourself. If you decide to hire an attorney to represent you, you will be solely responsible for paying any attorneys' fees and/or costs associated with that representation.

The Settlement Administrator will give notice to any objecting party of any continuance of the hearing on the Motion for Final Approval. Additionally, you may contact Plaintiff's counsel, listed in this Notice, to inquire into the date and time of the Final Approval hearing.

Condition of Settlement. This Settlement is conditioned upon the Court entering an order at or following the Final Approval Hearing fully and finally approving the Settlement as fair, reasonable, adequate and in the best interests of the Settlement Class.

## WHAT ARE YOUR OPTIONS?

- **OPTION 1 – *GET A PAYMENT***

**IF YOU ARE A SETTLEMENT CLASS MEMBER AND WISH TO RECEIVE YOUR SHARE OF THE SETTLEMENT, YOU DO NOT HAVE TO DO ANYTHING. YOU WILL AUTOMATICALLY RECEIVE A SETTLEMENT PAYMENT.**

## YOU WILL NOT BE RETALIATED AGAINST FOR PARTICIPATING IN THE SETTLEMENT

You are never required to go to court or pay anything to the lawyers in this case. The estimated amount of your Settlement Payment is set forth on page 3 above.

If you believe that the number of Qualifying Workweeks stated is incorrect, you may dispute the number of Qualifying Workweeks by submitting a letter to the Settlement Administrator. The letter must: (1) including preparing a statement setting forth the number of Qualifying Workweeks that such person believes in good faith is correct; (2) include any evidence you may have; and (3) state that you authorize the Settlement Administrator to review the Settlement Class member's personnel file to determine such information and attaching any relevant documentation in support thereof. To be considered, the dispute letter must be sent by first class U.S. mail to the Settlement Administrator and must be postmarked no later than ___, 2019 or 60 days after mailing of this Notice to you. If you believe that the number of Qualifying Workweeks stated is correct, you do not have to do anything.

The Settlement Payment you will receive will be a full and final settlement of your Released Claims described above.

- **OPTION 2 – OPT IN TO GET THE ADDITIONAL FLSA SETTLEMENT PAYMENT**

The estimated amount of your FLSA Settlement Payment is set forth on page 3 above.  To receive this additional Settlement Payment, you MUST complete and sign the attached FLSA Opt-In Form and MAIL it to the Settlement Administrator in the pre-paid and pre-addressed envelope included in this packet no later than <<[60 days from Mailing]>>.  If you have any question about the FLSA Opt-In Form you can reach Class Counsel at 619.906-4025 or the Settlement Administrator at [PHONE]

- **OPTION 3-*EXCLUDE YOURSELF FROM THE SETTLEMENT, GET NO MONEY FROM THE SETTLEMENT BUT KEEP THE RIGHT TO SUE***

You have a right to exclude yourself ("opt out") from the Settlement, but if you choose to do so, you will not receive any benefits from the proposed settlement.  You will **not** be bound by a judgment in this case and you will have the right to file your own lawsuit against Center, subject to time limits called Statute of Limitations and other potential defenses that Center may assert, and to pursue your own claims in a separate suit.

You can opt out of the Settlement by mailing a letter by first class U.S. mail to the Settlement Administrator.  The letter must include the following information: (1) the case name and number (*Osegueda v. Northern California InAlliance, Case No. 2:18-cv-00835-WBS-EFB*); (2) a statement that "I wish to exclude myself from the settlement, I understand I will not receive payment"; (3) your address and phone number or your attorneys' address and telephone number (if you have one); (4) be signed by you or your attorney.  To be valid, your request for exclusion must be postmarked no later than ___, 2020 or 60 days after mailing of this Notice to you.

- **OPTION 4 – *OBJECT TO THE SETTLEMENT***

If you wish to remain a Settlement Class Member, but you object to the proposed settlement (or any of its terms) and wish the Court to consider your objection at the Final Approval Hearing, you may object to the proposed settlement in writing.  Your writing must include the following: (1) the case name and number (*Osegueda v. Northern California InAlliance, Case No. 2:18-cv-00835-WBS-EFB*); (2) the grounds for the objection; (3) your address and phone number or the address and phone number for your attorney.  The letter must be dated and signed by you.  The objection must be mailed to the Settlement Administrator: at (Address) and must be postmarked no later than___, 2020 [insert date] or 60 days after mailing of this Notice to you.

You may appear in person or through an attorney, at your own expense, at the Final Approval hearing.  However, it is not necessary for the you or your attorney to appear at the Final Approval Hearing in order for the objection to be considered by the Court.

Any attorney who represents a Class Member objecting to this Settlement must file a notice of appearance with the Court on or prior to the Response Deadline.

6

**COUNSEL FOR THE PARTIES**

The Court approved Vilmarie Cordero and Graham S.P Hollis from the law firms of Graham Hollis APC to represent you and other Class Members. Together, the lawyers are called Class Counsel. You will not be charged for these lawyers, they will be paid out of the settlement as described above. If you want to be represented by your own lawyer, you may hire one at your own expense.

PLAINTIFF/CLASS COUNSEL:
Graham S.P. Hollis
Vilmarie Cordero
**GRAHAMHOLLIS** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103
Telephone: 619.906-4025
Facsimile: 619.692.0822

COUNSEL FOR INALLIANCE:
Matthew C. Jaime
Robert W. Sweetin
LAW OFFICES OF MATHENY SEARS
LINKERT & JAIME, LLP
3638 American River Drive
Sacramento, CA 95864
Tel: (916) 978-3434
Fax: (916) 978-3430

**CHANGE OF ADDRESS**

If you move after receiving this Notice, if it was misaddressed or if for any reason you want your Settlement Payment or future correspondence concerning this Action to be sent to a different address, you must supply your preferred address to the Settlement Administrator.

**GETTING MORE INFORMATION**

The above is a summary of the basic terms of the settlement.  For the precise terms and conditions of the settlement, you may review the detailed "Joint Stipulation of Settlement and Release" which was filed with the Court on _____, 2020 and is available for viewing online, along with other court records regarding this case, at www._____ com. The pleadings and other records in the lawsuit are available here www._____ com.

**ALL INQUIRIES REGARDING THIS LITIGATION SHOULD BE MADE TO THE SETTLEMENT ADMINISTRATOR OR CLASS COUNSEL**

**PLEASE DO NOT TELEPHONE THE COURT OR THE OFFICE OF THE CLERK FOR INFORMATION REGARDING THIS SETTLEMENT OR THE SETTLEMENT ADMINISTRATION PROCESS.**

7

# EXHIBIT 3

**FLSA COLLECTIVE ACTION MEMBER CONSENT TO JOIN ("OPT IN") FORM**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
*Joseph Osegueda v. Northern California InAlliance*
Case No.: 2:18-cv-00835-WBS-EFB

Indicate Name/Address Changes, if any:

<<Name>>  _____
<<Address>>  _____
<<City, State, Zip Code>>  _____
<<Home Phone Number>>  _____

**INSTRUCTIONS**

ACCORDING TO NORTHERN CALIFORNIA INALLIANCE ("INALLIANCE")'S RECORDS, YOU ARE A CURRENT OR FORMER NON-EXEMPT EMPLOYEE WHO WORKED FOR INALLLIANCE IN CALIFORNIA BETWEEN FEBRUARY 22, 2014 THROUGH [INSERT PA DATE]. YOU ARE A CLASS MEMBER AND YOU WILL AUTOMATICALLY RECEIVE A SETTLEMENT PAYMENT AS PROVIDED IN THE ACCOMPANYING NOTICE OF PENDENCY OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION ("NOTICE").

TO RECEIVE AN **ADDITIONAL** SETTLEMENT PAYMENT FROM THE FLSA SETTLEMENT FUND FOR THIS COLLECTIVE ACTION SETTLEMENT **THIS FORM MUST BE SIGNED AND POSTMARKED NO LATER THAN** <<[60 days from Mailing]>>. PLEASE COMPLETE THIS OPT IN FORM AND MAIL IT TO THE SETTLEMENT ADMINISTRATOR IN THE ENCLOSED PREPAID ENVELOPE.

IF YOU SUBMIT THIS OPT IN FORM, YOUR ESTIMATED INDIVIDUAL SETTLEMENT PAYMENT IS: <<**INDIVIDUAL ESTIMATED AMOUNT INCLUDING FLSA PAYMENT**>>

_____
**MAIL TO:**
**SETTLEMENT ADMINISTRATOR**
**[Insert Address]**

_____

**RELEASE AND CONSENT TO JOIN**

By signing and submitting this Opt In Form, in accordance with the terms of the Joint Stipulation of Class Action and PAGA Representative Action Settlement and Release between Plaintiff and InAlliance ("Settlement Agreement"), described in the Class Notice, I hereby agree and opt into the Settlement and submit to the jurisdiction of the United States District Court, Eastern District of California, with respect to my claim as a FLSA Collective Action Member and for purposes of enforcing the release of the Released Federal Law Claims as set forth in the Settlement Agreement and Notice.

I acknowledge that by submitting this Opt In Form, I will hereby consent in writing to become a party plaintiff in the above action pursuant to Section 216(b) of the Fair Labor Standards Act, and authorize Class Counsel (as defined in the Settlement Agreement) to act on my behalf in all matters relating to this action, including the settlement of my claims.

Under penalty of perjury, my signature below certifies that I have read the Notice in the lawsuit entitled *Osegueda v. Northern California InAlliance*, No. 2:18-cv-00835-WBS-EFB, and I understand that I hereby and forever release and discharge the Defendant Flagship and its parent companies, subsidiaries, affiliates, shareholders, members, agents, officers, directors, employees, predecessors, successors, insurers, attorneys, and assigns ("the Releasees") from any and all claims alleged in the First Amended Complaint as specified inPage ____ of the Class Notice and set forth under the Settlement Agreement on file with the Clerk of Court.

In addition, by signing this FLSA Consent Form, I understand that I am providing the Releasees with a full and complete release of any and all claims under the Fair Labor Standards Act ("FLSA") and any alleged federal wage and hour violations/allegations that were made or could have been made based on the actual claims asserted or factual allegations in the Action, whether premised on statute, regulation contract, tort or other theory of liability under federal law or regulation by any Class Member against the Released Parties.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the information I provided in this Opt In Form is true and correct.

Dated:_____        Signature:_____

Print of Type Name: _____

**IN ORDER TO RECEIVE AN <u>ADDITIONAL</u> CASH PAYMENT FROM THE FLSA SETTLEMENT FUND, YOU MUST SIGN AND RETURN THIS OPT IN FORM TO THE SETTLEMENT ADMINISTRATOR SUCH THAT IT IS POSTMARKED ON OR BEFORE <<OPT IN DATE>>.**

# EXHIBIT 4

# EXHIBIT 2

GrahamHollis, A.P.C.
3555 Fifth Avenue, Suite 200, San Diego, CA  92103
(619) 692-0800
www.grahamhollis.com

**Appointed as Class Counsel[1] for the following wage and hour employment law cases:**

**United States District Court - Central District**:

- *Ellis v. Pacific Bell Telephone Co.* settled for $3.1 million on behalf of approximately 84 class members, and Judge Carney awarded 33.3% in fees.

- *Rodriguez v. Old Dominion Freight Line, Inc.* settled for $3.4 million on behalf of approximately 76 class members, and Judge Fischer awarded 27.5% in fees.

- *Corral v. Lifecare Solutions* settled for $3 million on behalf of approximately 270 class members, and Judge Olguin awarded 30% in fees.

- *Madera v. Universal Alloy Corporation* settled for $4.75 million on behalf of approximately 744 class members, and Judge Selna awarded 25% in fees.

- *Green v. Lawrence Service Co.* settled for $60,000 on behalf of approximately 295 class members, and Judge Kronstadt awarded $169,500 in fees.

- *Weaver v. Hallmark Marketing Corp.* settled for $5.625 million on behalf of approximately 3,846 class members, and Judge Fairbanks awarded 33% in fees.

**United States District Court – Eastern District**:

- *Milburn v. Petsmart, Inc.* is an ongoing case and has been conditionally approved by Judge Drozd

**United States District Court – Northern District**:

- *Moore v. Petsmart, Inc.* settled for $10 million on behalf of approximately 19,701 class members, and Judge Davila awarded 27% in fees.

- *Delatorre v. Johnson Controls, Inc.* settled for $2.8 million on behalf of approximately 1,441 class members, and Judge Grewal awarded 25% in fees.

- *Fong v. Regis Corporation* settled for $5,750,000, on behalf of approximately 5,573 class members, and Judge Chhabria awarded 33% in fees.

- *Jimenez v. Menzies Aviation* settled for $1,250,000 on behalf of 5,175 class members and Judge Orrick awarded 33% in fees.

---

[1] List includes cases filed by Graham Hollis, A.P.C., as well as its predecessor entities.  It also includes cases where other law firms were appointed as co-class counsel.

1

- *Aston v. United Parcel Services, Inc.* settled for $490,000 on behalf of approximately 2,000 class members, and Judge White awarded 33.33% in fees.

**United States District Court – Southern District:**

- *Lopez v. GAT Airline Ground Support, Inc.* settled for $600,000 on behalf of approximately 1,394 class members, and Judge Battaglia awarded 25% in fees.

- *Birch v. Office Depot, Inc.* settled for $14 million on behalf of approximately 16,722 class members, and Judge Sabraw awarded 40% in fees.

- *Singer v. Becton Dickinson and Co.* settled for $1 million on behalf of approximately 266 class members, and Judge Gonzalez awarded 33.33% in fees.

- *Cook v. Tiffany and Company* settled for $4,148,270 on behalf of approximately 1,584 class members, and Judge Lorenz awarded 24.8% in fees.

- *Ferguson v. Winston Retail Solutions* settled for $750,000 on behalf of approximately 660 class members; and Judge Battaglia awarded 33.33% in fees.

**Superior Court for the County of Alameda:**

- *Hobdy v. Landmark Event Staffing Services, Inc.* settled for $245,100 on behalf of approximately 3,671 class members, and Judge Hernandez, Jr., awarded 33.33% in fees.

**Superior Court for the County of Contra Costa:**

- *Stevenson v. Falcon Critical Care Transport* settled for $233,853 on behalf of approximately 46 class members, and Judge Goode awarded 29% in fees.

**Superior Court for the County of Fresno:**

- *Parmelee v. Driveline Retail Merchandising, Inc.* settled for $1,000,000 on behalf of approximately 1,261 class members, and Judge Kapetan awarded 33.33% in fees.

- *Kenner v. Oak Harbor Freight Lines, Inc.* settled for $1,850,000 on behalf of approximately 216 class members, and Judge Snauffer awarded 27% in fees.

- *McGough v. Love's Travel Stops & Country Stores, Inc.,* is an ongoing case and conditionally approved by Judge Schuett.

**Superior Court for the County of Los Angeles:**

- *Lucarini v. Dresser, Inc.* settled for $1.024 million on behalf of approximately 78 class members, and Judge Mohr awarded 39.55% in fees.

- *Magana-Mead v. LKQ Corporation,* was settled for $1,150,000 on behalf of 303 class members, and Judge Nelson awarded 33% in fees.

- *Mahoney v AT&T Corp.* settled for $13,894,098.62 on behalf of approximately 719 class members, and Judge Elias awarded 33.33% in fees.

2

- *Calhoun v. General Petroleum Corp.* settled for $950,000 on behalf of approximately 300 class members, and Judge Dunn awarded 40% in fees.

- *Frugard v. Unified Protective Services, Inc.* is an ongoing case which has been certified as a class action by Judge Johnson.

- *Garcia v. Menzies Aviation, Inc.* settled for $1,000,000 on behalf of approximately 1,800 class members, and Judge Rosenblatt awarded 33.33% in fees.

- *Wright v. Menzies Aviation, Inc.* was certified as a class action by Judge Weintrob and was consolidated with *Jimenez v. Menzies Aviation, Inc.* for settlement purposes.

- *Williams v. One Legacy* settled for $1.2 million on behalf of approximately 145 class members, and Judge Johnson awarded 33% in fees.

- *Solaberrieta v. Baker Hughes Oilfield Operations* settled for $3.5 million on behalf of approximately 295 class members, and Judge Wiley awarded 33.33% in fees.

- *Wright v. AMF Bowling Centers, Inc.* settled for $6.35 million on behalf of approximately 4,914 class members, and Judge Duffy-Lewis awarded 28% in fees.

- *Iskandaryan v. Casual Male Retail Group, Inc.* settled for $950,000 on behalf of approximately 716 class members, and Judge Stern awarded 33.33% in fees.

- *Agredano v. Southwest Water Company,* settled for $1,220,000 on behalf of approximately 125 class members, and Judge Nelson awarded 33.33% in fees.

- *Gordon v. Accountable Healthcare Staffing, Inc.,* has been conditionally approved by Judge Buckley

**Superior Court for the County of Orange**:

- *Duarte v. Rainbow Disposal Co., Inc.* settled for $1.6 million on behalf of approximately 110 class members, and Judge Andler awarded 40% in fees.

- *Payton v. Atlantic Aviation Investors, Inc.* settled for $1 million on behalf of approximately 162 class members, and Judge Stock awarded 40% in fees.

- *Flannery v. AGR Group California* settled for $1,324,937 on behalf of approximately 5,182 class members, and Judge Andler awarded 33% in fees.

- *Parnell v. Hart-Hanks Shoppers, Inc.* settled for $600,000, on behalf of approximately 169 class members, and Judge Andler awarded 33.33% in fees.

- *Jenkins v. The Mentor Network, Inc.* settled for $1,625,000 on behalf of approximately 1050 class members, and Judge Perkins awarded 33% in fees.

- *Collins v. The Stephouse Recovery, Inc.,* settled for 1,200,000 on behalf of approximately 150 class members, and Judge Claster awarded 35% in fees.

- *Valenzuela v. Enver Solar, Inc.,* is an ongoing case and has been conditionally approved by Judge Sanders.

**Superior Court for the County of Riverside**:

- *Leonard v. ABTTC, Inc.* settled for $2.5 million on behalf of approximately 336 class members, and Judge Riemer awarded 33% in fees.

- *Vest v. Scher Tire, Inc.* settled for $3,363,396 on behalf of approximately 795 class members, and Judge Waters awarded 33.33% in fees.

- *Digiacomo v. Castelli's Ristorante* settled for $225,000 on behalf of approximately 35 class members, and Judge Waters awarded 33% in fees.

**Superior Court for the County of San Bernardino**:

- *Bracy v. Speedy Cash* settled for $237,320 on behalf of approximately 222 class members, and Judge Kayashima awarded 22.69% in fees.

- *Booher v. The Poma Companies* settled for $650,000 on behalf of approximately 75 class members, and Judge Plotkin awarded 44% in fees.

- *Jeffries v. Praxair Services, Inc.* settled for $373,000 on behalf of approximately 23 class members, and Judge Garza awarded 35% in fees.

- *Scaglione v. M.O. Dion & Sons, Inc.* settled for $585,000 on behalf of approximately 123 class members, and Judge Garza awarded 30% in fees.

- *Malone v. Praxair, Inc.* settled for $900,000 on behalf of approximately 57 class members, and Judge Davis awarded 40% in fees.

- *Alvarez v. Core States, Inc.* settled for $530,000 on behalf of approximately 45 class members, and Judge Garza awarded 40% in fees.

**Superior Court for the County of San Diego**:

- *Fennessey v. Round Table Pizza, Inc.* settled for $2,125,000 on behalf of approximately 16,333 class members, and Judge Lewis awarded 28% in fees.

- *Morales v. Sony Electronics, Inc.* settled for $450,100 on behalf of approximately 4,742 class members, and Judge Styn awarded $296,275 in fees.

- *Frayre v. United Parcel Services Supply Chain Services, Inc.* settled for $494,000 on behalf of approximately 55 class members, and Judge Sturgeon awarded 33.33% in fees.

- *Julio v. L&M Tire Company, Inc.* settled for $1.85 million on behalf of approximately 1,087 class members, and Judge Barton awarded 33% in fees.

- *Irmen v. Raphael's Party Rentals* settled for $1 million on behalf of approximately 845 class members, and Judge Lewis awarded 40% in fees.

- *Weil v. Hooters of America, Inc.* settled for $1.35 million on behalf of approximately 2,300 class members, and Judge Wohfeil awarded 35% in fees.

- *Clancy v. Scripps Health* settled for $6.4 million on behalf of approximately 124 class members, and Judge Meyer awarded 33% in fees.

- *De La Rosa v. Quten Research Institute, LLC* settled for $450,000 on behalf of approximately 402 class members, and Judge Meyer awarded 33.33% in fees.

- *Martinez v. San Diego Auto Scrubber, Inc.* settled for $500,000 on behalf of approximately 148 class members, and Judge Hayes awarded 33.33% in fees.

- *Chavez v. Real Time Staffing Services, Inc.* settled for $1.9 million on behalf of approximately 3,120 class members, and Judge Medel awarded 35% in fees.

- *Thompson v. LawInfo.com, Inc.* settled for $150,000 on behalf of approximately 115 class members, and Judge Enright awarded 33.33% in fees.

- *Escoto-Miranda v. Evans Tire & Service Centers, Inc.* settled for $800,000 on behalf of approximately 450 class members, and Judge Strauss awarded 33% in fees.

- *Loveless v ASM Affiliates* settled for $750,000 on behalf of approximately 276 class members, and Judge Styn awarded 33.33% in fees.

- *Falcon v. Flight Suits, Inc.* settled for $450,000 on behalf of approximately 101 class members, and Judge Denton awarded 33.33% in fees.

- *Solis v. Check Agencies of California, Inc.* settled for $475,000 on behalf of approximately 559 class members, and Judge Taylor awarded 35% in fees.

- *Demers v. Hotcakes No. 3, Inc.* settled for $150,000 on behalf of approximately 300 class members, and Judge Nevitt awarded 33% in fees.

- *Madriz v. North County Ford, Inc.* settled for $188,000 on behalf of approximately 45 class members, and Judge Wohfeil awarded 33.33% in fees.

- *Fay v Cement Cutting, Inc.,* settled for $720,000 on behalf of approximately 376 class members, and Judge Bacal awarded 33.33% in fees.

- *Costa v. Altman Specialty Plants, Inc.* settled for $2,400,000 on behalf of approximately 4,414 class members, and Judge Hayes awarded 33.33% in fees.

- *Huerta v. Venture Petroleum Company, Inc.*, settled for $300,000 on behalf of approximately 513 class members, and Judge Wohlfeil awarded 33.33% in fees.

- *Johnson v. The SoCo Group, Inc.*, settled for $895,000 on behalf of approximately 218 class members, and Judge Lewis awarded 33.33% in fees.

- *Geilenfeldt v. EDF Renewable Energy, Inc.* settled for $2,500,000 on behalf of approximately 144 class members, and Judge Sturgeon awarded 33.33% in fees.

- *Garcia v. Task Ventures, LLC*, settled for $822,856.50 on behalf of approximately 2,700 class members, and Judge Wohlfeil awarded 40% in fees.

- *Barron v Green Farms, Inc.*, settled for $650,000 on behalf of approximately 154 class members, and Judge Pollak awarded 33.33% in fees.

- *Arriaga v. International Coffee & Tea*, settled for $1,250,000 on behalf of 479 class members, and Judge Bacal awarded 33.33% in fees.

**Superior Court for the County of San Francisco**:

- *Casas v. Pacific Bell Telephone Co.* settled for $6 million on behalf of approximately 464 class members, and Judge Goldsmith awarded 23% in fees.

**Superior Court for the County of Santa Clara**:

- *Ledbetter v. Entrepreneurial Ventures, Inc.* settled for $1.8 million on behalf of approximately 754 class members, and Judge Overton awarded 33.33% in fees.

- *Subia v. National Securities Industries, Inc.* settled for $275,000 on behalf of approximately 187 class members, and Judge Lucas awarded 30% in fees.

- *Letuligasenoa v. International Paper Company* for $4,500,000 on behalf of approximately 3,786, and Judge Errand awarded 33.33% in fees with a 1.47 multiplier.

**Superior Court for the County of Solano**:

- *Turnage v. Park Management Corporation* settled for $400,000 on behalf of approximately 214 class members, and Judge Daniels awarded 33.33% in fees.

- *Saechao v. Pla-Fit Franchise d.b.a. Planet Fitness* settled for $325,000 on behalf of approximately 149 class members, and Judge Mattice awarded 25% in fees.

- *Stafford v. Dollar Tree Stores Inc.* settled for $4,600,000 on behalf of approximately 7,737 class members, and Judge Beeman awarded 33.33% in fees.

**Superior Court for the County of Ventura**:

- *Jackson v. Vulcan Materials Co.* settled for $800,000 on behalf of approximately 103 class members, and Judge Bysshe awarded 37.5% in fees.

- *Laux v. Van Nuys Skyways, Inc.* settled for $800,000 on behalf of approximately 70 class members, and Judge Riley awarded 35% in fees.

**Serving as Plaintiffs' Counsel in the following wage and hour employment law class/representative action cases:**

**United States District Court – Central District:**

- *Potter v. Big Tex Trailer Manufacturing, Inc.,* before Judge Gutierrez

- *Valentine v. Rehabilitation Center of Santa Monica Holding Company GP,* before Judge Wu

- *Summa v. LF Sportswear, Inc.,* before Judge Wilson

**United States District Court – Eastern District:**

- *Stoddart v. Express Services, Inc.* before Judge Mueller

- *Osegueda v. Northern California Inalliance,* before Judge Shubb

**United States District Court – Southern District:**

- *Tanis v Southwest Airlines Co.,* before Judge Hayes

- *Ceron de Orozco v. Flagship Facility Services, Inc.* before Judge Burkhardt

- *Pool v. Ameripark, LLC,* before Judge Burns

**Superior Court for the County of Alameda:**

- *Roberson v. Center for the Elders' Independence,* before Judge Seligman

- *Lee v. Sutter Bay Medical Foundation,* before Judge Petrou

**Superior Court for the County of Fresno:**

- *Drake v. Midvalley Disposal, LLC* before Judge Snauffer

**Superior Court for the County of Los Angeles:**

- *Silva v LK&M Wall Corp.,* before Judge Berle

- *Taylor v. Cross Country Support Services,* before Judge Nelson

- *Lopez v. Kazi Foods, Inc.,* before Judge Hogue

- *Jackson v. Sourcecorp BPS, Inc.,* before Judge Nelson

- *Ralda v. Smart & Final Stores, LLC,* before Judge Kuhl

- *Quinones v. Atria Management Company, LLC,* before Judge Buckley

**Superior Court for the County of Orange:**

- *Blackwood v. Solid Landings Behavioral Health, Inc.* before Judge Sherman

- *Dilorenzo v. Healthy Healing Holistic Options dba Showgrow.,* before Judge Sherman

- *Chima v. Beckman Coulter, Inc.,* before Judge Wilson

**Superior Court for the County of Riverside:**

- *Steppe v. Responsible Medical Solutions Corp,* before Judge Riemer

7

**Superior Court for the County of Sacramento:**

- *Muniz v. Sutter Valley Hospitals*, before Judge Perkins

- *Mendez v. SSP America SMF LLC*, before Judge Perkins

**Superior Court for the County of San Bernardino:**

- *Christensen v. Heartland Express, Inc.* before Judge Cohn

- *Sala v. Personnel Staffing Group, LLC,* before Judge Cohn

- *Salazar v. Pods Enterprises, LLC,* before Judge Cohn

**Superior Court for the County of San Diego**

- *Rivera v. WNT, Inc.,* before Judge Sturgeon

- *Broadbent v. GHC of National City I, LLC*, before Judge Pollack

- *Sanchez v. Evans Tire and Service Centers, Inc.,* before Judge Sturgeon

- *Fosse v. Heartland Express, Inc. of Iowa,* before Judge Wohlfeil

- *Bergman v. BJS&T Enterprises Inc.*, before Judge Frazier

- *Moreno v. Providence Group Inc.* before Judge Frazier

- *Maasrani v. International Hotel Associates No. 11 LLC*, before Judge Sturgeon

- *Moreno v. Home Plate a Cafe Company*, before Judge Frazier

- *Nathan v. OS Restaurant Services, LLC,* before Judge Styn

- *Ramirez v. Automobile Club of Southern California*, before Judge Trapp

- *Zamorano v. Piperin Corporation*, before Judge Medel

- *Parvizi v. Classic Residence Management LP dba VI*, before Judge Wohlfell

- *Pina v. Paradise Wings Enterprise*, before Judge Taylor

**Superior Court for the County of San Francisco:**

- *Simpkins v. GPS Consumer Direct, Inc.*, before Judge Wiss

- *Caldwell v. Professional Technical Security Services, Inc.*, before Judge Wong

- *Aubrey v. Lugg, Inc.,* before Judge Massullo

- *Alawamleh v. Ian Motos dba Baiano Pizzeria Hayes Valley*, before Judge Massullo

**Superior Court for the County of Santa Barbara:**

- *Ramirez v Baker Hughes Oilfield Operations (Baker Hughes Wage and Hour Cases),* before Judge Anderle

**Superior Court for the County of Santa Clara**:

- *Allison v. Super Zen, Inc.*, before Judge Kuhnle

- *Suarez v. First Alarm Security & Patrol, Inc.*, before Judge Walsh

- *Jordan v. Arriaga & Associates, Inc.,* before Judge Kuhnle

- *Furlough v. Capstone Logistics, LLC,* before Judge Kuhnle

**Superior Court for the County of Solano**

- *Maria v. Gourmet Demonstration Services, Inc.*, before Judge Getty

**Superior Court for the County of Tulare**

- *Lopez v. Ruiz Food Products, Inc.*, before Judge Hillman

# EXHIBIT 5

9.14   Staff who wish to discuss a temporary dispensation, based on personal need, regarding this policy must contact their direct supervisor. If the supervisor grants a special dispensation it will be temporary and must be agreed upon in writing & signed by both the staff and supervisor.

## 10. OFFICE HOURS AND HOLIDAY SCHEDULE

10.00   OFFICE HOURS

10.01   The standard hours of operation of INALLIANCE are from 8:00 a.m. to 5:00 p.m., Monday through Friday. All personnel are expected to be on duty, except when on approved leave. Modifications in working hours may be made by the Executive Director and require prior approval.

10.02   Exempt staff is expected to work the number of hours required for effective performance of their responsibilities. Meetings held outside of the regular working hours are expected as a normal part of exempt staff activity.

10.03   HOLIDAY SCHEDULE (See Holiday Schedule – Appendix F)

INALLIANCE observes the following ten paid holidays each year:

| | |
|---|---|
| New Year's Day | Labor Day |
| Martin Luther King Jr.'s Birthday | Veteran's Day |
| President's Day | Thanksgiving Day and Day After |
| Memorial Day | Christmas Day |
| Independence Day | |

10.04   *There is no waiting period for new employees to receive holiday pay.*

*Regular part time employees receive pay for their regularly scheduled hours if they fall on a holiday.* **Personal attendants are exempt from this section.**

10.05   Staff who has been suspended is not eligible to receive holiday pay unless they return to work. Staff who is terminated due to the suspension reason will not be paid for holidays that fall during the suspension period.

## 11. OVERTIME

11.00   OVERTIME

11.01   Overtime must be approved in advance by the Executive Director and will be compensated on the basis of one and one half hours for each hour worked *in excess of 40 hours in one week or more than 8 hours per day and in accordance with applicable law if other than as set forth in this section.*

11.02   Overtime is compensated either by pay or compensatory time off (CTO). Staff may elect to receive CTO during the following election periods:

- Upon hire
- During the month of May

11.03   Your decision on compensation for overtime will be renewed on an annual basis, until such time that the agency opts to discontinue using CTO as a method of compensation for overtime, or upon notification to the supervisor.

11.04   Exempt staff are expected to adjust their hours according to their own work commitments, and are paid on a bi-monthly basis for total performance of their jobs.

11.05   The Personal Attendant pay code classification is compensated by pay only and is paid overtime in excess of 40 hours per week *and in accordance with applicable law if other than as set forth in this section.*

## 12. LEAVE

# EXHIBIT 6

♦ This request must come without manager instigation & before a manager has reasonable suspicion for an imminent drug screen.

♦ Maintain weekly contact with manager/supervisor.

♦ Provide certification of continuous enrollment and participation in a formal treatment program.

Rehabilitation leave is unpaid. However, a staff person may use personal convenience leave and/or vacation to which he or she is entitled for the purpose of entering or participating in an alcohol or drug rehabilitation program.

Upon successful completion of rehabilitation, the agency will attempt to accommodate the staff person and return them to active status without reduction of pay. Only one rehabilitation leave will be granted to a staff person for the duration of his/her employment.

Staff persons who have completed or are participating in drug rehabilitation programs may be subject to random, unannounced drug tests to ensure they are no longer using illegal drugs.

## 7. POLITICAL ACTIVITY

7.01    No staff, volunteer, Board or committee member shall promise rewards, threaten, or coerce any INALLIANCE staff person to support or refuse to support or to contribute to any political issue, candidate or party.

## 8. PUBLIC INFORMATION/RELATIONS

8.01    *Only the Executive Director is authorized to make statements to the media on behalf of INALLIANCE. Requests for information from the news media shall be directed to the Executive Director. All staff and board member appearances made in representation of INALLIANCE must be approved by the Executive Director.*

## 9. TELEPHONES AND VOICE MAIL

9.01    *The use of INALLIANCE's telephone system is limited to official INALLIANCE business. Employees are requested to keep all personal phone calls to a minimum. Friends and relatives should be discouraged from calling during working hours unless there is an emergency.*

*Under no circumstances should an employee make or charge a long distance call to INALLIANCE unless it is work-related.*

9.02    *Although employees are able to use codes to restrict access to phone messages that are left on the system, the phone system is intended solely for business use. In keeping with this intention, INALLIANCE reserves the right to monitor phone calls made on this system. It also reserves the right to access any messages left on or transmitted over the phone system. Because INALLIANCE reserves the right to obtain access to all voice mail messages left on or recorded on the system, employees should not assume that such messages are confidential or that access by INALLIANCE or its designated representative will not occur.*

9.10    Cellular Phone/Handheld Device usage:

9.11    Staff may not use their cellular/handheld devices while driving. Use of cellular/handheld device includes: making calls, receiving calls, texting, emailing, sending pictures, searching the internet or any other action associated with cellular/handheld device.

9.12    Cellular/handheld devices may be used during the business day for business purposes only. Staff should not use their cellular/handheld device during the business day to conduct personal business. If staff does not wish to utilize the cellular/handheld device for business purposes, the device should be turned off until the end of the business day.

9.13    Cellular/handheld devices may be utilized on approved staff lunch periods only. Cellular/handheld devices are prohibited during participant lunch periods.

5.  Contact a responsible person at INALLIANCE as soon as possible. Advise them of all pertinent information (nature of accident, location, injuries, etc.)

6.  Contact the police as soon as possible. If an ambulance is required, notify the dispatcher, and give exact location.

7.  Set out flares.

8.  If accident involves another vehicle, render whatever assistance you can to its occupants.

9.  Try to avoid moving your vehicle from the position it stopped in after impact, until the police inform you to move it. If the vehicle poses a danger, move it immediately to a safe position.

10. Admit no guilt. Answer only those questions asked by the police or ambulance attendants.

11. Obtain driver's license and insurance information from other driver's involved.

12. Assist the police in identifying potential witnesses to the accident. Be sure to write down the police report number, and report the information to INALLIANCE administration immediately.

## 17. TRAVEL REQUESTS AND EXPENSE REIMBURSEMENTS

### 17.00   TRAVEL REQUESTS

17.01   All staff who expect to travel out of town for INALLIANCE must submit a formal request for authorization of such travel at least two weeks in advance, unless lack of a timely notice from sponsoring agency or organization clearly prevents giving a two week advance notice.

17.02   Travel request forms are to be submitted to the staff person's immediate supervisor.

### 17.10   EXPENSE REIMBURSEMENTS

17.11   Reimbursement is limited to pre-approved actual business related expenses. *All expenses of $15.00 or more must be submitted within 45 days of incurring the expense. Expenses of less that $15.00 must be submitted within six months of incurring the expense. Reimbursements for expenses incurred will not be reimbursed outside of these guidelines.*

- Expenses of *$15.00 or less* may be reimbursed after management approval through the *petty cash account*. If the expense is related to Community Access, it will be reimbursed through the payroll account.   All expenses must be accompanied by an original receipt.

- Expenses of *more than $15.00* should be submitted through a *check request* approved by a manager unless it is a Community Access expense. All expenses must be accompanied by an original receipt.

17.12   MILEAGE

17.12.1   *Reimbursed @ $0.38 per mile.*  All staff authorized to use their own vehicles for official business purposes shall be reimbursed at a fixed mileage rate of $0.38 per mile.

17.12.2   *Due on the 5th by 5PM. Mileage reimbursement requests should be submitted to the employee's supervisor on a Mileage Tracking and*

*Reimbursement Claim or the department's approved reporting sheet by the fifth (5th) of each month for the previous month's expenses.*

17.12.3   ***Parking reimbursed:*** Mileage reimbursement requests should also include all related parking and pre-approved cellular telephone expenses. All expenses must be accompanied by a receipt. Parking expenses incurred at a parking meter must be noted on the Mileage Tracking and Reimbursement Claim in lieu of a receipt.

### *Traffic and/or parking violations are not reimbursable expenses.*

17.12.4   Mileage reimbursement checks will be paid to staff on or about the twentieth and twenty-fifth of each month. Staff who have not submitted a mileage reimbursement request to their supervisor by the fifth of the month for the previous month's expenses will not receive reimbursement until the next mileage reimbursement pay date. *Late mileage claims will be processed within 30 days of submittal.*

17.12.5   Staff who resign or are terminated from employment with INALLIANCE must submit mileage reimbursement requests within ten days of the last day of employment or forfeit all moneys due.

17.12.6   Mileage will be paid for all miles claimed within a 20-mile radius of the participants' work-place or home unless approved in advance by the Program Director.

Fraudulent mileage claims will be cause for disciplinary action up to and including termination.

## 18. POSITION OPENINGS AND PROMOTIONS

18.01   When INALLIANCE has a vacant position, first consideration shall be given to current INALLIANCE staff based on his/her qualifications for the position.

18.01.1   Positions are open for the following reasons:
- New job position
- Vacancy caused by:
  - retirement
  - resignation
  - termination
  - General disability leave
  - Death

18.02   INALLIANCE will post internally as well as externally for all available positions. Internally, open positions are posted in the Human Resources department, www.inallianceinc.com and each department will receive notice each time a position opens. Externally, open positions may be posted on job boards, websites, and newspapers.

18.03   New Hire/Probationary employees must remain in the position for which they were hired, for no less than 6 months, unless otherwise directed by management.

# EXHIBIT 7

011019-04

Law Offices of
**MATHENY SEARS LINKERT & JAIME, LLP**
MATTHEW C. JAIME (SBN 140340)
ROBERT W. SWEETIN (SBN 297130)
3638 American River Drive
Sacramento, California 95864
Telephone:     (916) 978-3434
Facsimile:     (916) 978-3430

Attorneys for Defendant, NORTHERN
CALIFORNIA INALLIANCE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH OSEGUEDA, individually and on behalf of all similarly situated and/or aggrieved employees of Defendants in the State of California, <br><br> Plaintiff, <br><br> v. <br><br> NORTHERN CALIFORNIA INALLIANCE; and DOES 1 THROUGH 50, inclusive, <br><br> Defendant. | Case No. 2:18-cv-00835-WBS-EFB <br><br> **NORTHERN CALIFORNIA INALLIANCE'S RESPONSES TO INTERROGATORIES, SET ONE** |

**PROPOUNDING PARTY:** Plaintiff Joseph Osegueda

**RESPONDING PARTY:**     Defendant, Northern California InAlliance

**SET NO.:**                        One

Northern California InAlliance responds to Plaintiff's Interrogatories as follows.  This responding party and its counsel have not completed their discovery or preparation for trial nor have they completed their analysis and review of the investigation and other trial preparation matters and subjects obtained or conducted to date.  These responses therefore state the present information and analysis of the responding party and its counsel as acquired and reviewed to date without prejudice to this responding party's right to present additional facts, contentions or theories

1

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME, LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

1   at trial based upon information, evidence or analysis hereafter obtained or evaluated.   The

2   following responses state the information, facts, evidence and contentions known to and evaluated

3   by this responding party and her counsel.   This responding party provides the following responses

4   without prejudice to further discovery and specifically reserves the right to present subsequently

5   discovered evidence at trial of this action.

6   Each of the following responses and answers is rendered and based upon information in

7   the possession of the responding party at the time of the preparation of these answers after diligent

8   inquiry.   Discovery will continue as long as permitted by statute or stipulation of the parties and

9   the investigation of this responding party's attorneys and agents will continue to and throughout

10   the trial of this action.   This responding party therefore specifically reserves the right at the time

11   of trial to introduce any evidence from any source which may hereafter be discovered and

12   testimony from any witnesses whose identities may hereafter be discovered.

13   If any information has unintentionally been omitted from these responses, the interrogated

14   party reserves the right to apply for relief so as to permit the insertion of the omitted data from

15   these responses.   This responding party has made every effort to obtain documentation necessary

16   to respond to these requests.   These introductory comments shall apply to each and every answer

17   given herein and shall be incorporated by reference as though fully set forth in all of the responses

18   appearing on the following pages.   Finally, as some of these responses may have been ascertained

19   by this responding party's attorneys and investigators, this responding party may not have personal

20   knowledge of the information from which these responses are derived.

21   To the extent that any of these requests call for responses which are protected by the

22   attorney/client and/or attorney work product privileges, this responding party objects to said

23   requests on that basis.

24   To the extent that any of these requests call for responses which are of a confidential and

25   proprietary nature as protected by the United States Constitution and/or the California

26   Constitution, this responding party objects to said requests on that basis.

27   To the extent that any of the requests call for responses which are protected by any

28   additional privileges, this responding party objects to the answering of said requests on that basis.

2

**RESPONSE TO SPECIAL INTERROGATORIES**

**INTERROGATORY NO. 1**

State the name and dates of use for all timekeeping systems used by YOU during the CLASS PERIOD to record all hours worked by CLASS MEMBERS, including, but not limited to, any time-keeping systems used to record the beginning and ending of work periods, the length of each meal period, and total daily hours worked.

**RESPONSE TO INTERROGATORY NO. 1**

Objection.  This interrogatory is vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving these objections, Northern California InAlliance responds as follows: employees handwrite their time sheets in recording hours worked.

**INTERROGATORY NO. 2**

Explain the method by which YOU provided written notice of paid sick leave available to CLASS MEMBERS during the CLASS PERIOD.

**RESPONSE TO INTERROGATORY NO. 2**

Objection.  This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving these objections, Northern California InAlliance responds as follows: its employee handbook and the supported living services manual contain information regarding available paid sick leave.  Other written materials may also provide information to employees regarding available paid sick leave.  Accrual and use of paid sick leave are notated on the employee's paystub.  Discovery is continuing and Northern California InAlliance reserves the right to introduce and use such evidence as may be discovered.

**INTERROGATORY NO. 3**

State the total number of CLASS MEMBERS.

**RESPONSE TO INTERROGATORY NO. 3**

Objection.  This interrogatory is vague, ambiguous, overbroad, and unduly burdensome, lacks foundation, and calls for an abstract, audit, or summary of documents for which the burden or expense of preparing would be substantially the same for Plaintiff as for Defendant.  Under

3

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME, LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

1  California Code of Civil Procedure section 2030.230, Defendant refers you to the document

2  production provided in response to Plaintiff's Request for Production of Documents, Set One,

3  specifically the timesheets produced in response to the requests, for information responsive to this

4  interrogatory.  Northern California InAlliance disputes that a "class" exists and contends that its

5  employees were appropriately compensated pursuant to applicable California Wage Orders and

6  federal regulations.  Without waiving these objections, and for informational purposes only,

7  Northern California InAlliance estimates it has employed approximately 350 employees as

8  Independent Living Facilitators between 2015 and 2018.  Discovery is continuing and Northern

9  California InAlliance reserves the right to introduce and use such evidence as may be discovered.

10  **INTERROGATORY NO. 4**

11      State the total number of MEAL BREAK SUBCLASS MEMBERS.

12  **RESPONSE TO INTERROGATORY NO. 4**

13      Objection.  This interrogatory is vague, ambiguous, overbroad, and unduly burdensome,

14  lacks foundation, and calls for an abstract, audit, or summary of documents for which the burden

15  or expense of preparing would be substantially the same for Plaintiff as for Defendant.  Under

16  California Code of Civil Procedure section 2030.230, Defendant refers you to the document

17  production provided in response to Plaintiff's Request for Production of Documents, Set One,

18  specifically the timesheets produced in response to the requests, for information responsive to this

19  interrogatory.  Northern California InAlliance disputes that a "class" exists and contends that its

20  employees were appropriately compensated pursuant to applicable California Wage Orders and

21  federal regulations.  Without waiving these objections, and for informational purposes only,

22  Northern California InAlliance estimates it has employed approximately 350 employees as

23  Independent Living Facilitators between 2015 and 2018.  Discovery is continuing and Northern

24  California InAlliance reserves the right to introduce and use such evidence as may be discovered.

25  **INTERROGATORY NO. 5**

26      State the total number of REST BREAK SUBCLASS MEMBERS.

27  **RESPONSE TO INTERROGATORY NO. 5**

28      Objection.  This interrogatory is vague, ambiguous, overbroad, and unduly burdensome,

4

Dated:  January 7, 2019

MATHENY SEARS LINKERT & JAIME LLP

By: _____
MATTHEW C. JAIME
ROBERT W. SWEETIN
Attorneys for Defendant NORTHERN
CALIFORNIA INALLIANCE

*NORTHERN CALIFORNIA INALLIANCE'S RESPONSES TO INTERROGATORIES, SET ONE*

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

## VERIFICATION

I am a party to the above-entitled proceeding.   The matters contained in the foregoing document entitled **RESPONSE TO INTERROGATORIES, SET ONE** are true of my own knowledge, except as to the matters therein stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury, according to the laws of the State of California, that the foregoing is true and correct.

Executed this 10th day of January, 2019 at Sacramento (city), CA (state).

_Michele McGee_
Michele McGee

*Osegueda v. Northern California InAlliance*
*Case No. 2:18-cv-00835-WBS-EFB*