GRAHAM**HOLLIS** APC
Graham S.P. Hollis (SBN 120577)
ghollis@grahamhollis.com
Vilmarie Cordero (SBN 268860)
vcordero@grahamhollis.com
Erik A. Dos Santos (SBN 309998)
edossantos@grahamhollis.com
3555 Fifth Avenue, Suite 200
San Diego, California 92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiff Joseph Osegueda and
Aggrieved Employees

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH OSEGUEDA, individually and on behalf of all similarly situated and/or aggrieved employees of Defendants in the State of California,<br><br>Plaintiff,<br><br>v.<br><br>NORTHERN CALIFORNIA INALLIANCE; and DOES 1 THROUGH 50, inclusive,<br><br>Defendants. | Case No.:   18-cv-00835-WBS-EFB<br><br>**DECLARATION OF JOSEPH OSEGUEDA IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      December 16, 2019<br>Time:     1:30 PM<br>Judge:    Hon. William B. Shubb<br>Dept.:     5, 14th Floor |

I, Joseph Osegueda, declare as follows:

1. I am over eighteen years of age and am a resident of Sacramento, California. I am the Plaintiff in the above-captioned action.

2. I make this declaration based upon my personal knowledge. I could and would competently testify as to the facts set forth herein if called upon to do so.

3. I was employed by Northern California Inalliance ("InAlliance") in California from June 2017 through September 2017.

4. I worked as an Independent Living Facilitator and I was classified as a non-exempt employee for the purposes of California's wage and hour laws.

1
**DECLARATION OF JOSEPH OSEGUEDA IN SUPPORT OF PLAINTIFF'S MOTINO FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

5. InAlliance is a nonprofit organization that supports people with developmental disabilities. InAlliance provides supported living services, independent living services, community training, job training-work crews, supported employment, community job placement, and transportation to adults with developmental disabilities, which InAlliance calls "participants."

6. As an Independent Living Facilitator, I worked with two participants. I was responsible for supervising the participant while I was at the participant's residence. I would help the participants get in and out of bed, bathe, dress, and brush their teeth. I was responsible for assisting with bowel and bladder care, bringing the participants to their doctor appointments, and dispensing their medication. I helped with grocery shopping and cooking meals. I was also responsible for cleaning and tidying up the participant's apartment, including doing laundry, doing dishes, mopping, vacuuming, emptying the trash, and checking mail. I would also provide companionship. I did not have the authority to hire or fire employees and I was required to follow InAlliance guidelines in performing my work.

7. As a non-exempt Independent Living Facilitator, I believe I was not paid all my wages. I was required to review my supervisor's texts messages as part of my duties and job responsibilities, but I was not paid for this time.

8. I typically worked a shift of twenty-four hours once a week. I was not paid for "sleep time" during my shifts of twenty-four hours or longer.

9. As a non-exempt Independent Living Facilitator, I was not always paid overtime wages for times I worked more than nine hours per day. I often worked more than nine hours in a day. I also believe InAlliance did not pay me at the correct overtime wage rate when I worked these overtime hours.

10. InAlliance also did not include my overtime hours on my wage statements or paystubs. I found these wage statements hard to understand, and I was not able to determine how I was being paid.

11. As a non-exempt Independent Living Facilitator, I was required to use my personal cell phone to report to my supervisors and communicate with my supervisors about my work schedules and duties. InAlliance did not reimburse me for requiring the use of my personal cell phone as part of my job responsibilities.

12. On September 2017, I decided to pursue wage and hour claims against InAlliance. I met with my attorneys and explained to them my work experience. At the time I met with my attorneys, I

**DECLARATION OF JOSEPH OSEGUEDA IN SUPPORT OF PLAINTIFF'S MOTINO FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

believed other non-exempt employees were also affected by the wage and hour violations that I claimed against InAlliance.

13.     At that time, I also realized I was taking a significant amount of risk in filing class action claims against InAlliance. I understood that as a named plaintiff in this class action lawsuit I was taking risks other workers were not. For example, I understood I might be responsible for the payment of InAlliance's court-awarded litigation costs in the event I did not prevail in the litigation.

14.     I also knew that when I decided to search for employment outside of working for InAlliance, my name could easily be located on the Internet or through other searches and that any prospective employer may find out that I had sued my former employer as a class representative.

15.     Even though I knew I was taking risks, I knew I had to do what I believed was right and pursue claims on behalf of myself and other workers and attempt to recover the wages and moneys owed to us.

16.     Since I first met with my attorneys in September 2017 until now, and for over 2 years, I have kept up with and remained aware of the status of the lawsuit and provided my attorneys with documents and information used by them in the litigation.  I have spent significant time and effort pursuing my claims and the claims of the other workers from the time I retained my attorneys to the present date.

17.      After retaining my attorneys, I spent hours in meetings and on the phone discussing the facts of my case with my attorneys Vilmarie Cordero, Graham Hollis, and Nicole Roysdon.  I spent several hours discussing the facts related to my work with InAlliance, including discussing my job duties and responsibilities, my job position, and the hours and days I worked, and how I was compensated.

18.      I also spent several hours looking for documents related to my claims against InAlliance that I had kept and sent them to my attorneys.  I further spent time on telephone calls with Ms. Roysdon reviewing and discussing the documents I provided.

19.     After InAlliance produced a copy of my employment file, I had various telephone conferences with my attorneys to discuss the content of these documents and review them for accuracy.  I also spent time reviewing all the documents I signed during my employment at InAlliance.

20.      In approximately November 2017, and prior to the filing of the lawsuit, I spent time with my attorneys reviewing my claim letter to the Labor and Workforce Development Agency, which

3
**DECLARATION OF JOSEPH OSEGUEDA IN SUPPORT OF PLAINTIFF'S MOTINO FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

contained a summary of my claims. I also spent time reviewing the class action lawsuit prior to my attorneys filing it.

21. I consulted with my attorneys about the various violations of wage and hour laws that I endured, and, after much thought, I decided I would move forward with a class action rather than simply seek resolution of my individual claims.

22. I understood that there were risks due to my involvement as a named plaintiff in a class action lawsuit against. Even with understanding all these risks, I was willing to move forward and bring this case on behalf of the other employees that I believed were not paid all of their wages.

23. I authorized the filing of the class action and representative action lawsuit against InAlliance on February 2, 2018 in Sacramento County Superior Court. Since that time, I have served as the only named plaintiff in the case.

24. I understood that as the named Plaintiff a lot of work would be required of me and I was willing to perform that work in order to assist my attorneys in bringing this lawsuit.

25. I spent many hours being interviewed by my attorneys regarding the various aspects of my work for InAlliance. I worked with them to assist them in formulating questions to be asked to InAlliance and helped my attorneys know which documents to ask to be produced. After my attorneys obtained documents from InAlliance, I worked with them to explain the various terminology and to better understand the policies and practices of InAlliance both as written and in practice.

26. I also provided my attorneys with the names of people who they could interview to get more information.

27. My attorneys informed me that InAlliance agreed to participate in mediation to resolve this case. I believed it was in the best interest to attempt to resolve this case early instead of engaging in additional costly and time-consuming litigation in court. I agreed to participate in a mediation session and spent many hours discussing the details of the case with my attorneys in preparation for the mediation, which was scheduled for July 31, 2019.

28. As part of the mediation preparation, I once again reviewed documents InAlliance gave to my attorneys and provided them with details of my personal experience working with InAlliance.

29. On July 31, 2019, I was available over the phone for the full-day mediation session.

30. The mediation was successful and I believe the amount being paid is a fair resolution of the case especially as I understood the time and risks involved if I had to proceed to trial.

31. In November 2019, my attorneys explained to me the content of the settlement agreement, and I had an opportunity to review it. I spent significant time discussing and reviewing the settlement agreement with my attorney before signing it.

32. On November 2019, I signed the Joint Stipulation of Settlement and Release to settle my class and PAGA claims against InAlliance.

33. It is my opinion that the proposed class action settlement achieved is fair, adequate and reasonable.

34. I have no conflicts of interest with other current or former non-exempt employees represented in this case.

35. I estimate I have spent over 60 hours working with my lawyers for over two years, performing the various tasks described in this declaration, including locating and identifying key witnesses in the case, helping my attorneys prepare for mediation, and reviewing the class action settlement agreement, not only for my own benefit but for the benefit of all other class members.

36. To this date, I continue to regularly communicate with my attorneys about the progress of the case.

37. I am requesting the Court approve a $5,000 service award. I believe this amount is very reasonable considering the significant amount of work, time and effort I have spent with my attorneys to achieve this settlement. The time and service I provided to the class resulted in the parties agreeing to settle the case and in a positive outcome to the entire class, who will receive a share of the settlement funds in this case. I also believe the amount of the class representative service award is very reasonable considering the financial and professional risks I took by bringing a class action lawsuit against my former employer, particularly in the tough job economy, and the risk of not prevailing in the lawsuit and being responsible for the payment of costs to InAlliance.

38. I also agreed as part of the settlement to provide InAlliance with a complete release of every possible claim against them rather than simply the release for wage and hour claims alleged in the

5
**DECLARATION OF JOSEPH OSEGUEDA IN SUPPORT OF PLAINTIFF'S MOTINO FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

complaint. I agreed to this additional release if it meant that the case could be resolved favorably.

39. I have been extremely pleased with my attorneys' work on this case. I found that they worked effectively to attain the excellent results achieved for the benefit of all class members.

40. I am committed to this case and will continue to make myself available as needed in the settlement process.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 23 day of November, 2019, at Sacramento, California.

By: _____
JOSEPH OSEGUEDA

GRAHAMHOLLIS APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

6
**DECLARATION OF JOSEPH OSEGUEDA IN SUPPORT OF PLAINTIFF'S MOTINO FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**