| | |
|---|---|
| JOSEPH OSEGUEDA, individually and on behalf of all similarly situated and/or aggrieved employees of Defendants in the State of California, | No. 18-cv-00835 WBS EFB |
| Plaintiff, | MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| v. | |
| NORTHERN CALIFORNIA INALLIANCE; and DOES 1 through 50, inclusive, | |
| Defendants. | |

----oo0oo----

Plaintiff Joseph Osegueda, individually and on behalf of all other similarly situated employees, brought this putative class action against Defendant Northern California InAlliance alleging violations of state and federal wage and hour laws. (First Am. Compl. ("FAC") (Docket No. 14).) Before the court is plaintiff's unopposed motion for preliminary approval of a class action settlement reached by the parties. (Mot. for Prelim.

1  Approval (Docket No. 23).)

2  I.   <u>Factual and Procedural Background</u>

3         Defendant InAlliance is a non-for-profit that provides

4  independent living services to adults with developmental

5  disabilities.  (Decl. of Joseph Osegueda ("Osegueda Decl.") ¶ 5

6  (Docket No. 23-3); Decl. of Graham Hollis ("Hollis Decl.") ¶ 17

7  (Docket No. 23-2).)  These services enable participants to live

8  independently in their own home, instead of living with family or

9  in communal housing.  (Osegueda Decl. ¶ 5.)  Plaintiff worked for

10  InAlliance as an Independent Living Facilitator ("Living

11  Facilitator") in Sacramento and Yolo County in 2017.  (Osegueda

12  Decl. ¶ 3-4.)

13         As a Living Facilitator, plaintiff assisted

14  participants with personal care and tasks around the home.

15  (Osegueda Decl. ¶ 6.)  InAlliance classified plaintiff and other

16  Living Facilitators as "personal attendants" and did not pay them

17  for daily overtime.  (Osegueda Decl. ¶ 4; Hollis Decl. ¶ 130.)

18  InAlliance also allegedly required Living Facilitators to use

19  their personal cell phones to communicate with their supervisors

20  and did not pay Living Facilitators for "sleep time" during

21  shifts of twenty-four hours or longer.  (Osegueda Decl. ¶¶ 8,

22  11.)  Plaintiff brought this action against defendant, alleging:

23  (1) failure to pay minimum and regular wages; (2) failure to pay

24  overtime wages; (3) failure to indemnify necessary business

25  expenses; (4) failure to provide accurate itemized wage

26  statements; (5) failure to timely pay all ages due upon

27  separation of employment; (6) violation of California's Business

28  and Professions Code, Cal. § 17200, <u>et seq.</u>; (7) violation of

2

California's Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698, <u>et seq.</u>; and (8) violation of the Fair labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 211(c), 216(b). (FAC ¶¶ 67-158.)

Defendant removed the action to this court in April 2018 (Docket No. 1) and denied any liability or wrongdoing of any kind. (<u>See generally</u> Def.'s Answer (Docket No. 16).) After exchanging initial disclosures and completing an independent investigation, the parties participated in a private mediation and eventually reached a settlement agreement. (Memo. Supp. Prelim. Approval (Docket No. 23-1) at 5.)

Under the terms of the agreement, InAlliance will pay a non-reversionary sum of $225,000. (Joint Stipulation of Settlement ("Settlement Agreement") ¶ 1.19 (Docket No. 23-2, Ex. 1).) The total settlement amount would be distributed as follows: (1) a maximum of $75,000 to class counsel for attorney's fees; (2) a maximum of $9,000 to class counsel for reimbursement of out-of-pocket expenses; (3) an award of $5,000 to plaintiff for serving as the class representative; (4) $11,250 to the California Labor & Workforce Development Agency ("LWDA") to cover the cost of penalties, with 75 percent of the award going to LWDA and the remaining 25 percent to the PAGA Aggrieved Employees[1]; (5) a maximum of $10,500 to the settlement administrator, ILYM Group, Inc., ("ILYM Group") for reimbursement of settlement

---

[1] "PAGA Aggrieved Employees" is defined as "all current and former employees of [d]efendant in the State of California in the position of Independent Living Facilitator ("ILF") during the PAGA Period." (Settlement Agreement ¶ 1.25.) The "PAGA Period" is confined from February 22, 2017 through January 15, 2020. (Settlement Agreement ¶ 1.26.)

administration costs; and (7) the remaining amount, approximately $122,526.50 ("class fund") to the participating class members. (Memo. Supp. Prelim. Approval at 6.)

The parties now seek the court's preliminary approval of the proposed settlement agreement.

## II.  Discussion

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "To vindicate the settlement of such serious claims, however, judges have the responsibility of ensuring fairness to all members of the class presented for certification." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). "Where [] the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Roes, 1-2 v. SFBSC Mgmt., LLC, --- F.3d ---, 2019 WL 6721190, at *10 (9th Cir. 2019).

The approval of a class action settlement takes place in two stages.  In the first stage, "the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class." Ontiveros v. Zamora, No. 2:08-567 WBS DAD, 2014 WL 3057506, at *2 (E.D. Cal. July 7, 2014).  In the second, the court will entertain class members' objections to (1) treating the litigation as a class action and/or (2) the terms of the settlement agreement at the fairness hearing.  Id.  The court will then reach a final determination as to whether the parties

4

should be allowed to settle the class action following the fairness hearing.  _Id._  Consequently, this order "will only determine whether the proposed class action settlement deserves preliminary approval and lay the ground work for a future fairness hearing."  _See_ _id._ (citations omitted).

A.    Class Certification

To be certified, the putative class must satisfy both the requirements of Federal rule of Civil Procedure 23(a) and (b).  _Leyva v. Medline Indus. Inc._, 716 F.3d 510, 512 (9th Cir. 2013).  Each will be discussed in turn.

1.    Rule 23(a)

In order to certify a class, Rule 23(a)'s four threshold requirements must be met: numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).  "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied."  _Wang v. Chinese Daily News, Inc._, 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting _Wal-Mart Stores, Inc. v. Dukes_, 564 U.S. 338, 351 (2011)).

i.    Numerosity

While Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), it does not require "a strict numerical cut-off."  _McCurley v. Royal Seas Cruises, Inc._, 331 F.R.D. 142, 167 (S.D. Cal. 2019) (Bashant, J.) (citations omitted).  Generally, "the numerosity factor is satisfied if the class compromises 40 or more members."  _Id._ (quoting _Celano v. Marriott Int'l, Inc._, 242 F.R.D. 544, 549 (N.D. Cal. 2007).)  Here, defendant has

already identified over 350 potential class members that worked for InAlliance from 2015 to 2018.  (Hollis Decl. ¶ 128.) Accordingly, the numerosity element is satisfied.

ii.  Commonality

Next, Rule 23(a) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is satisfied when there is a "common contention . . . of such a nature that it is capable of classwide resolution-- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart Stores, 564 U.S. at 350. "Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution.  So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."  Wang, 737 F.3d at 544 (citing Wal-Mart Stores, 564 U.S. at 350).

Here, the "class" is defined as members of the Independent Living Facilitator Class and the Waiting Time Penalties Subclass.  (Settlement Agreement ¶ 1.1.)  "Independent Living Facilitator Class Member" means "all current or former employees of InAlliance who worked in the State of California in the position of Independent Living Facilitator ("ILF") at any time from February 22, 2014 through the Preliminary Approval Date."  (Id. ¶ 1.16.)  Additionally, members of the "Waiting Time Penalties Subclass" includes "any members of the Independent Living Facilitator Class whose employment ended, according to InAlliance records, between February 22, 2015 and the Preliminary

Approval Date and who does not timely opt-out of the Settlement Class." (Id. ¶ 1.42.)

Plaintiff contends that each class member was subjected to the same overtime policy that resulted in their underpayment and each class member was not informed that they were entitled to reimbursement for the work-related use of their cell phones. (Hollis Decl. ¶¶ 18-23.) Generally, "the fact that an employee challenges a policy common to the class as a whole creates a common question whose answer is apt to drive the resolution of the litigation." Ontiveros, 2014 WL 3057506, at *5. While calculations of wages due might vary based on the individual,[2] "the presence of individual damages cannot, by itself, defeat class certification." Leyva, 716 F.3d at 514 (quoting Wal-Mart Stores, 564 U.S. at 362). Here, the claims implicate common questions of law and fact because they are premised on a common policy. Additionally, the claims can be substantiated by examining common methods of proof, which weighs in favor of finding commonality. See Ontiveros, 2014 WL 3057506, at *6 (collecting cases). Accordingly, the putative class satisfies the commonality requirement.

### iii. Typicality

Rule 23(a) further requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The test

---

[2] Class members shall receive a pro-rata portion of the class fund based upon their number of qualifying work weeks. (Settlement Agreement ¶ 2.3.4.) The Waiting Time Penalties Subclass participants will receive an allotment of six additional qualifying work weeks. (Id.)

7

for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." <u>Sali v. Corona Reg'l Medical Ctr.</u>, 909 F.3d 996, 1006 (9th Cir. 2018) (quoting <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992)).

As discussed above, all of the Living Facilitators were classified as non-exempt and all allegedly suffered the same or similar overtime violations and failures to reimburse for their business expenses. (Osegueda Decl. ¶ 4; Hollis Decl. ¶¶ 18-23.) Similarly, plaintiff's waiting time penalties claim is typical of the Waiting Time Penalties Subclass because they are derivative of the same alleged failure to properly pay for all overtime hours worked. (<u>See</u> FAC ¶¶ 103-110.) Furthermore, the claims of plaintiff and the putative class are based on identical legal theories. (<u>See</u> <u>generally</u> FAC.) Accordingly, plaintiff's claims appear to be reasonably coextensive with those of the proposed class, and Rule 23(a)'s typicality requirement is satisfied.

### iv. Adequacy of Representation

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent" as well as the "competency and conflicts of class counsel." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 625, 626 n.20 (1997). The court must consider two factors: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named

8

plaintiffs and their counsel will vigorously prosecute the action on behalf of the class.  In re Hyundai and Kai Fuel Economy Litig., 926 F.3d 539, 566 (9th Cir. 2019) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).

a.   Conflicts of Interest

The first portion of the adequacy inquiry considers whether plaintiff's interests are aligned with those of the class.  "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  Amchem, 521 U.S. at 625-26 (internal modifications omitted).

In most respects, the named plaintiff's interests appear to be aligned with those of the class for the reasons set forth above.  (See generally FAC; Hollis Decl. ¶ 132 (noting claims are based on identical legal theories).)  Despite the many similarities, plaintiff alone stands to benefit for his participation in this litigation by receiving an incentive award of $5,000.  (Settlement Agreement ¶¶ 2.5.1-2.5.3.)  While both plaintiff and class counsel have certified that they are unaware of any conflicts of interest between him and the class, (Hollis Decl. ¶¶ 125, 133; Osegueda Decl. ¶ 34), the use of an incentive award raises the possibility that a plaintiff's interest in receiving that award will cause his interests to diverge from the class's in a fair settlement.  Staton, 327 F.3d at 977-78.  Consequently, the court must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives."  Radcliffe v. Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).

The parties estimate that if all of the 375 estimated class members participate in the class action, the average recovery per class member will be approximately $328.06. (Hollis Decl. ¶ 80.) Plaintiff's award of $5,000 represents considerably more. However, plaintiff, like similar named plaintiffs in other cases, has spent significant amounts of time and subjected himself to reputational risk to act as the named plaintiff in this case. (Osegueda Decl. ¶¶ 17-25; Hollis Decl. ¶ 124.) Indeed, the Ninth Circuit has consistently recognized incentive awards are "fairly typical" way to "compensate class representatives for work done on behalf of the class" or "to make up for financial or reputational risk undertaken in bringing the action." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009). Furthermore, many courts in the Ninth Circuit have held that a $5,000 incentive award is "presumptively reasonable." Hawthorne v. Umpqua Bank, No. 11-cv-06700-JST, 2015 WL 1927342, at *8 (N.D. Cal. Apr. 28, 2015) (citations omitted).

Here, the $5,000 incentive payment represents .45 percent of the total settlement amount. The Ninth Circuit has approved incentive awards of this amount under similar, if not more extreme, circumstances. See In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 947-48 (9th Cir. 2015) (finding district court did not abuse its discretion by awarding nine class representatives $5,000 each when class members stood to recover $12 each). Accordingly, the $5,000 incentive award in this case does not appear to create a conflict of interest, although the court emphasizes this finding is only a preliminary determination. On or before the date of the final fairness

hearing, the parties should present or be prepared to present further evidence of plaintiff's substantial efforts taken as a class representative to better justify the discrepancy between this award and those of the unnamed class members.

### b. Vigorous Prosecution

The second portion of the adequacy inquiry examines the vigor with which the named plaintiff and his counsel have pursued the class's claims. "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." Hanlon, 150 F.3d at 1021.

Here, class counsel states they are experienced employment and class action litigators who are fully qualified to pursue the interests of the class. (Hollis Decl. ¶¶ 7-11.) Over the past ten years, class counsel has settled over seventy class action lawsuits in state and federal courts. (Hollis Decl. ¶ 8.) Both parties represent that the settlement is a product of "an 'arms' length,' full-day mediation . . . which occurred after an exchange of discovery and an extensive investigation of the claims." (Settlement Agreement at V.) Counsel has certified that they have invested a significant amount of time, money, and resources into reaching this compromise. (Hollis Decl. ¶¶ 113-118.) In counsel's informed opinion, the settlement is "fair, reasonable, and adequate, and in the best interest of the [c]lass." (Hollis Decl. ¶ 135.)

Additionally, counsel has explained that defendant's non-for-profit status places it in a "precarious financial

situation" that makes settlement preferable.  (Hollis Decl. ¶
101.)  Defendant receives most of its income from grants and
federal programs.  (Hollis Decl. ¶ 63.)  By settling, InAlliance
can avoid bankruptcy and the class can safeguard its recovery.
(Hollis Decl. ¶¶ 101-102.)  Accordingly, the court finds that
plaintiff and plaintiff's counsel are adequate representatives of
the class.

### 2.  Rule 23(b)

After fulfilling the threshold requirements of Rule
23(a), the proposed class must satisfy the requirements of one of
the three subdivisions of Rule 23(b).  Leyva, 716 F.3d at 512.
Plaintiff seeks provisional certification under Rule 23(b)(3),
which provides that a class action may be maintained only if "the
court finds that questions of law or fact common to class members
predominate over questions affecting only individual members" and
"that a class action is superior to other available methods for
fairly and efficiently adjudicating the controversy."  Fed. R.
Civ. P. 23(b)(3).  The test of Rule 23(b)(3) is "far more
demanding," than that of Rule 23(a).  Wolin v. Jaguar Land Rover
N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting Amchem,
521 U.S. at 623-24).

### i.  Predominance

"The predominance analysis under Rule 23(b)(3) focuses
on 'the relationship between the common and individual issues' in
the case and 'tests whether proposed classes are sufficiently
cohesive to warrant adjudication by representation.'"  Wang, 737
F.3d at 545 (quoting Hanlon, 150 F.3d at 1022).  However,
plaintiff is not required to prove that the predominating

question will be answered in his favor at the class certification stage. Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 468 (2013).

For the reasons set forth above, plaintiff's individual claims and the class members' claims rely upon common question of law and fact. For example, all class members were classified as personal attendants and covered under the same overtime policy. (Hollis Decl., Ex. 5.) This policy serves as the common fact uniting plaintiff's individual claims and the class claims. (See generally FAC.)

Common questions of law include, inter alia, whether class members are entitled to overtime pay for hours worked after the ninth hour of work under California's Domestic Worker Bill of Rights; whether defendant's common written overtime policy results in liability for overtime hours worked after the ninth hour of work; and whether class members are entitled to reimbursement of their cell phone expenses for their use of their cell phone for work related purposes. (Hollis Decl. ¶¶ 18-23; 129-132.) The class claim thus demonstrates a "common nucleus of facts and potential legal remedies" that can properly be resolved in a single adjudication. See Hanlon, 150 F.3d at 1022. Accordingly, the court finds common questions of law and fact predominate over questions affecting only individual class members.

ii. Superiority

Rule 23(b)(3) sets forth four non-exhaustive factors that courts should consider when examining whether "a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). They are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Id. Factors (C) and (D) are inapplicable because the parties settled this action before class certification. See Syed v. M-I LLC, No. 1:14-cv-00742 WBS BAM, 2019 WL 1130469, at *6 (E.D. Cal. Mar. 12, 2019) (citation omitted). Therefore, the court will focus primarily on facts (A) and (B).

Rule 23(b)(3) is concerned with the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Amchem, 521 U.S. at 617. When class members' individual recovery is relatively modest, the class members' interests generally favors certification. Zinser v. Accufix Res. Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001). Here, the parties estimate that if all of the 375 estimated class members participate in the class action, the average recovery per class member will be approximately $328.06. (Hollis Decl. ¶ 80.) The modest amount of recovery would likely discourage putative class members from pursuing direct individual lawsuits on their own. Accordingly, this factor favors certification.

Factor (B), concerning the "extent and nature of the litigation," is "intended to serve the purpose of assuring

14

judicial economy and reducing the possibility of multiple lawsuits." Zinser, 253 F.3d at 1191 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780 at 568-70 (2d ed. 1986)). Here, plaintiff's counsel is not aware of any other related litigation (Hollis Decl. ¶ 6), nor do defendants assert any concerns about related litigation. This factor, too, favors certification. Accordingly, it appears a class action is the superior means to resolve the common questions of law and fact that predominate here.

### 3. Rule 23(c)(2) Notice Requirements

If the court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Actual notice is not required, but the notice provided must be "reasonably certain to inform the absent members of the plaintiff class." Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

The parties have jointly selected ILYM Group, to serve as the Settlement Administrator. (Settlement Agreement ¶ 1.37.) The defendants will provide the ILYM Group with the information necessary to contact members of the class within 10 business days of the order granting preliminary approval. (Id. ¶ 4.1.) All class members will be notified of the suit by first class mail within fourteen business days following the receipt of the class information. (Id. ¶ 4.4.) The notice summarizes the lawsuit, including the contentions and denials of the parties, the

15

proceedings to date, and the terms and conditions of the settlement. (Id. ¶¶ 4.4-4.6; Hollis Decl., Ex. 2.)  It will inform class members of where and how to get additional information, and it will inform them of their right to object to the adequacy of the class representatives and settlement. (Settlement Agreement ¶ 4.6, Hollis Decl., Ex. 2.)  Additionally, it will notify class members of the procedure to request exclusion from the class and how to opt in to the FLSA action. (Settlement Agreement ¶¶ 4.7-4.9; Hollis Decl., Ex. 2.)  ILYM Group will update the parties' counsel with weekly reports reflecting the attempts to contact the class members, the number of requests for exclusion, and the number of objections to the class submitted, if any.  (Settlement Agreement ¶ 4.13.)

        The system set forth in the Settlement Agreement is reasonably calculated to provide notice to class members and inform class members of their options under the agreement. Accordingly, the manner of notice and the content of notice is sufficient to satisfy Rule 23(c)(2)(B).  See Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'").

    B.    Rule 23(e): Fairness, Adequacy, and Reasonableness of Proposed Settlement

        Because the proposed class preliminarily satisfies the requirements of Rule 23, the court must consider whether the terms of the parties' settlement appear fair, adequate, and reasonable.  See Fed. R. Civ. P. 23(e)(2).  To determine the

16

fairness, adequacy, and reasonableness of the agreement, the
court must consider "a number of factors," including:

> Strength of the plaintiff's case; the risk, expense,
> complexity, and likely duration of further litigation;
> the risk of maintaining class action status throughout
> the trial; the amount offered in settlement; the
> extent of discovery completed and the stage of the
> proceedings; the experience and views of counsel; the
> presence of a governmental participant; and the
> reaction of the class members to the proposed
> settlement.

Hanlon, 150 F.3d at 1026. Many of these factors cannot be
considered until the final fairness hearing; accordingly, the
court's review will be confined to resolving any "'glaring
deficiencies' in the settlement agreement." Syed, 2019 WL
1130469, at *7 (citations omitted).

### 1. Negotiation of the Settlement Agreement

Counsel for both sides appear to have diligently
pursued settlement after thoughtfully considering the strength of
their arguments and potential defenses. (Memo. Supp. Prelim.
Approval at 15; Hollis Decl. ¶¶ 33-34.) Parties employed David
L. Perrault, a mediator well-versed in wage and hour class action
matters, to aid in the settlement negotiations. (Hollis Decl. ¶
31.) Given the plaintiff's sophisticated representation and the
parties' joint agreement that the settlement reached was the
product of arms-length bargaining, (Settlement Agreement at V),
the court does not question that the proposed settlement is in
the best interest of the class. See Fraley v. Facebook, Inc.,
966 F. Supp. 2d 939, 942 (N. D. Cal. 2013) (holding that a
settlement reached after informed negotiations "is entitled to a

degree of deference as the private consensual decision of the parties" (citing Hanlon, 150 F.3d at 1027)).

## 2. Amount Recovered and Distribution

In determining whether a settlement agreement is substantively fair to class members, the court must balance the value of expected recovery against the value of the settlement offer. See In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). The parties estimate the average recovery per class member will be approximately $328.06. (Hollis Decl. ¶ 80.) While modest, "[t]he value of recovery is especially significant in light of the 'significant amount of uncertainty' class members would face if the case were litigated to trial." See Ontiveros, 2014 WL 3057506, at *14 (quoting Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 480 (E.D. Cal. 2010)). Defendant denies any liability for the claims alleged and maintains plaintiff's damages estimates were inflated. (Hollis Decl. ¶¶ 54-57.) However, both parties recognize that, absent a settlement, InAlliance would likely go bankrupt defending individual actions because they are a non-for-profit organization. (Memo. Supp. Prelim. Approval at 16.) While the settlement amount represents "more than the defendants feel those individuals are entitled to" and will potentially be "less than what some class members feel they deserve," the settlement offers class members the prospect of some recovery, instead of none at all. See Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982). In light of the claims at issue and the defendant's potential exposure, the court finds that the substance of the settlement is fair to class members and thereby

"falls within the range of possible approval." See Tableware, 484 F. Supp. 2d at 1079.

### 3. Attorney's Fees & Costs

"Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" Staton, 327 F.3d at 969 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)). If a negotiated class action settlement includes an award of attorney's fees, then the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

The Ninth Circuit has recognized two different methods for calculating reasonable attorney's fees in common fund cases: the lodestar method or the percentage-of-recovery method. Id. at 941-42. In the lodestar method, courts multiply the number of hours the prevailing party expended on the litigation by a reasonable hourly rate. Id. Under the percentage-of-recovery method, courts typically delineate 25 percent of the total settlement as the fee. Hanlon, 150 F.3d at 1029. However, courts may adjust this figure if the record reflects "special circumstances justifying a departure." Bluetooth, 654 F.3d at 942. Where, as here, the settlement has produced a common fund for the benefit of the entire class, courts have discretion to use either method. Id. at 942 (citing In re Mercury Interactive Corp., 618 F.3d 988, 992 (9th Cir. 2010)).

Class counsel requests $75,000 in attorney's fees, which constitutes 33.33 percent of the total settlement. (Settlement Agreement ¶ 2.6.1.) "While some courts have approved percentage awards as high as 33.3 [percent], awards of that size are typically disfavored unless they are corroborated by the lodestar or reflect exceptional circumstances." Ontiveros, 2014 WL 3057506, at *15 (collecting cases). Class counsel justifies their request by comparing it to their lodestar, which by their calculations exceeds $175,000. (Hollis Decl. ¶ 114.) After discussing the calculated fee with counsel at the preliminary approval hearing and considering the additional time counsel will have to spend on this matter to finalize the settlement, the court is satisfied that the requested fee is reasonable.

IT IS THEREFORE ORDERED that plaintiff's motion for preliminary certification of a conditional settlement class and preliminary approval of the class action settlement (Docket No. 23) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED THAT:

(1) the following class be provisionally certified for the purpose of settlement: all current or former employees of InAlliance who worked in the State of California in the position of Independent Living Facilitator ("ILF") at any time from February 22, 2014 through January 15, 2020. In the event that the proposed settlement is not consummated for any reason, the conditional certification shall be of no further force or effect and shall be vacated without further action or order of this court;

(2) the proposed settlement is preliminarily approved as

1    fair, just, reasonable, and adequate to the members of the

2    settlement class, subject to further consideration at the final

3    fairness hearing after distribution of notice to members of the

4    settlement class;

5         (3) for purposes of carrying out the terms of the settlement

6    only:

7              (a) Joseph Osegueda is appointed as the representative

8    of the settlement class and is provisionally found to be an

9    adequate representative within the meaning of Federal Rule of

10   Civil Procedure 23;

11             (b) the law firm of GrahamHollis APC is provisionally

12   found to be a fair and adequate representative of the settlement

13   class and is appointed as class counsel for the purposes of

14   representing the settlement class conditionally certified in this

15   Order;

16        (4) ILYM Group is appointed as the settlement administrator;

17        (5) the form and content of the proposed Notice of Class

18   Action Settlement (Hollis Decl., Ex 2) is approved, except to the

19   extent that it must be updated to reflect dates and deadlines

20   specified in this order;

21        (6) no later than ten (10) days from the date this order is

22   signed, defendant's counsel shall provide the names and contact

23   information of all settlement class members to ILYM Group;

24        (7) no later than fourteen (14) days from the date defendant

25   submits the contact information to ILYM Group, ILYM shall mail a

26   Notice of Class Action Settlement to all members of the

27   settlement class;

28        (8) no later than sixty (60) days from the date this order

is signed, any member of the settlement class who intends to object to, comment upon, or opt out of the settlement shall mail written notice of that intent to ILYM Group pursuant to the instructions in the Notice of Class Action Settlement;

(9) a final fairness hearing shall be held before this court on Monday, May 18, 2020, at 1:30 p.m. in Courtroom 5 to determine whether the proposed settlement is fair, reasonable, and adequate and should be approved by this court; to determine whether the settlement class's claims should be dismissed with prejudice and judgment entered upon final approval of the settlement; to determine whether final class certification is appropriate; and to consider class counsel's applications for attorney's fees, costs, and an incentive award to plaintiff.  The court may continue the final fairness hearing without further notice to the members of the class;

(10) no later than twenty-eight (28) days before the final fairness hearing, class counsel shall file with this court a petition for an award of attorney's fees and costs.  Any objections or responses to the petition shall be filed no later than fourteen (14) days before the final fairness hearing.  Class counsel may file a reply to any objections no later than seven (7) days before the final fairness hearing;

(11) no later than twenty-eight (28) days before the final fairness hearing, class counsel shall file and serve upon the court and defendant's counsel all papers in support of the settlement, the incentive award for the class representative, and any award for attorney's fees and costs;

(12) no later than twenty-eight (28) days before the final

fairness hearing, ILYM Group shall prepare, and class counsel shall file and serve upon the court and defendants' counsel, a declaration setting forth the services rendered, proof of mailing, a list of all class members who have opted out of the settlement, a list of all class members who have commented upon or objected to the settlement;

(13) any person who has standing to object to the terms of the proposed settlement may appear at the final fairness hearing in person or by counsel and be heard to the extent allowed by the court in support of, or in opposition to, (a) the fairness, reasonableness, and adequacy of the proposed settlement, (b) the requested award of attorney's fees, reimbursement of costs, and incentive award to the class representative, and/or (c) the propriety of class certification.  To be heard in opposition at the final fairness hearing, a person must, no later than ninety (90) days from the date this order is signed, (a) serve by hand or through the mails written notice of his or her intention to appear, stating the name and case number of this action and each objection and the basis therefore, together with copies of any papers and briefs, upon class counsel and counsel for defendants, and (b) file said appearance, objections, papers, and briefs with the court, together with proof of service of all such documents upon counsel for the parties.

Responses to any such objections shall be served by hand or through the mails on the objectors, or on the objector's counsel if there is any, and filed with the court no later than fourteen (14) calendar days before the final fairness hearing. Objectors may file optional replies no later than seven (7) calendar days

before the final fairness hearing in the same manner described above.  Any settlement class member who does not make his or her objection in the manner provided herein shall be deemed to have waived such objection and shall forever be foreclosed from objecting to the fairness or adequacy of the proposed settlement, the judgment entered, and the award of attorneys' fees, costs, and an incentive award to the class representative unless otherwise ordered by the court;

(14) pending final determination of whether the settlement should be ultimately approved, the court preliminarily enjoins all class members (unless and until the class member has submitted a timely and valid request for exclusion) from filing or prosecuting any claims, suits, or administrative proceedings regarding claims to be released by the settlement.

Dated:  January 15, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE