UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JOSEPH OSEGUEDA, individually and on behalf of all similarly situated and/or aggrieved employees of Defendants in the State of California,<br><br>    Plaintiff,<br><br>    v.<br><br>NORTHERN CALIFORNIA INALLIANCE; and DOES 1 through 50, inclusive,<br><br>    Defendants. | No. 18-cv-00835 WBS EFB<br><br>MEMORANDUM AND ORDER RE: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND REPRESENTATIVE SERVICE PAYMENT |

----oo0oo----

Plaintiff Joseph Osegueda, individually and on behalf of all other similarly situated employees, brought this putative class action against Defendant Northern California InAlliance ("InAlliance") alleging violations of state and federal wage and hour laws. (First Am. Compl. ("FAC") (Docket No. 14).) Before the court now are plaintiff's unopposed motions for final approval of the parties' class action settlement and attorneys'

1

fees, costs, and a class representative service payment.  (Docket Nos. 28, 29.)

I.  Discussion[1]

The Ninth Circuit has declared a strong judicial policy favoring settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]") (citation omitted).  Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).

"Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litig. (Third), § 30.41 (1995)).  This court satisfied step one by granting plaintiff's unopposed motion for preliminary approval of class action settlement on January 15, 2020.  (Docket No. 25.)  Now, following notice to the class members, the court will consider whether final approval is merited by evaluating: (1) the treatment of this litigation as a class action and (2) the terms

---

[1] The court already recited the factual and procedural background in its order granting plaintiff's unopposed motion for preliminary approval of the class action settlement.  (See Order Granting Preliminary Approval at 2-4 (Docket No. 25).)  Accordingly, the court will refrain from doing so again.

2

1 of the settlement.  See Diaz v. Tr. Territory of Pac. Islands,
2 876 F.2d 1401, 1408 (9th Cir. 1989).
3     A.    Class Certification
4     A class action will be certified only if it meets the
5 requirements of Rule 23(a)'s four prerequisites and fits within
6 one of Rule 23(b)'s three subdivisions.  Fed. R. Civ. P. 23(a)-
7 (b).  Although a district court has discretion in determining
8 whether the moving party has satisfied each Rule 23 requirement,
9 the court must conduct a rigorous inquiry before certifying a
10 class.  See Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Gen.
11 Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982).
12     1.    Rule 23(a)

> Rule 23(a) restricts class actions to cases where:
> (1) the class is so numerous that joinder of all
> members is impracticable; (2) there are questions
> of law or fact common to the class; (3) the claims
> or defenses of the representative parties are
> typical of the claims or defenses of the class;
> and (4) the representative parties will fairly and
> adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  In the court's order granting preliminary approval of the settlement, the court found that the putative class satisfied the Rule 23(a) requirements.  (Order Granting Preliminary Approval at 5-12.)  The court is unaware of any changes that would affect this conclusion, and the parties indicated that they were aware of no such developments.  (Mot. for Final Approval at 11 (Docket No. 28).)  Because the court is not aware of any facts that would alter its initial Rule 23(a)

3

analysis, the court finds that the class definition proposed by plaintiff meets the requirements of Rule 23(a).[2]

### 2. Rule 23(b)

An action that meets all the prerequisites of Rule 23(a) may be certified as a class action only if it also satisfies the requirements of one of the three subdivisions of Rule 23(b). Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013). In its order granting preliminary approval of the settlement, the court found that both the predominance and superiority prerequisites of Rule 23(b)(3) were satisfied. (Order Granting Preliminary Approval at 12-15.) The court is unaware of any changes that would affect this conclusion. Because the settlement class satisfies both Rule 23(a) and 23(b)(3), the court will grant final class certification of this action.

### 3. Rule 23(c)(2) Notice Requirements

If the court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) governs both the form and content of a proposed notice. See Ravens v. Iftikar, 174 F.R.D. 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172-77 (1974)). Although that notice must be

---

[2] In its preliminary approval, noted that the numerosity requirement had been satisfied because defendant had identified 350 potential class members. That number has since decreased to 271, but numerosity is still met.

4

"reasonably certain to inform the absent members of the plaintiff class," actual notice is not required.  Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

The parties selected ILYM Group, Inc. ("ILYM") to serve as the Settlement Administrator.  (Decl. of Graham S.P. Hollis in Supp. of Final Approval ("Hollis Decl. in Supp. of Final Approval") ¶ 9 (Docket No. 28-2).)  Defendant timely provided ILYM with the class list, including the class members' names, social security numbers, last known addresses, and total number of applicable workweeks worked.[3]  (Id. ¶ 11; Decl. of Madely Nava ("Nava Decl.") ¶ 5 (Docket No. 28-3).)

To ensure delivery of the notice packets, ILYM processed the class members' addresses through an Accurint skip trace system and the United States Postal Service's National Change of Address Database.  (Id. ¶¶ 6-7.)  Notice packets were mailed to all class members by First Class Mail on April 17, 2020.  (Id. ¶ 8.)  Initially, 25 packets were returned as undeliverable, but 13 were eventually re-mailed and successfully delivered.  (Id. ¶¶ 9-11.)  The June 16, 2020 deadline to request exclusion came and passed without any class member objecting to the settlement.  (Id. ¶¶ 12-13.)

"Notice is satisfactory if it 'generally describes the

---

[3]   Defendant originally anticipated there would be approximately 375 class members following plaintiff's response to special interrogatories.  Following the preliminary approval motion, defendant confirmed 271 class members after a diligent record search, 195 of which are also members of the Waiting Time Penalties Subclass.  (Hollis Decl. in Supp. of Final Approval ¶ 11.)  Additionally, 204 of the settlement class members are PAGA employees who will receive a portion of the PAGA allocation.  (Nava Decl. ¶ 14.)

terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).  The notice identifies the parties, explains the nature of the proceedings, defines the class, provides the terms of the settlement, and explains the procedure for objecting or opting out of the class.  (Nava Decl. ¶ 8, Ex. A.)  The notice also explains how class members' individual settlement awards will be calculated, and the amount that class members can expect to receive.  (Id.)  Accordingly, the notice complies with Rule 23(c)(2)(B)'s requirements.

      B.   Rule 23(e): Fairness, Adequacy, and Reasonableness of Proposed Settlement

Having determined that class treatment is warranted, the court must now address whether the terms of the parties' settlement appear fair, adequate, and reasonable.  See Fed. R. Civ. P. 23(e)(2).  To determine the fairness, adequacy, and reasonableness of the agreement, the court must consider "a number of factors," including:

> Strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  However, "[t]he factors in a court's fairness assessment will

6

naturally vary from case to case." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

### 1. Strength of the Plaintiff's Case

One particularly important consideration is the strength of plaintiff's case on the merits compared to the settlement amount offered. See DIRECTV, 221 F.R.D. at 526. The court, however, is not required to resolve the underlying merits, "for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements." Officers for Justice v. Civ. Serv. Comm'n of City & County of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982).

Although plaintiff maintains his claims are meritorious and he would have prevailed at trial, he acknowledges that defendant possesses legitimate defenses to both liability and class certification. (See Initial Decl. of Graham S.P. Hollis ("Initial Hollis Decl.") ¶¶ 26-30 (Docket No. 23-2).) For example, plaintiff's main claim for failure to pay overtime wages for hours worked during "sleep time" and the ninth hour of the workday would be precluded if InAlliance is exempt from California's Domestic Worker Bill of Rights, as defendant contends. (Mot. for Final Approval at 17.) In addition, as defendant acknowledges, if plaintiff's claims were to succeed, defendant would unlikely be unable to satisfy a judgment against it. (Initial Hollis Decl. ¶ 64 ("Absent a Settlement, the precarious financial situation of the corporate Defendant would have likely lead to a bankruptcy filing, further delay, and the real possibility of recovering $0 for Plaintiff and the putative

class.").)  Accordingly, the court finds the proposed settlement is a fair resolution of the issues in this case and will prevent potential uncertainty.  This factor weighs in favor of settlement.

        2.   Risk, Expense, Complexity, and Further Litigation

Formal discovery in this case is still in its early stages.  Absent settlement, the parties most likely would have had to litigate class certification and summary judgment, both of which would cause additional expense and substantially reduce, delay, or eliminate class members' recovery.  (Initial Hollis Decl. ¶¶ 62, 64.)  Furthermore, defendant would have been likely to appeal a favorable judgment for plaintiff, resulting in further expense and exacerbating defendant's potential bankruptcy.  (Id. ¶¶ 64-65.)  Accordingly, this factor also weighs in favor of settlement.

        3.   Risk of Maintaining Class Action Status

If this case had proceeded to trial, plaintiff admittedly would have faced several risks regarding the maintenance of class status, mostly in regard to his off-the-clock claims.  (Mot. for Final Approval at 20.)  Plaintiff also acknowledges that, if the parties had continued to litigate this matter, defendant could have moved to decertify the FLSA collective action at any time prior to trial.  See Campbell v. City of Los Angeles, 903 F.3d 1090, 1105 (9th Cir. 2018).  Accordingly, this factor also weighs in favor of settlement.

        4.   Amount Offered in the Settlement

In assessing the amount offered in settlement, "[i]t is the complete package taken as a whole, rather than the individual

8

component parts, that must be examined for overall fairness." Officers for Justice, 688 F.2d at 628. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." Id.

Here, the gross settlement fund is $225,000. (Nava Decl. ¶ 16.) The total net settlement fund is estimated to be $116,043.42, following distribution of the gross amount as follows: (1) $75,000 for class counsel fees; (2) $8,869.33 for litigation costs; (3) $5,000 for plaintiff as an incentive award; (4) $8,801.25 for ILYM's administration fees; (5) $8,473.50 for California Labor & Workforce Development Agency payments; and (5) $2,812.50 in PAGA allocations. (Id.) The distribution of the net settlement fund will occur on a pro rata basis, based on the ratio of the applicable workweeks worked by each class member during the class period to the total number of applicable workweeks worked by all class members during the class period. (Id. ¶ 18.) The average recovery per class member is estimated to be $406.79. (Id. ¶ 21.) Additionally, each class member who opted into the FLSA portion of the settlement will receive an additional $118.41. (Id. ¶ 19.)

While this amount will undoubtedly "be less than what some class members feel they deserve" but will likely be "more than the defendants feel they are entitled to," the amount represents a reasonable compromise on plaintiff's wage and hour claims. See Officers for Justice, 688 F.2d at 615. Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

9

uncertain results." DIRECTV, Inc., 221 F.R.D. at 526.  This settlement avoids the potential to incur great litigation expenses for both parties and provides a non-insignificant benefit to class members.  In light of the risks and expense of further litigation, the court finds the settlement amount to be fair and adequate.

         5.    Extent of Discovery Completed

While formal discovery in this action had only begun, settlement discussions between the two parties occurred after exchanging substantial relevant information and engaging in extensive arms-length negotiations under the supervision of David L. Perrault, a mediator well-versed in wage and hour class action matters.  (Initial Hollis Decl. ¶ 31.)  Given the plaintiff's sophisticated representation and the parties' joint agreement that the settlement reached was the product of arms-length bargaining, the court finds the discovery conducted adequately informed the settlement negotiation.  See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013) (holding that a settlement reached after informed negotiations "is entitled to a degree of deference as the private consensual decision of the parties" (citing Hanlon, 150 F.3d at 1027)).

         6.    The Experience and Views of Counsel

"When approving class action settlements, the court must give considerable weight to class counsel's opinions due to counsel's familiarity with the litigation and its previous experience with class action lawsuits." Murillo v. Pac. Gas & Elec. Co., Civ. No. 2:08-1974 WBS GGH, 2010 WL 2889728, at *8 (E.D. Cal. July 21, 2010).  Here, plaintiff has provided evidence

that class counsel has substantial experience in prosecuting class actions, including employment actions and wage-and-hour matters. (Hollis Decl. in Supp. of Final Approval ¶¶ 5-8, Ex. C.) Based on his experience, plaintiff's counsel believes the proposed settlement is fair, reasonable, and adequate to the class under the circumstances, as it reflects a reasoned compromise which not only takes into consideration the inherent risks in wage and hour class litigation, but the various issues in this case which had the potential to substantially reduce or completely eliminate recovery by class members. (Mot. for Final Approval at 21.) This factor supports approval of the settlement agreement.

### 7. Presence of Government Participant

No governmental entity participated in this matter. Accordingly, this factor is irrelevant to the court's analysis.

### 8. Reaction of the Class Members to the Settlement

Not a single class member submitted requests for exclusion prior to the June 16, 2020 deadline. (Nava Decl. ¶¶ 8, 12.) No class members have objected to the settlement. (Id. ¶ 13.) "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." DIRECTV, 221 F.R.D. at 529. Accordingly, this factor weighs in favor of the court's approval of the settlement.

### 9. Conclusion

Having considered the foregoing factors, the court finds that the settlement is fair, adequate, and reasonable

1  pursuant to Rule 23(e).  See Hanlon, 150 F.3d at 1026.

2      C.   Attorneys' Fees[4]

3          Federal Rule of Civil Procedure 23(h) provides, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  If a negotiated class action settlement includes an award of attorneys' fees, that fee award must be evaluated in the overall context of the settlement.  Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.).  The court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  Bluetooth Headset, 654 F.3d at 941.

        "Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable [attorneys'] fee from the fund as a whole.'" Staton v. Boeing Co., 327 F.3d 938, 969 (9th Cir. 2003) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).  In common fund cases, the district court has discretion to determine the amount of attorneys' fees to be drawn from the fund by employing either the

---

[4] In its preliminary approval for class action settlement, the court expressed reservations about the amount of the requested fee and cautioned class counsel that the "reasons for the attorney's fees should be explained further in counsel's fee motion." (Preliminary Approval Order at 20.)  Counsel has satisfied the court's concerns in the motion for attorneys' fees and in counsel's declaration as discussed below.

1  percentage method or the lodestar method.  Id.  The court may
2  also use one method as a "cross-check[ ]" upon the other method.
3  See Bluetooth Headset, 654 F.3d at 944.

4         As part of the settlement, the parties agreed to an
5  award of attorneys' fees of $75,000, which constitutes 33.33% of
6  the gross settlement fund.  (Hollis Decl. in Supp. of Final
7  Approval ¶ 10.)  Counsel represents that this award constitutes a
8  fair market charge for the benefits conferred on the class
9  members.  (Id. ¶¶ 41-43.)  As discussed, absent a settlement, it
10 was quite likely that class members would be unable to recover
11 anything from InAlliance due to bankruptcy.  (Initial Hollis
12 Decl. ¶ 64.)  As a result of the settlement, on average, class
13 members will recover approximately $406.79.  (Hollis Decl. in
14 Supp. of Final Approval ¶ 23.)  This is a substantial amount that
15 will be available to class members without further delay.

16        Additionally, the attorneys' fees requested by counsel
17 are below the lodestar figure of $234,011.00, as calculated by
18 plaintiff's counsel.[5]  (Id. ¶ 45.)  Plaintiff's counsel maintains
19 contemporaneous billing logs which reflect time billed in one-
20 tenth of an hour increments.  (Id. ¶ 46.)  Over the span of two
21 years, partners, associates, law clerks, case managers, and
22 paralegals at the firm have dedicated 504.9 hours of work to this
23 case.[6]  (Id. ¶¶ 46-49, 52.)  The firm is highly specialized in

---

[5] The court expresses no opinion as to the proper lodestar amount in this case.

[6] The firm's hourly rates for shareholders fall between $725 and $840 per hour; associates, between $370 and $675; paralegals, $240; case managers, $185; and law clerks, $175. (Hollis Decl. in Supp. of Final Approval ¶ 49.)

1  wage and hour matters and class action cases, and the firm's
2  hourly rates comport with those of attorneys of similar skill and
3  experience.  (Id. ¶¶ 48-50.)

4       While the attorneys' fees requested is above the 25%
5  "benchmark" set by the Ninth Circuit for "common fund"
6  settlements, see Six Mexican Workers v. Arizona Citrus Growers,
7  904 F.2d 1301, 1311 (9th Cir. 1990), courts in this circuit have
8  approved fees that exceeded that "benchmark" in many cases.  See,
9  e.g., Bond v. Ferguson Enters., Inc., No. 1:09-CV-1662 OWW MJS,
10 2011 WL 2648879, at *9 (E.D. Cal. June 30, 2011) ("[T]he exact
11 percentage [of attorneys' fees] varies depending on the facts of
12 the case, and in most common fund cases, the award exceeds [the
13 25%] benchmark.").  A fees award amounting to "33 1/3 % of the
14 total settlement value" is considered "acceptable."  Id.
15 Furthermore, "a review of California cases . . . reveals that
16 courts usually award attorneys' fees in the 30-40% range in wage
17 and hour class actions that result in recovery of a common fun[d]
18 under $10 million."  Cicero v. DirecTV, Inc., Civ. No. 07-1182,
19 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010).  In addition,
20 the fact that the requested fees in this case are well below the
21 lodestar figure further supports granting approval.  See Vizcaino
22 v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002) ("[T]he
23 lode star ... provides a check on the reasonableness of the
24 percentage award.").

25      In light of the fees usually awarded in these types of
26 cases, the risks counsel incurred by taking this case on a
27 contingency basis, the time and effort spent litigating this
28 case, and the reasonable result obtained for class members, the

1  court finds the requested fees are reasonable.  Accordingly, the
2  court will approve counsel's motion for attorneys' fees.
3      D.    Costs
4           "There is no doubt that an attorney who has created a
5  common fund for the benefit of the class is entitled to
6  reimbursement of reasonable litigation expenses from that fund."
7  In re Heritage Bond Litig., Civ. No. 02-1475, 2005 WL 1594403, at
8  *23 (C.D. Cal. June 10, 2005).  Here, the parties agreed that
9  plaintiff's counsel shall be entitled to recover reasonable
10 litigation costs, not to exceed $9,000.  (Initial Hollis Decl.,
11 Ex. B at ¶ 2.9.1.)  Counsel's litigation expenses and costs are
12 $8,869.33.  (Hollis Decl. in Supp. of Final Approval ¶ 60.)
13 These expenses include the fees paid for attorney services, court
14 reporters, mediation, legal research, photocopies, postage,
15 overnight delivery expenses, travel, and the like.  (Id.)  The
16 court finds these are reasonable litigation expenses.  Therefore,
17 the court will grant class counsel's request for costs in the
18 amount of $8,869.33.
19     E.    Representative Service Award
20          "Incentive awards are fairly typical in class action
21 cases."  Rodriguez, 563 F.3d at 958.  "[They] are intended to
22 compensate class representatives for work done on behalf of the
23 class, to make up for financial or reputational risk undertaken
24 in bringing the action, and, sometimes, to recognize their
25 willingness to act as a private attorney general."  Id. at 958-
26 59.  In assessing the reasonableness of incentive payments, the
27 court should consider "the actions the plaintiff has taken to
28 protect the interests of the class, the degree to which the class

1  has benefitted from those actions" and "the amount of time and
2  effort the plaintiff expended in pursuing the litigation."
3  Staton, 327 F.3d at 977 (citation omitted).  The court must
4  balance "the number of named plaintiffs receiving incentive
5  payments, the proportion of the payments relative to the
6  settlement amount, and the size of each payment."  Id.  In the
7  Ninth Circuit, an incentive award of $5,000 is presumptively
8  reasonable.  Davis v. Brown Shoe Co., Inc., No. 1:13-01211 LJO
9  BAM, 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3, 2015) (citing
10 Harris v. Vector Marketing Corp., No. C-08-5198 EMC, 2012 WL
11 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases).

12         The single named plaintiff, Joseph Osegueda, seeks an
13 incentive payment of $5,000 for his time and effort in
14 representing the class.  (Hollis Decl. in Supp. of Final Approval
15 ¶ 60.)  Osegueda represents that he has devoted significant time
16 and resources to the case over a period of two years, risking
17 both his finances and his reputation.  (Decl. of Joseph Osegueda
18 ("Osegueda Decl.") ¶ 4 (Docket No. 29-4).)  Plaintiff also states
19 that he spent a significant amount of time assisting class
20 counsel in the development of this case by responding to
21 discovery, participating in mediation, assisting in the
22 preparation and evaluation of the case, and evaluating and
23 approving the proposed settlement on behalf of the class.  (Id.
24 ¶¶ 6-11.)  In light of plaintiff's efforts and risks incurred in
25 bringing this action, the court finds his requested incentive
26 award to be reasonable and will approve the award.

27 II.  Conclusion
28         Based on the foregoing, the court will grant final

certification of the settlement class and will approve the settlement set forth in the settlement agreement as fair, reasonable, and adequate. The settlement agreement shall be binding upon all participating class members who did not exclude themselves.

IT IS THEREFORE ORDERED that plaintiff's unopposed motions for final approval of class action settlement and attorneys' fees, costs, and incentive award (Docket Nos. 28, 29) be, and the same hereby are, GRANTED.

IT IS FURTHER ORDERED THAT:

(1) Solely for the purpose of this settlement, and pursuant to Federal Rule of Civil Procedure 23, the court hereby certifies the following class: all current or former employees of InAlliance who worked in the State of California in the position of Independent Living Facilitator ("ILF") at any time from February 22, 2014 through January 13, 2020.

(2) The court appoints the named plaintiff Joseph Osegueda as class representative and finds that he meets the requirements of Rule 23;

(3) The court appoints law firm of GrahamHollis APC as class counsel and finds that it meets the requirements of Rule 23;

(4) The settlement agreement's plan for class notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. The plan is approved and adopted. The notice to the class complies with Rule 23(c)(2) and Rule 23(e) and is approved and adopted;

(5) The court finds that the parties and their counsel

took appropriate efforts to locate and inform all class members of the settlement.  Given that no class member filed an objection to the settlement, the court finds that no additional notice to the class is necessary;

      (6) As of the date of the entry of this order, plaintiff and all class members who have not timely opted out of this settlement herby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged defendants of and from any and all settled claims, pursuant to the release provisions stated in the parties' settlement agreement;

      (7) Plaintiff's counsel is entitled to fees in the amount of $75,000, and litigation costs in the amount of $8,869.33;

      (8) ILYM Group, Inc. is entitled to administration costs in the amount of $8,801.25;

      (9) $8,473.50 from the gross settlement amount shall be paid to the California Labor and Workforce Development Agency in satisfaction of defendants' alleged penalties under the Labor Code Private Attorneys General Act;

      (10) The remaining settlement funds shall be paid to participating class members in accordance with the terms of the settlement agreement; and

      (11) This action is dismissed with prejudice.  However, without affecting the finality of this Order, the court shall retain continuing jurisdiction over the interpretation, implementation, and enforcement of the settlement agreement with respect to all parties to this action and their counsel of

record.

The clerk is instructed to enter judgment accordingly.

Dated: July 20, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE